LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice* forthcoming)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| A.A. and C.M., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:25-cv-08852-JSC<br><br>**DEFENDANT META PLATFORMS, INC.'S REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE IN SUPPORT OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Hearing: January 22, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 8—19th Floor<br>Judge: Hon. Jacqueline Scott Corley |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 22, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom 8, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Meta Platforms, Inc., through its undersigned counsel, will, and hereby does, respectfully request that in connection with its Motion to Dismiss Second Amended Class Action Complaint, the Court consider the documents attached as Exhibits 1–26 to the accompanying Declaration of Melanie M. Blunschi in Support of Meta's Motion to Dismiss Class Action Complaint, filed concurrently herewith. The documents are properly considered by the Court on Meta's Motion because they are subject to judicial notice under Federal Rule of Evidence 201 and/or incorporated by reference into the Class Action Complaint.

Dated: October 22, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ Melanie M. Blunschi
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice* forthcoming)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*

**MEMORANDUM OF POINTS & AUTHORITIES**

Defendant Meta Platforms, Inc. ("Meta") respectfully requests that the Court consider certain documents submitted in connection with Meta's motion to dismiss the Class Action Complaint ("Compl."), as described below and attached to the concurrently filed Declaration of Melanie M. Blunschi ("Blunschi Declaration"). The documents include (1) four publicly available, informational webpages from Meta's website regarding the Meta Pixel (Exhibits 1–4); (2) Facebook's publicly available sign-up page (Exhibit 5); (3) four sets of publicly available Meta terms and policies (Exhibits 6–19); and (4) two sets of publicly available Wisp terms and policies (Exhibits 20–26). These documents are properly considered because they are incorporated by reference into and integral to the complaint, and/or subject to judicial notice under Federal Rule of Evidence 201.

## I. LEGAL STANDARD

In deciding a motion to dismiss, a court may consider "materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

The doctrine of incorporation by reference "treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). When a document is incorporated by reference, the Court may consider the contents of the document, and unlike judicial notice, a court "may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citation omitted). A document is incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (citation omitted). The purpose of the doctrine is to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* For that reason, the doctrine may apply even where a complaint does not explicitly mention a document by name or references only a portion of it. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (explaining that incorporation by reference may apply even where the plaintiff "does not explicitly allege the contents of th[e] document in

the complaint" (citation omitted)); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (incorporating employee health plan where claims were premised upon plaintiff's coverage under the plan), *superseded by statute on other grounds*. The doctrine "applies with equal force to internet pages as it does to printed material." *Knievel*, 393 F.3d at 1076.

Additionally, courts may take judicial notice of matters that are "not subject to reasonable dispute" because they are either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined by from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

## II. ARGUMENT

### A. Exhibits 1–26 Are Incorporated By Reference Into The Complaint

Plaintiffs rely throughout their complaint on various pages on Meta's website to describe how the Meta Pixel allegedly works and what Meta allegedly represents to third-party businesses. But Plaintiffs omit critical context that appears in those same documents and others incorporated within them. The incorporation-by-reference doctrine exists precisely to prevent such "artful pleading" and ensure courts can assess claims at the motion-to-dismiss stage based on a full and fair understanding of the documents that undergird a plaintiff's claims. *Khoja*, 899 F.3d at 1003; *see id.* at 1002 (recognizing that "the policy concern underlying the rule" is "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based" (citation omitted)). Consistent with those considerations, Exhibits 1–26, which form the basis of Plaintiffs' claims, should be deemed incorporated by reference.

First, Plaintiffs "refer[] extensively" to informational webpages on Meta's website that describe how Meta Pixel code works (Exhibits 1–4). *Khoja*, 899 F.3d at 1002 (citation omitted); *see* Compl. (Dkt. 1-1) ¶¶ 29 n.9, 34 n.21, 39 n.25 (citing Ex. 1); *id.* ¶ 32 n.17 (citing Ex. 2); *id.* ¶¶ 32 n.19, 38 n.23 (citing Ex. 3); *id.* ¶ 32 n.17 (citing Ex. 4); *see Shang v. Twitch Interactive*, 2025 WL 56415, at *2 (N.D. Cal. Jan. 9, 2025) (Corley, J.) (finding document incorporated by reference when "complaint contain[ed] multiple references" to document). These webpages are integral to Plaintiffs' claims, because their complaint relies on representations about Meta Pixel code made on these webpages to allege that Meta received their purchase information from Wisp.

*See, e.g.*, *id.* ¶¶ 27-39; *Gershfeld v. TeamViewer US, Inc.*, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023) (affirming incorporation by reference of documents that were "integral to" plaintiff's claims (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)); *Bhangal v. Hawaiian Elec. Indus., Inc.*, 2024 WL 4505465, at *6 (N.D. Cal. Oct. 15, 2024) (Corley, J.) (incorporating documents described in and "integral to" complaint (citation omitted)).

And incorporation by reference is particularly appropriate here because Plaintiffs selectively quote from these documents, curating the language to omit portions that doom their claims. *Khoja*, 899 F.3d at 1002. For example, Plaintiffs allege that "[t]he Business Tools are automatically configured to capture certain data," Compl. ¶ 32 (citing Ex. 4), to support their claim that Meta intentionally received their personal health information, *id.* ¶¶ 5, 77, 92. But Plaintiffs fail to mention that the very same webpage explains how "[t]o configure the Meta Pixel to not send" such information, confirming that third-party websites like Wisp—not Meta—are responsible for choosing whether to use Pixel code and how to configure it. Ex. 4 at 10. Similarly, Plaintiffs quote only the first few lines from Exhibit 3 regarding how "Meta uses event data to show ads to people who are likely to be interested in them." Compl. ¶ 38 (citing Ex. 3). But the rest of that same webpage explains that developers—not Meta—"[s]et up custom events" and must "review" each custom event to "ensure" that it "complies with Meta Business Tools Terms," because a developer's use of Meta Pixel code for "[s]haring [sensitive] information violates the Meta Business Tool Terms." Ex. 3 at 1-3 (linking to the Meta Business Tools Terms). In short, because Plaintiffs rely on selective portions of these webpages to allege that Meta intentionally received sensitive information through the Meta Pixel, the incorporation-by-reference doctrine applies, and the entirety of the documents should be considered and treated as part of the complaint. *Khoja*, 899 F.3d at 1002; *see also, e.g.*, *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1062-64 (S.D. Cal. 2019) (incorporating by reference screenshots of website and Amazon page where plaintiff selectively quoted advertising).

Second, the Facebook sign-up page (Ex. 5) is incorporated by reference for similar reasons. Plaintiffs rely on their status as Facebook users to state their claims, but omit critical portions of the sign-up page they cite. Specifically, Plaintiffs allege that they had active Facebook accounts

when they made their purchases from Wisp, Compl. ¶ 11, and cite the Facebook sign-up page in their complaint in alleging that Facebook collects names, birthday, and gender from users. *Id.* ¶ 27 n.5.[1] Plaintiffs then allege that Wisp sent Facebook users' Facebook IDs to Meta using code from the Meta Pixel and cookies, such that Meta was allegedly able to match event data with user accounts and "identify users." *Id.* ¶¶ 45-46, 48. Plaintiffs' "identification" allegations are critical to their claim that Wisp disclosed "sensitive" information about them to Meta. *Id.* ¶ 56. Yet directly below the requested fields Plaintiffs cite on the sign-up page is language stating that Facebook users (like Plaintiffs) agree to Meta's "Terms, Privacy Policy, and Cookies Policy" "[b]y clicking Sign Up." Ex. 5 (linking to the Terms, Privacy Policy, and Cookies Policy). Despite admitting they have Facebook accounts and citing the page where this language appears, Plaintiffs selectively omit that signing up expressly requires agreement to Meta's Terms, Privacy Policy, and Cookies Policy. And, as Meta explains in its motion, those governing terms and policies disclose the precise conduct that forms the basis of Plaintiffs' claims. Plaintiffs cannot "select[] only portions of documents" that allegedly "support their claims," while omitting other contents that undercut their claims. *Khoja*, 899 F.3d at 1002.

Third, for the same reason, the content of Meta's Terms, Privacy Policy, Cookies Policy, and Business Tools Terms (Exhibits 6–19) is also incorporated by reference into the complaint.[2] Plaintiffs extensively reference certain Meta webpages regarding the Meta Pixel, but conspicuously omit mention of the terms and policies disclosing that third parties may use Meta Pixel code, that Meta may receive data from those third parties, and that Meta imposes certain restrictions that govern what data third parties may send. Plaintiffs' attempt to avoid these core

---

[1] Plaintiffs cite a link to Facebook's "log in or sign up" page in their complaint, *see* https://www.facebook.com/, but the fields to provide birthday and gender that Plaintiffs reference appear on the screen the user sees after they click "Create new account." Accordingly, that screen, available at https://www.facebook.com/r.php, is included as Exhibit 5, as that is the webpage on which Plaintiffs' allegations rely.

[2] Meta attaches publicly available versions of these terms and policies in effect when Plaintiffs allege they used Wisp. *See* Compl. ¶¶ 8-9 (alleging that Plaintiffs used Wisp between March 2022 and June 2024); *id.* ¶ 11 (alleging that each Plaintiff "maintained an active" Facebook account at the time of her Wisp purchase and subsequently "received targeted advertisements on Facebook"); Terms of Service, Ex. 6 at 8 (explaining that "[o]nce any updated Terms are in effect, you will be bound by them if you continue to use [Meta] Products").

documents implicates the "policy concern underlying the" incorporation-by-reference doctrine—that Plaintiffs may improperly "surviv[e] a Rule 12(b)(6) motion by deliberately omitting references to documents upon which [their] claims are based." *Parrino*, 146 F.3d at 706; *see also In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 2020 WL 7664461, at *4 (N.D. Cal. Dec. 24, 2020) (finding website incorporated by reference).

To start, Meta's Terms of Service (Exs. 6–7), Privacy Policy (Exs. 8–13), and Cookies Policy (Exs. 14–17) are clearly linked, and incorporated into, the sign-up page that Plaintiffs cites. Compl. ¶ 28 n.6; *cf. In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019) (holding that policy linked in terms was "incorporate[d] . . . into the contractual agreement"). These Terms and policies govern individuals' use of Meta products, such as Facebook, and describe how Meta handles user data, including data received through code from the Meta Pixel. As Meta explains in its motion to dismiss, the Terms and policies expressly disclose that businesses can choose to use Meta Pixel code on their websites, and that when they do so, Meta may receive information about users' interactions with those websites. For example, the Privacy Policy explains that Meta "collect[s] and receive[s] information" from third parties about "[w]ebsites you visit and cookie data, [including] through . . . the Meta Pixel," and about "[p]urchases and transactions you make off of our Products." Ex. 10 at 6.

These and other similar disclosures "form[] the basis" of Plaintiffs' claims, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), because Plaintiffs' claims depend on their lack of consent to Meta's receipt of information about their activity on Wisp's website. *Silver v. Stripe*, 2021 WL 3191752, at *2-3 (N.D. Cal. July 28, 2021) (explaining that "lack of consent" is an element of CIPA claims); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1053-54 (N.D. Cal. 2025) (N.D. Cal. Apr. 1, 2025), *appeal filed*, No. 25-2857 (N.D. Cal. May 2, 2025) (same); *see also* Compl. ¶¶ 60, 80, 86, 91. Indeed, the Ninth Circuit recently reaffirmed that, where a plaintiff's claims are "dependent upon the extent and sufficiency of [the defendant's] disclosures," the "disclosures form the basis of the claims themselves" and a court may incorporate by reference the terms that contain such disclosures. *Gershfeld*, 2023 WL 334015, at *1. That is the case here, because Plaintiffs cannot adequately allege lack of consent or a reasonable expectation of privacy

if policies disclose the data collection they challenge. *See, e.g.*, *Silver*, 2021 WL 3191752, at *2-3; *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024). Plaintiffs' claims thus "necessarily depend[] on the application of [Meta's] policies—which relate directly to the issue of consent." *Garcia v. Enters. Holdings*, 78 F. Supp. 3d 1125, 1136-37 (N.D. Cal. 2015). Accordingly, "these documents may appropriately be considered on a motion to dismiss." *Id.* at 1136-37; *see also Libman v. Apple, Inc.*, 2024 WL 4314791, at *5 (N.D. Cal. Sept. 26, 2024) (holding that welcome screens "form[ed] the basis of Plaintiffs' claims" because they "reflect[ed] the settings Plaintiffs contend they adjusted to protect their privacy").

Plaintiffs' selective omission of these Terms and policies stands in stark contrast to their selective reliance on other Meta webpages to state their claims, including parts of the Cookies Policy (Exs. 14–17). Plaintiffs use Meta's Cookies Policy to describe how cookies allegedly "transmitted" information to Meta, and to allege that Meta used cookies to "identify users." Compl ¶¶ 48 n.28, 53 n.34; *see id.* ¶¶ 47-55. Those allegations are integral to their claims that Wisp disclosed personal health information to Meta without their consent. *See id.* ¶ 59. But Plaintiffs omit the fact that the Cookies Policy clearly discloses that Meta "use[s] cookies" to "receive identifiers" when users visit websites that incorporate Meta Pixel code; that businesses use code from "the Meta Pixel" to share information about "your interactions with them"; and that both Meta and "business partners" may use cookies to "deliver ads to people who have previously visited a business's website" or "purchased its products." Ex. 14 at 1, 5, 10. Plaintiffs cannot avoid those disclosures, which address the very conduct they challenge, simply by omitting the key language from their complaint. *See, e.g.*, *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *4 (S.D. Cal. Aug. 19, 2024) (incorporating by reference "a website's privacy policy when [other portions of] the website [were] referenced in the complaint," in assessing CIPA claim); *New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1258 (D.N.M. 2020) (taking judicial notice of Google's policies and disclosures "as part and parcel of the web-based . . . service that is central to the complaint"). Meta's Terms of Service, Privacy Policy, and Cookies Policy should therefore be considered part of the complaint under the incorporation-by-reference doctrine.

The Business Tools Terms (Exs. 18–19) should likewise be deemed incorporated by reference. Plaintiffs cite various webpages that specifically refer and link to the Business Tools Terms, including webpages that reiterate that sharing certain types of information violates those Terms, *see* Ex. 3 at 3 (cited at Compl. ¶¶ 32 n.17), and that "remind[]" businesses that use of the Meta Pixel is subject to those Terms, *see* Ex. 1 at 1 (cited at Compl. ¶¶ 29 n.9, 34 n.21, 39 n.25). But Plaintiffs selectively omit direct reference to the Business Tools Terms, while cherry-picking quotes from *other* webpages to purportedly show what "Facebook instructs [its] business customers," Compl. ¶ 35; *see id*. ¶¶ 31-33, 34, 37-40, and alleging in conclusory fashion that Meta "intentionally" received their health information, *id.* ¶¶ 5, 92. To meaningfully assess those allegations, this Court should have the benefit of the Terms that *govern* use of the Meta Pixel, which specifically require businesses to have "all of the necessary rights and permissions and a lawful basis" to collect and use the data they send and to "represent and warrant that [they] will not share Business Tool Data with [Meta] that [they] know or reasonably should know includes . . . health . . . information" or any "sensitive" information. Ex. 18 at 1. Evaluating Plaintiffs' claims based on their hand-picked selection of Meta webpages, without the context provided by the Business Tools Terms linked on those very pages, would permit the type of "artful pleading" the incorporation-by-reference doctrine is "designed to prevent." *Khoja*, 899 F.3d at 1003.

Finally, the contents of Wisp's Terms & Conditions and Privacy Policy (Exs. 20–26) are also incorporated by reference into Plaintiffs' complaint.[3] Plaintiffs cite Wisp's website in their complaint and allege that it makes certain "represent[ations]" to users. Compl. ¶ 2 n.2; *id.* ¶¶ 1, 75. Yet Plaintiffs again omit the terms that govern the website in an attempt to cherry-pick only representations favorable to their claims. *See supra* at 4-5. And as explained, Plaintiffs' claims depend on their lack of consent to Wisp's alleged sharing of information about their activity on its site with Meta. Wisp's policies, like Meta's, disclosed that Wisp would collect "information about [users] when" they use the website; that it "may use third-party analytics providers or service

---

[3] This request includes versions of Wisp's Terms & Conditions and Privacy Policy available through the Internet Archive's Wayback Machine during the time period when Plaintiffs allegedly used Wisp's website. *See supra* at 4 n.2.

providers and technologies, including cookies and similar tools"—like pixels—"to assist in collecting this information"; and that it may use information collected through third-party technologies including "pixel tags" to "enhance [its] interest-based advertising." Ex. 23 at 3-5. These disclosures, like Meta's, "form the basis of" Plaintiffs' claims, so Wisp's Terms and Conditions and Privacy Policy are properly incorporated by reference. *Id.*

### B. Exhibits 1–26 Are Also Subject To Judicial Notice

Exhibits 1 through 26 are also judicially noticeable as publicly available documents that are "not subject to reasonable dispute" and whose contents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

"In general, websites and their contents may be judicially noticed," and "[c]ourts routinely take judicial notice of terms of service." *Hirlinger v. WP Co. LLC*, 2024 WL 2941630, at *2 (N.D. Cal. June 10, 2024) (alteration in original) (citations omitted); *see also, e.g.*, *Schuster v. Swinerton, Inc.*, 2025 WL 1069887, at *2 (N.D. Cal. Apr. 8, 2025) (Corley, J.) (taking judicial notice of online blog post); *Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146, 1158 n.4 (N.D. Cal. 2024) (taking judicial notice of Meta's Privacy Policy and Terms of Service); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1084 n.8 (N.D. Cal. 2023) (taking judicial notice of Meta's "[Terms of Service], Business Tools Terms, Commercial Terms, Privacy Policy and Cookies Policy"); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (taking judicial notice of publicly available websites).[4] And courts frequently take judicial notice of previous versions of websites archived by the Wayback Machine. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of prior versions of policies accessed via Wayback Machine); *United States ex rel. Hong v. Newport Sensors, Inc.*, 2016 WL 8929246, at *3 (C.D. Cal. May 19, 2016) ("[D]istrict courts in this circuit have routinely taken

---

[4] *See also, e.g.*, *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 617 (N.D. Cal. 2021) (taking judicial notice of "publicly available Google webpages" and "four versions of Google's Privacy Policy"); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of various Google privacy policies and terms of service); *Letizia v. Facebook, Inc.*, 267 F. Supp. 3d 1235, 1242 (N.D. Cal. 2017) (taking judicial notice of Facebook's Statement of Rights and Responsibilities); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1068 n.3 (N.D. Cal. 2016) (taking judicial notice of privacy policies).

judicial notice of content from the Internet Archive's Wayback Machine pursuant to [Fed. R. Evid. 201(c)(1)] . . . ."); *Erickson v. Neb. Mach. Co.*, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) (citing cases).

The Court should do the same here. Exhibits 1 through 26 are publicly available webpages, many of which are cited in Plaintiffs' complaint or directly referenced in the webpages Plaintiffs cite. *See Schuster*, 2025 WL 1069887, at *2; *Lakes*, 777 F. Supp. 3d at 1053-54 (granting judicial notice of defendant's website and "publicly available websites" where "Plaintiffs' complaint relies on highly selective portions of the Website in a number of factual allegations and claims"). They are not subject to reasonable dispute and their contents can be accurately and readily determined. They are thus appropriately subject to judicial notice.

## III. CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court consider the exhibits attached to the Blunschi Declaration submitted in connection with Meta's motion to dismiss.

Dated: October 22, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ Melanie M. Blunschi

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice* forthcoming)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*