**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-006
Email: swestcot@bursor.com
sbeck@bursor.com

**STERLINGTON, PLLC**
Arturo Peña Miranda (State Bar No. 325108)
Jennifer Czeisler (*pro hac vice* forthcoming)
Edward Ciolko (*pro hac vice* forthcoming)
228 Park Ave. South, #97956
New York, New York 10003
Telephone: (212) 433-2993
Email: arturo.pena@sterlingtonlaw.com
jen.czeisler@sterlingtonlaw.com
edward.ciolko@sterlingtonlaw.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

A.A. and C.M., individually and on behalf of all other persons similarly situated,

Plaintiffs,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:25-cv-08852-JSC

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: January 29, 2026
Time: 10:00 a.m.
Ctrm: Courtroom 8, 19th Floor
Judge: Hon. Jacqueline Scott Corley

# TABLE OF CONTENTS

**PAGE(S)**


STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L. R. 7-4(**A**)(3) .................................. 1

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 3

ARGUMENT ......................................................................................................................... 4

I. PLAINTIFFS DID NOT CONSENT TO DEFENDANT'S COLLECTION OF THEIR PRIVATE HEALTH INFORMATION ........................ 4

II. PLAINTIFFS STATE A CLAIM UNDER CIPA SECTION 632 ............................ 9

A. Defendant Intentionally Obtained Plaintiffs' Confidential Communications .......................................................................... 9

B. The Meta Pixel Is A Device For Purposes Of Liability Under CIPA Section 632 .................................................................... 13

C. Plaintiffs Adequately Allege Meta Used The Pixel To Eavesdrop Upon And Record Plaintiffs' Communications.......................... 15

D. Plaintiffs Adequately Allege Their Communications Were Confidential ...................................................................................... 16

III. PLAINTIFFS STATE A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION .................................................. 17

IV. DEFENDANT'S ASSERTIONS THAT THE COMPLAINT DISMISSED SHOULD BE DISMISSED WITH PREJUDICE ARE WITHOUT MERIT ........................................................................................ 19

CONCLUSION ..................................................................................................................... 20

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) .......... 10

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) .......... 16

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 10

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 6

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 8

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 6

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 4

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... passim

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .......... 7

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) .......... 19

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 13

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .......... 5

*Flanagan v. Flanagan*,
27 Cal. 4th 766, 117 Cal. Rptr. 2d 574, 41 P.3d 575 (2002) .......... 16

*Foman v. Davis*,
371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) .......... 19

*Frasco v. Flo Health, Inc.*,
2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) ..... 7

*Frasco v. Flo Health, Inc.*,
2025 WL 1476905 (N.D. Cal. May 22, 2025) ..... 1

*Frasco v. Flo Health, Inc.*,
2025 WL 2680068 (N.D. Cal. Sept. 17, 2025) ..... 14

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ..... 12, 13

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ..... 9, 10, 12 13

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..... 18

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ..... 7

*Hilfiker Square, LLC v. Thrifty Payless, Inc.*,
2016 WL 7031283 (D. Or. Nov. 29, 2016) ..... 5

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)) ..... 18, 19

*Hudson v. Superior Ct.*,
7 Cal. App. 5th 1165 (2017) ..... 9

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) ..... 4

*In re Ambry Genetics Data Breach Litigation*,
567 F. Supp. 3d 1130 (C.D. Cal 2021) ..... 19

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..... 17, 18, 19

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ..... 10, 11

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ..... 6

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ..... 14

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ..... 19

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 4

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 18

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... passim

*In re Meta Pixel Tax Filing Cases*,
724 F.Supp.3d 987 (N.D. Cal. Mar. 25, 2024) .......... 9, 11, 12, 15

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 14

*Kamal v. Eden Creamery, LLC*,
88 F.4th 1268 (9th Cir. 2023) .......... 20

*Kight v. CashCall, Inc.*,
133 Cal. Rptr. 3d 450 (2011) .......... 14

*L.B. v. LinkedIn Corp.*,
2025 WL 2782588 (N.D. Cal. Sept. 30, 2025) .......... 8, 10

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 7

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) .......... 13

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024) .......... 7

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 15

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 4, 20

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .......... 10

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 5

*M.D. v. Google LLC*
2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) .......... 8

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .......... 5, 14

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ........ 18

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 6

*Ojeda v. Kaiser Permanente Int'l., Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) ........ 17

*People v. Braden*,
14 Cal. 5th 791 (2023) ........ 9

*People v. Hyatt*,
109 Cal. App. 5th 735 (2025) ........ 9

*People v. Nakai*,
183 Cal. App. 4th 499, 107 Cal. Rptr. 3d 402 (2010) ........ 16

*Revitch v. DIRECTV, LLC*,
977 F.3d 713 (9th Cir. 2020) ........ 6

*Ribas v. Clark*,
38 Cal.3d 355 (1985) ........ 16

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ........ 16

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) ........ 10

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*,
786 F.3d 510 (7th Cir. 2015) ........ 20

*Rusow v. SkinSpirit Essential LLC*,
3:24-cv-09317, ECF No. 44 (N.D. Cal. Oct. 15, 2025) ........ 18, 19

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 7

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 8

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........ 9, 10, 13

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) ........ 4

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ........ 19

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ........ 5

*Weston v. Lefiti*,
2024 WL 4579237 (9th Cir. Oct. 25, 2024) ........ 18

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) ........ 13

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024 ........ 10

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) ........ 8

**STATUTES**

Cal. Civ. Code § 56.05(j) ........ 7, 16, 18

Cal. Civ. Code § 56.05(q) ........ 7, 16, 18

Cal. Civ. Code § 56.10(a) ........ 9

Cal. Civ. Code § 56.10(d) ........ 8, 9

Cal. Civ. Code § 1798.100 ........ 17

Cal. Civ. Code § 1798.140(ae)(2)(C) ........ 7, 16, 18

Cal. Pen. Code § 630 ........ 14

Cal. Pen. Code § 632(c) ........ 16

**RULES**

Fed. R. Civ. P. 15(a)(2) ........ 19

N.D. Cal. Civ. L.R. 7-4 (A)(3) ........ 19

**REGULATIONS**

45 C.F.R. § 164.508 ........ 9

**STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L. R. 7-4(A)(3)**

1. Whether Plaintiffs A.A. and C.M. ("Plaintiffs") state a claim under the California Invasion of Privacy Act ("CIPA") § 632 where Defendant Meta Platforms, Inc. ("Defendant" or "Meta") eavesdropped upon or recorded Plaintiffs' and class members' communications involving information related to their purchase of over-the-counter and prescription medications with third party Wisp, Inc. ("Wisp") via the website, hellowisp.com (the "Website"), using the Facebook Tracking Pixel (the "Meta Pixel"), without consent.

2. Whether Plaintiffs state a claim for invasion of privacy under the California Constitution where Plaintiffs had a reasonable expectation of privacy that the confidential and sensitive health information that they shared on the Website would remain confidential between them and Wisp and where Defendant recorded Plaintiffs' sensitive information.

**INTRODUCTION**

Over the past decade, Defendant Meta Platforms, Inc. ("Meta," "Facebook," or "Defendant") has faced dozens of lawsuits due to its systemic and unlawful practice of collecting consumers' legally protected information. Courts across the country have allowed such claims to proceed, recognizing the serious privacy violations arising from Meta's data-harvesting practices. *See Frasco v. Flo Health, Inc.*, 2025 WL 1476905, at *1 (N.D. Cal. May 22, 2025) (order denying Meta's motion for summary judgment on the plaintiffs' CIPA 632 claim); *Rickwalder, et al. v. Meta Platforms, Inc.*, Docket No. 21-cv-383231 (Ca. Super. Ct., Santa Clara Cnty. Mar. 9, 2022); *In Re Meta Pixel Healthcare Litigation*, Docket No. 3:22-cv-03580 (N.D. Cal. June 17, 2022); *Forrest v. Meta Platforms, Inc.*, Docket No. 5:22-cv-03699 (N.D. Cal. June 23, 2022); *Doe v. Meta Platforms, Inc.*, Docket No. 3:22-cv-04680 (N.D. Cal. Aug. 15, 2022); *Doe v. Meta Platforms, Inc.*, Docket No. 3:22-cv-04963 (N.D. Cal. Aug. 30, 2022); *In Re Meta Pixel Tax Filing Cases*, Docket No. 5:22-cv-07557 (N.D. Cal. Dec. 1, 2022). This case fits squarely within that well-established pattern.

Here, Defendant unlawfully eavesdropped upon and recorded highly sensitive, private data concerning consumers' purchases of prescription and over-the-counter medications related to sexual and feminine health. Complaint ("Compl.") (ECF No. 1-1) ¶ 7. These allegations involve some of the most intimate categories of personal information. Despite knowing its conduct is unlawful,

Defendant continues its invasive practices because they generate billions of dollars annually in advertising revenue. Online advertising itself is not inherently improper, and Defendant could readily structure its data collection practices to comply with state privacy laws. Instead, it has chosen to disregard those laws in order to maximize profits. That choice is unlawful.

Accordingly, this action seeks to hold Defendant accountable for its intentional interception, recording, and exploitation of Plaintiffs' and class members' private information related to their feminine and sexual health. Defendant's Motion to Dismiss Plaintiffs' Complaint (ECF No. 13) ("MTD") does not grapple with Plaintiffs' well-pled allegations. Rather, it relies on misstatements of law and mischaracterizations of fact in an effort to prematurely discredit claims that are more than sufficient at the pleading stage. Plaintiffs have adequately alleged they did not consent to the collection of their confidential health information, that plaintiffs in fact had a reasonable expectation of privacy (particularly given the fact that information at issue is legally protected health information), that Defendant intentionally obtained such information via the Meta Pixel (a device for purposes of liability under CIPA Section 632), and that Defendant's intrusion was highly offensive. Because Plaintiffs have plausibly alleged violations of applicable privacy statutes, Defendant's Motion to Dismiss should be denied in its entirety.

## <u>STATEMENT OF FACTS</u>

Wisp hosts a Website where it offers its patients convenient access to a variety of medications including those for the treatment of sexual and reproductive health issues. Compl. ¶¶ 1–2. Wisp holds itself out to its patients—including Plaintiffs—as a provider of healthcare. *Id*. ¶¶ 22–24. Defendant was aware of the sensitivity of the private information it collected through the Meta Pixel from Wisp's Website. Nonetheless, Defendant continued to unlawfully collect private medical information from Wisp's Website for years due to the monetary value such information possessed. Upon eavesdropping and recording patients' sensitive personal information and reproductive or sexual health application information, Defendant linked this information with patients' identities, so that Defendant could monetize the data via targeted advertising on Facebook. *Id*. ¶¶ 19–60.

Defendant's Meta Pixel is a code snippet added to an advertiser's website (here, hellowisp.com) which provides tools for the advertiser to optimize advertising campaigns, retarget

Website visitors, and "track[] people and the type of actions they take." *Id.* ¶ 33; *see also id.* ¶¶ 34–39. The current iteration of Defendant's Meta Pixel is a software code that uses both first- and third-party cookies (*Id.* ¶54) to (1) collect and record users' website activity and (2) link website event data with user identities. *Id.* ¶¶ 31–39, 45–55. This means that even if third party cookies are blocked, the Meta Pixel still captures consumers' information, frustrating the privacy choices of consumers. The information collected through the Meta Pixel includes the patient's actions on the Website and data that differentiates users from one another which can be used to link that data to the user's Facebook profile. *Id.* ¶¶ 45–55. The cookies are used by Defendant to identify its members for Defendant's own advertising purposes. *Id.* ¶¶ 6, 37, 58–60, 87. Through the Meta Pixel, Defendant is able to make extremely personal inferences about individuals' demographics, intent, behavior, engagement, interests, buying decisions, and more. *Id.*

Through the Meta Pixel, Defendant tracked Plaintiff's and class members' activity from the moment they navigated to the Website, including events (information about which page on the Wisp Website the patients viewed and the selections they made on the particular web page). *See e.g. id.* ¶¶ 32, 37, 39–45. In short, Defendant eavesdrops upon and records nearly all of patients' confidential communications with Wisp when they are searching for and purchasing medication on the Website. Compl. ¶¶ 27–60.

Plaintiffs A.A. and C.M. are Facebook users who used the Wisp Website to purchase Norethindrone (birth control) and Metronidazole (bacterial vaginosis) medications, respectively. *Id.* ¶¶ 8–11. Unbeknownst to Plaintiffs, Defendant intentionally eavesdropped upon and recorded their communications with the Website via the Meta Pixel. *Id.* Defendant used the Meta Pixel to track Plaintiffs and record their communications with Wisp, including communications that contained confidential information related to their medications. *Id.* Wisp patients, including Plaintiffs, were unaware that the Metal Pixel was installed on the Website. *Id.* ¶¶ 8, 10, 14. Plaintiffs and class members never consented, agreed, authorized, or otherwise permitted Defendant to eavesdrop upon and record their confidential information and/or sell their data to advertisers. *Id.* ¶¶ 56, 59–60.

**LEGAL STANDARD**

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint

contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id*. (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## **ARGUMENT**

### I. PLAINTIFFS DID NOT CONSENT TO DEFENDANT'S COLLECTION OF THEIR PRIVATE HEALTH INFORMATION

Defendant argues that Plaintiffs' claims fail because "they consented to Meta's receipt of information about their activity on third-party websites" and "the disclosures in Wisp's Privacy Policy confirm Plaintiffs . . . consented to the data sharing." MTD at 8. Both arguments fail.

"On a motion to dismiss, the burden of proof to show consent rests with defendants." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077–78 (N.D. Cal. 2023) ("On this motion to dismiss, the issue of consent is front and center and the burden of proof to show this exemption applies is on Meta."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) ("Meta has the burden to show consent"); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1253 (N.D. Cal. 2024); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) ("Google next claims there was lawful consent from both the account holder and the websites. Google bears the burden of proof on consent"). Moreover, determining how a reasonable consumer would understand Defendant's Privacy Policy is a factual question not appropriate for resolution on the pleadings alone.

*See*, *e.g.*, *Doe v. Meta Platforms, Inc.,* 690 F. Supp. 3d at 1078 ("Determination of whether actual consent was given depends on what Meta disclosed to healthcare providers, how it described and trained healthcare providers on the Pixel, and how the healthcare providers understood the Pixel worked and the information that then could or would be collected by Meta."); *In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d at 793 ("to be effective, the consent must be to the particular conduct of the actor, or to substantially the same conduct . . . . [t]he test is whether a reasonable user who viewed Meta's disclosures would have understood that Meta was collecting the information at issue"); *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) ("[w]hether reasonable consumers would understand, based on the . . . Terms of Use or . . . Privacy Policy, that by using the . . . website they were consenting to the disclosure of their personally identifiable information … is a question that should be resolved on a fuller factual record."); *Hilfiker Square, LLC v. Thrifty Payless, Inc.*, 2016 WL 7031283, at *3 (D. Or. Nov. 29, 2016) ("dismissal at this stage in the proceedings is inappropriate, especially because a determination regarding the parties' objectively reasonable expectations generally involves a question of fact"); *Turner v. Nuance Commc'ns, Inc.,* 735 F. Supp. 3d 1169 (N.D. Cal. 2024) (declining to dismiss CIPA claim based on consent where "there is a factual dispute over whether the DAA sufficiently notified Plaintiffs of Nuance's conduct"); *McCoy v. Alphabet, Inc.,* 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) ("At the motion to dismiss stage, the Court is not prepared to rule that the Privacy Policy establishes an absolute bar to Plaintiff's claims.").

Here, Plaintiffs clearly allege "[a]t no time did Plaintiffs or Class Members consent to Facebook's conduct, nor could they reasonably expect that their communications to Wisp would be overheard or recorded by Facebook." Compl. ¶ 86; *see also id*. ¶¶ 7, 8, 10, 12, 60, 86, 91. Further, nowhere in the Complaint do Plaintiffs reference Wisp's Terms & Conditions, Wisp's Privacy Policy, Defendant's Privacy Policy, Meta's Terms and Conditions, Meta's Cookie Policy, or Meta's Privacy Policy. *Compare* Compl.; *with* ECF No. 13-1 at ¶¶ 7–27 (the "Blunschi Decl."). Nor does the Blunschi Decl. explain how Plaintiffs or putative class members would have been provided constructive notice of the privacy policies at issue here—and that settles the matter. *See Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *3 (N.D. Cal. Dec. 14, 2017)

(Corley, J.) (plaintiff did not consent to transmission because, conducting contractual assent analysis applicable to online agreements, and drawing all inferences in plaintiff's favor, defendant did not establish plaintiff had constructive or actual notice of terms); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023) ("To form a contract under California…law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent."). As such, Defendant's argument, even when erroneously relying on documents extraneous to the pleadings, fails.

That aside, even if Plaintiffs agreed to Meta's Terms, Cookie Policy, and Privacy Policy (they didn't), that assent cannot supply consent here absent any nexus to the relevant transaction. Defendant's interpretation would produce an absurd result—treating a user's agreement to terms concerning her activity *within* Meta's platform as agreement to Meta's surveillance of her activity on *every other* platform. *Cf. Revitch v. DIRECTV, LLC*, 977 F.3d 713, 724 (9th Cir. 2020) (O'Scannlain, J., concurring) (federal courts lack power to compel arbitration in cases without a nexus to the underlying transaction).

Notwithstanding, Defendant argues the general language in the privacy policies here allow it to collect ***any*** information its users provide online, including but not limited to their social security numbers, banking information, medical records, health information, or other sensitive information. Such an argument not only defies common sense, but is also contrary to the law. *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("However, as discussed above in the context of express consent, any consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising."); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ("In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."); *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) ("Google points to its Terms of Service and Privacy Policies, to which all Gmail and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The Court finds, however, that those policies did not explicitly notify Plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted

advertising."); *Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *2 (N.D. Cal. Sept. 23, 2024) (finding that "the Court cannot assess whether a reasonable user reading [the defendant's] privacy policies would have thought that he or she was consenting to [Meta's] collection practices[.]") (internal quotations omitted).

Meta has provided no evidence that any of its alleged policies "explicitly notify" Plaintiffs of the fact that it is eavesdropping upon and recording Plaintiffs' confidential communications, including Plaintiffs' confidential health information (Cal. Civ. Code § 1798.140(ae)(2)(C)), protected medical information (Cal. Civ. Code § 56.05(j)), and reproductive or sexual health application information (Cal. Civ. Code § 56.05(q)), from third party webpages. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793–94 ("I am skeptical that a reasonable user who viewed Meta's policies would have understood that Meta was collecting protected health information"); *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *6 (W.D. Wash. Dec. 19, 2023) (similarly doubting that a healthcare provider's general data collection disclosure in its privacy policy would inform a reasonable user that it extended to personal health information."). Here, Plaintiffs allege they did not consent nor did they authorize Defendant's recording and eavesdropping upon their confidential health information conveyed to Wisp. Compl. ¶¶ 7 (Defendant did not get "explicit consent"), 12 ("Facebook committed the interceptions at issue without Plaintiffs' knowledge, consent, or express written authorization"), 59–60, 86. Defendant never received consent from Plaintiffs or nor did it receive permission to use their sensitive and confidential health data for its own independent advertising purposes.

Defendant's acts and practices, as alleged, are an egregious breach of Plaintiffs' privacy. The authority upon which Defendant relies is distinguishable as the cases cited do not relate to legally protected health information. *See Silver v. Stripe Inc.*, 2021 WL 3191752 (N.D. Cal. July 28, 2021) (involving payment and checkout information); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1059 (N.D. Cal. 2025) (plaintiffs could not state a claim under the VPPA for the disclosure of their general video viewing information but defendant provided constructive notice of the data sharing practices")); *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (information related to general web browsing activity); *Lloyd v. Facebook, Inc.*, 2024 WL 3325389,

at *3 (9th Cir. July 8, 2024) (same); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (public data that did not "reveal details of an individual's health status or medical history" was not sensitive). In the only case Defendant cites pertaining to individual health information, *M.D. v. Google LLC*, the court granted defendant's motion as a result of a pleading issue, finding that "[plaintiffs] ha[d] not averred that the challenged data sharing practices were in place before Defendants' obtained Plaintiffs' consent to employ them." 2025 WL 2710095, at *5 (N.D. Cal. Sept. 23, 2025). The cited authority is inapplicable as that point is not in contention here.

Here, Plaintiffs specifically allege the data Defendant eavesdropped upon and recorded was sensitive and private medical and health information requiring explicit consent, which Defendant failed to receive. Compl. ¶¶ 12, 23, 19–26, 59, 75, 94. Crucially, Defendant acknowledges "courts have held that disclosures must 'specifically indicate' the particular types of data at issue to establish consent where 'sensitive' data is involved." MTD at 11; *L.B. v. LinkedIn Corp.,* 2025 WL 2782588, at *6 (N.D. Cal. Sept. 30, 2025) ("just because [plaintiffs] consented to [defendant] collecting its data from third-party websites does not give [defendant] carte blanche to collect any and all data"); *Calhoun v. Google, LLC*, 113 F.4th 1141, 1151 (9th Cir. 2024) ("Google itself created a situation where there is a dispute as to whether users' consent of Google's data collection generally is 'substantially the same' as their consent to the collection of their [non-synced] data in particular"). Even accepting Defendant's premise that its privacy policy disclosed collecting "purchases and transactions users make and match[ing] those activities with a user's account," MTD at 11 (cleaned up), that generic disclosure does not cover the alleged interception of sexual and reproductive health medication activity. Given that neither Defendant's nor Wisp's purported policies disclosed the conduct as issue here, Plaintiffs did not (nor could they have) consented to Defendant's conduct. *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 892 (S.D. Cal. 2025) ("[C]onsent is only effective if the person alleging harm consented to the particular conduct, or to substantially the same conduct and if the alleged tortfeasor did not exceed the scope of that consent.") (cleaned up).

Additionally, the CMIA requires ***authorization***—a more stringent standard than mere consent—before medical information may be used for advertising and marketing. Compl. ¶ 23; Cal. Civ. Code § 56.10(d) (Except to the extent expressly authorized by a patient . . . a provider of health

care . . . contractor, or corporation and its subsidiaries and affiliates shall not intentionally share, sell, use for marketing, or otherwise use medical information for a purpose not necessary to provide health care services to the patient."). Neither Wisp, nor Meta, received patient authorization. Compl. ¶¶ 12, 23, 59, 75, 94. While consent may allow certain uses or disclosures as necessary for the provision of actual health care services, it is not sufficient for uses or disclosures that require an authorization, including marketing. Cal. Civ. Code § 56.10(a), (d).[1]

## II. PLAINTIFFS STATE A CLAIM UNDER CIPA SECTION 632[2]

### A. <u>Defendant Intentionally Obtained Plaintiffs' Confidential Communications</u>

Defendant claims because "Meta's Business Tools Terms specifically prohibit businesses from sending it any health or sensitive information" it lacked the requisite intent. MTD at 13. That is wrong.

As a threshold matter, "[w]hether a person possesses the requisite intent under CIPA is generally a question of fact." *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 859 (W.D. Wash. 2024); *see also Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) ("While Google argues that judicially noticeable policy documents suggest that Google did not actually want to receive personally identifiable information and expressly prohibited developers from transmitting such data, this presents a question of fact that the Court cannot resolve at this stage."); *Hudson v. Superior Ct.*, 7 Cal. App. 5th 1165, 1171 (2017) ("[A] person's intent is a question of fact to be determined from all the circumstances of the case, and usually must be proven circumstantially") (internal citations omitted).

Interceptions and recordings are deemed to be intentional if the defendant is aware that the information it is recording may be confidential. *See In re Meta Pixel Tax Filing Cases*, 724

[1] This extends to any protected health information under HIPAA as well. *Compare* 45 C.F.R. § 164.508 (authorizations); *with* ECF No. 13-24 at 2–3, 11; ECF No. 13-25 at 2–3, 10; ECF No. 13-26 at 4; ECF No. 13-27 at 4.

[2] Defendant argues the statute should be "construed as favorably to [Meta] as its language . . .may reasonably permit." MTD at 8 (citing *People v. Hyatt*, 109 Cal. App. 5th 735, 793–94). In doing so, Defendant invokes the rule of lenity—applicable to criminal statutes. However, CIPA contains a private civil remedy (§ 637.2), and this is a civil action. Moreover, the rule of lenity does not override plain statutory language or permit courts to rewrite clear prohibitions. *People v. Braden*, 14 Cal. 5th 791, 824 (2023) (there must be an "egregious ambiguity and uncertainty to justify invoking the rule [of lenity]").

F.Supp.3d 987, 1002–03 (N.D. Cal. Mar. 25, 2024) (finding allegations that Meta intended to intercept confidential tax filing information were sufficient); *L.B. v. LinkedIn Corp.*, 2025 WL 2782588, at *12 (inferring intent where the "theory is that [defendant's sole purpose for providing the [software] to advertisers is to collect user data and profit from selling advertising services fueled by that data. . . . . With this theory in mind, the Court could infer that [defendant] intentionally invaded Plaintiffs' privacy rights to maintain or increase its high profits"); *Smith v. Google, LLC*, 735 F.Supp.3d 1188, 1198 (N.D. Cal. June 3, 2024) (same). "[I]nterceptions may [also] be considered intentional where a defendant is aware of the defect causing interception and takes no remedial action." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020); *see also Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1044 (N.D. Cal. 2014) (collecting cases). While *In re Google Assistant Priv. Litig.* involved a claim under the federal Wiretap Act, CIPA applies the same standard. *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *3 (N.D. Cal. Sept. 16, 2024) ("The analysis for a violation of CIPA is the same analysis for a violation of the federal Wiretap Act."); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020); *Yoon*, 2024 WL 5264041, at *4. For CIPA § 632(a), the statute punishes "a person who intends to make a recording of a confidential communication." *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 435 (2018) (internal quotation marks and citation omitted).

Here, Plaintiffs adequately allege knowledge and intent under each applicable cause of action. *See* Compl. ¶¶ 5–6, 12–15, 28–59. Plaintiffs allege that the Meta Pixel is designed for the purpose of recording and analyzing communications between Defendant's customers (like Wisp) and consumers (like Plaintiffs and class members). Compl. ¶¶ 28–59; *see also Gladstone*, 739 F. Supp. 3d at 860 (finding intent element under CIPA § 632(a) satisfied where "[the complaint] alleges that Amazon Connect is designed for the purpose of recording and analyzing communications between its customers (like Capital One) and consumers or other entities"). Defendant also knew the Meta Pixel may eavesdrop upon and record "sensitive" data as evidenced by Meta's Business Tools Terms, which specifically acknowledges that the Meta Pixel could be configured to share "health" information with Facebook. *See* MTD at 15. Defendant's knowledge is further gleaned from its role as a defendant in other litigations where the Business Tools, including the Meta Pixel,

have been used to eavesdrop upon, record, and intercept information. *Frasco v. Flo Health, Inc.*, Docket No. 3:21-CV-00757 (N.D. Cal.); *Rickwalder, et al. v. Meta Platforms, Inc.*, Docket No. 21-cv-383231 (Ca. Super. Ct., Santa Clara Cnty. Mar. 9, 2022); *In Re Meta Pixel Healthcare Litigation*, Docket No. 3:22-cv-03580 (N.D. Cal. June 17, 2022); *Forrest v. Meta Platforms, Inc.*, Docket No. 5:22-cv-03699 (N.D. Cal. June 23, 2022); *Doe v. Meta Platforms, Inc.*, Docket No. 3:22-cv-04680 (N.D. Cal. Aug. 15, 2022); *Doe v. Meta Platforms, Inc.*, Docket No. 3:22-cv-04963 (N.D. Cal. Aug. 30, 2022); *In Re Meta Pixel Tax Filing Cases*, Docket No. 5:22-cv-07557 (N.D. Cal. Dec. 1, 2022).

Despite being aware that the Meta Pixel records confidential information, Defendant has failed to take remedial action to prevent such recording, including in this case. That is intentional. Defendant is fully aware of the value such protected information holds and intends to record it to feed it into its advertising machinery. Defendant has also failed to destroy the protected health information it received from Plaintiffs, evidencing intent. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 827–28 ("[T]he Court finds that Defendants' failure to rectify the defect causing 'false accepts' or destroy the recordings produced under such circumstances could plausibly be considered 'intentional' rather than 'a result of accident or mistake.'"). On the contrary, Defendant has affirmatively *used* the protected health information it eavesdropped upon and recorded via the Meta Pixel to improve its advertising machinery and generate revenue. Compl. ¶¶ 6, 14, 27–29, 33, 37–39, 65. Indeed, Plaintiffs were targeted with similar advertisements promoting sexual and reproductive health medications after visiting the Website. *Id.* ¶ 11. In short, Defendant's recording of Plaintiffs' and class members' confidential health information was no accident, it was intended by Defendant. Otherwise, Defendant would not have used the recorded confidential information to power its own algorithms and advertising products to derive a profit. *Id.* ¶¶ 6, 14, 27–29, 33, 37–39, 65.

Defendant further argues that its Business Tools Terms exonerate it from liability. MTD at 15. But this argument has been squarely rejected in other similar cases. Judge Orrick's opinion in *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) is instructive. There, Judge Orrick explained:

> While plaintiffs acknowledge that Meta may tell third parties and Facebook users that it intends to prevent receipt of sensitive health information, plaintiffs contend that is not what Meta really intends . . . What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record. . . At this stage, intent has been adequately alleged.

*Id*. at 1076; *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1003 (same).

The same analysis applies here. Defendant acts contrary to its stated position in its Business Tools terms by collecting sensitive data by the means set forth above. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003 (N.D. Cal. 2024) ("Meta argues that it could not have intended to receive the information at issue because its Business Tools Terms forbid developers from sending sensitive information to Meta and require that developers have all necessary rights and permissions to lawfully share whatever information they send. . . [T]he Court cannot conclude from their mere existence that Meta and developers intended to or did comply with the terms rather than deviating from them to their mutual benefit."). Defendant's intent is, at minimum, a question of fact. *Id.*; *Gladstone*, 739 F. Supp. 3d at 860 ("Defendant points out that it contractually requires companies that use Amazon Connect to provide notice and obtain consent from their customers . . . but the Court is not convinced that [Defendant's] inclusion of a catch-all provision requiring its customers to comply with the law generally is enough to satisfy its legal obligations under CIPA.") (cleaned up).

Defendant argues that "it was *Wisp*, not Meta, that integrated this software into their website." MTD at 10–11. But as stated above, Defendant obtained and used the recorded health information for its own benefit, which strongly evidences intent. Compl. ¶¶ 6, 14, 27–29, 33, 37–39, 65.

The weight of the authority favors Judge Orrick's opinion in *Doe v. Meta Platforms, Inc. See Meta*, 690 F. Supp. 3d at 1076; *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1003 (N.D. Cal. 2024) ("Meta's argument presents a question of fact that the Court cannot resolve at this stage. Whatever agreements may have been in place, those agreements do not establish as a matter of law that Meta did not intend to receive the information plaintiffs claim was transmitted."); *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *11 (N.D. Cal. Aug. 22, 2023) (finding intent met with

regard to implementation of the Facebook Tracking Pixel and rejecting many of the same arguments raised by Defendant here).

Defendant's reliance on *Doe I v. Google LLC* does not change this reasoning. In *Google*, there was no allegation that "Google intends to feed the information into its own advertising machinery." 741 F. Supp. 3d at 836. Judge Chhabria even acknowledged that his departure from *Meta Platforms, Inc.* could "lie[] in what precisely was alleged in each complaint." *Id.* at 841. Here, Plaintiffs allege that Defendant knowingly receives the confidential medical and health information from Wisp and integrates it into its proprietary advertising products (such as Core and Custom Audiences) to make them more compelling for advertisers (and thereby to derive a profit). Compl. ¶¶ 27–59. Therefore, the Court should follow Judge Orrick's opinion in *Meta Platforms, Inc.*

### B. <u>The Meta Pixel Is A Device For Purposes Of Liability Under Section 632</u>

Defendant argues that the Meta Pixel is "simply source code" and "intangible code is not a device." MTD at 16. That is wrong.

Numerous courts have determined that software, and in particular the Meta Pixel, is a "device" under CIPA § 632(a), and Defendant has provided no reason for this Court to deviate from those decisions. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d at 1080, *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) ("I agree that the Pixel software is a device under section 632(a)"); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024) ("The Court agrees with those Ninth Circuit district court decisions that have found that software qualifies as a device under Section 632."); *Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) ("Plaintiffs have plausibly alleged that the Apple Apps at issue in this case constitute a 'device' under Section 632."); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856 (W.D. Wash. 2024), 739 F. Supp. 3d at 856 ("[T]he Court finds that 'device,' as used in Section 632, can include software").

Here, Plaintiffs specifically allege Defendant knowingly designed the Pixel software to intercept and record sensitive data, including health information. Compl. ¶¶ 14–15, 33–39. This is precisely the kind of privacy violation the California Legislature sought to prevent by enacting CIPA. "[T]he Legislature enacted [CIPA] to address concerns that 'advances in science and technology

have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications." *Kight v. CashCall, Inc.*, 133 Cal. Rptr. 3d 450, 455–56 (2011) (quoting Cal. Penal Code § 630). Similarly, "the California Supreme Court has also emphasized that all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA." *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022).

Defendant's reliance on *Moreno* and *In re Google Location History* Litigation is misplaced. For instance, § 637.7 defined the relevant term, "electronic tracking device," around physical attachment: as any device "attached to a vehicle or other movable thing," By contrast "the California legislature expressly intended that CIPA not be tethered to any particular technology" and recognized "advances . . . in technology" as a "'serious threat' to privacy." *Frasco v. Flo Health, Inc.*, 2025 WL 2680068, at *17 (N.D. Cal. Sept. 17, 2025) (quoting Cal. Pen. Code § 630). The text of § 632 also uses different words and a different object. It prohibits using an "electronic amplifying or recording device" to eavesdrop or record a confidential communication—it lacks any "attached" requirement, and it is aimed at interception and recording, not location trackers. In sum, as Defendant acknowledges, *Moreno* and *In re Google Location History* pertained to an entirely different statutory provision. *Compare Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017) (under § 637.7, the phone application was not a device because it couldn't be attached to a moving object as required by the statute); *In re Google Location Hist. Litig.,* 428 F. Supp. 3d 185, 195 (N.D. Cal. 2019) (same); *with Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023) ("The section 637.7 cases are distinguishable, and absent contrary authority under section 632(a), I agree that the Pixel software is a device under section 632(a)"). Accordingly, the Pixel is a device under section 632.Finally, even if a physical device is required, Plaintiffs' smartphones and computers "fit the bill." *Flo Health*, 2025 WL 2680068, at *17. Meta's software development kit and tracking pixel must "operate[] on [a] device" and a physical device is "essential to the[ir] operation." *Id*. Defendant's attempted dismissal on a strict construction of the term "device" in§ 632(a) fails on this basis, too.

### C. <u>Plaintiffs Adequately Allege Defendant Used The Meta Pixel To Eavesdrop Upon And Record Plaintiffs' Communications</u>

Defendant argues that Plaintiffs' Section 632 claim also fails because "Meta itself does not 'use' code from the [Meta] Pixel." MTD at 17. That is wrong.

Both Plaintiffs' allegations, and Meta's purported Policies make clear Defendant "uses" the Pixel. *See e.g.* Compl. ¶¶ 14–15, 37–39, 55–58; ECF No. 13-4 at 2 (how Meta uses event data); ECF No. 13-5 at 2 (how Meta uses cookies); ECF No. 13-16 at 2–3 (same); ECF No. 13-18 at 2, 6 (same). Moreover, the weight of the case law supports Plaintiffs position, as courts regularly deny motions to dismiss claims under Section 632 under analogous allegations. *See, e.g. Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d at 1079–81; *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1003–04; *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 690 (N.D. Cal. 2021) ("With respect to the first argument, the Court rejects it. Apple argues that it does not use an electronic recording device to eavesdrop because the Plaintiffs control their iPhones. But the Court does not consider this provision to impose a stringent requirement."). Additionally, Plaintiffs allege Defendant's entire business model depends on collecting personal data to enable targeted advertisements. The Complaint alleges that Plaintiffs "received targeted advertisements on Facebook relating to sexual and reproductive health medications" after their Wisp purchases. Compl. ¶ 11. This targeted advertising demonstrates that Defendant actually used the recorded health information—not merely received it accidentally. *See infra*–Section II.A. regarding Defendant's intentional actions.

Defendant misapprehends Plaintiffs allegations, by suggesting "both 'eavesdrop' and 'record' are actions that by their plain meaning must occur in real time as the communication is occurring" and the "events" Defendant receives are "secondhand" information not communications. MTD at 17.[3]

Plaintiffs clearly allege "[a]t relevant times, two sets of code were thus automatically run as part of the browser's attempt to load and read the Website—Wisp's own code and Facebook's embedded code." Compl. ¶ 33. The Complaint further details how the Meta Pixel allows Meta to

[3] Defendant seems to be making an argument that Plaintiffs do not allege that the recordings occurred "in transit," however this textual requirement only appears in CIPA Section 631.

intercept, record, and eavesdrop upon communications contemporaneously and concurrently from Wisp's Website. Compl. ¶¶ 27–69; *supra* Section II.D. Nothing more is required.

**D. Plaintiffs Adequately Allege Their Communications Were Confidential**

Defendant contends "Plaintiffs do not, and cannot, allege an 'objectively reasonable expectation' that their purchase actions were not being recorded." MTD at 18. That is wrong.

Cal. Penal Code § 632(c) defines "confidential communication" as:

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

Defendant's argument is flawed because it mischaracterizes Plaintiffs' Complaint as pertaining to "purchase actions" ***not*** the sensitive personal information (Cal. Civ. Code § 1798.140(ae)(2)(C), protected medical information (Cal. Civ. Code § 56.05(j)), and reproductive or sexual health application information (Cal. Civ. Code § 56.05(q)) that pertain to such purchases. Compl. ¶¶ 19–26. Indeed, ***none*** of the authority Defendant relies upon relates to medical information. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 117 Cal. Rptr. 2d 574, 41 P.3d 575 (2002); *Boulton v. Community.com, Inc.*, 2025 WL 314813 (9th Cir. Jan. 28, 2025); *Rodriguez v. Google LLC*, 2021 WL 2026726 (N.D. Cal. May 21, 2021); *People v. Nakai*, 183 Cal. App. 4th 499, 107 Cal. Rptr. 3d 402 (2010).

Defendant argues that because internet activity "can be" tracked, no reasonable person expects privacy—conflating notice of general internet practices with notice of specific third-party eavesdropping upon and recording of healthcare communications. *Ribas v. Clark*, 38 Cal.3d 355, 360–61 (1985), is clear:

> while one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or a mechanical device.

The Complaint alleges precisely this scenario: Plaintiffs communicated with Wisp expecting confidentiality due to the legal protections afforded to the information being disclosed; even so Meta simultaneously intercepted and recorded that communication through undisclosed tracking code. Compl. ¶¶ 19–60. For the reasons stated above, as well as those discussed *supra*–Section III (Plaintiffs had a reasonable expectation of privacy in the disclosed information), Plaintiffs communications were confidential. *See e.g., In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 800 ("plaintiffs will likely be able to show that they had an objectively reasonable expectation that their communications with their medical providers were confidential based on the laws and regulations protecting the confidentiality of medical information").

Plaintiffs' communications to Wisp involved prescription medications for reproductive and sexual health conditions. Compl. ¶¶ 8–9, 25–26. Such information is legally protected under California's Confidentiality of Medical Information Act (CMIA) and California Consumer Privacy Act (Cal. Civ. Code § 1798.100 et seq.) (Compl. ¶¶ 21–26); and Plaintiffs accessed Wisp through a website interface with reasonable expectation that patient-provider communications would remain confidential as Wisp claims to be a "provider of healthcare" (Compl. ¶¶ 3, 7, 23–24, 27–28), and Plaintiffs had no notice that Defendant would receive their prescription information contemporaneously with their communications to Wisp. Compl. ¶¶ 40–55.

## III. PLAINTIFFS STATE A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION

Defendant argues Plaintiffs' invasion of privacy claims fails because "allegations that *Wisp* sent purchase data to Meta fail[s] to show that *Meta* committed any highly offensive intrusion." MTD at 19–20. That is wrong.

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive*." In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Plaintiffs satisfy both elements.

***First,*** it is well-settled "that, although not absolute, people have a privacy interest in their 'medical history and information.'" *Ojeda v. Kaiser Permanente Int'l., Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D.

Cal. 2022) ("plaintiffs will likely be able to show that they had an objectively reasonable expectation that their communications with their medical providers were confidential based on the laws and regulations protecting the confidentiality of medical information"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020); *Norman-Bloodsaw v. Lawrence Berkeley Lab'y,* 135 F.3d 1260, 1269 (9th Cir. 1998) ("The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality").

Here, Plaintiffs' communications with the Website contained legally protected information relating to their medications, including sensitive personal information (Cal. Civ. Code § 1798.140(ae)(2)(C), protected medical information (Cal. Civ. Code § 56.05(j)), and reproductive or sexual health application information (Cal. Civ. Code § 56.05(q)). Compl. ¶¶ 19–26. Moreover, as discussed *infra*–Section I, Plaintiffs never consented to these recordings.[4] Plaintiffs allegations are clear Defendant's "invasion of privacy was serious in nature, scope, and impact because it related to patients' private medical communications." *Id.* ¶ 95.

Nonetheless, Defendant attempts to recharacterize its recordings as "purchase information," disregarding the increased protections the California Legislature provides to the legally protected medical and health information at issue here. *Id.* ¶¶ 19–26. This is fatal to Defendant's argument. None of the authority upon which Defendant relies deals with the disclosure of medical information (here, medication information related to sexual and feminine health). *Compare Hubbard I*, 2024 WL 3302066, at *7 (video data; deemed highly offensive in *Hubbard v. Google LLC*, 5:19-cv-07016, ECF No. 318 at 9 (N.D. Cal Jan. 13, 2025) ("*Hubbard II*")); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022) (download of apps, without more, was not offensive because "not specific or personal"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (geolocation data); *Weston v. Lefiti*, 2024 WL 4579237 (9th Cir. Oct. 25, 2024) (dismissal of ECPA claim where the recorder of the call was a party to the communication); *with Rusow v. SkinSpirit Essential LLC*, 3:24-cv-09317, ECF No. 44 (N.D. Cal. Oct. 15, 2025) (medical and

---

[4] As discussed *infra*–Section I, protected health information under HIPAA and protected information under the CMIA (Compl. ¶¶ 22–26), require an ***authorization*** to use such information for marketing purposes.

cosmetic appointments were protected medical information under the CMIA and disclosure was highly offensive); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 801; *In re Ambry Genetics Data Breach Litigation*, 567 F. Supp. 3d 1130 (C.D. Cal 2021) (medical information); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 926 (S.D. Cal. 2020) (same).

***Second,*** "assessing the degree of offensiveness . . . presents a policy question that often evades resolution at the pleading stage." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("*Hubbard I*"); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) ("Whether [defendant's] collection and storage of location data . . . was highly offensive to a reasonable person is a question of fact.") (citing *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 606 (9th Cir. 2020)).

Even so, Plaintiffs have identified sufficient facts to survive a motion to dismiss because they plead Defendant surreptitiously collected their private health information in unexpected ways (and contrary to Defendant's express assertions in its Privacy Policy). *Rusow v. SkinSpirit Essential LLC*, 3:24-cv-09317, ECF No. 44 (N.D. Cal. Oct. 15, 2025) (medical and cosmetic appointments were protected medical information under the CMIA and disclosure was highly offensive); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 801 ("Meta's policies forbid the transmission of health-related information, which the Ninth Circuit has found to be relevant in the 'highly offensive' inquiry" (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606)).

## IV. DEFENDANT'S ASSERTIONS THAT THE COMPLAINT DISMISSED SHOULD BE DISMISSED WITH PREJUDICE ARE WITHOUT MERIT

Defendant's motion is riddled with unsupported contentions that Plaintiffs' Complaint should be dismissed with prejudice. *See e.g,.* MTD at 8 (arguing this is Plaintiffs' fourth iteration of the complaint), 20 (arguing Plaintiffs have repeatedly amended but still fail to state their claims). However, it is well recognized that Courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). As explained by the Supreme Court, "this mandate is to be heeded." *Foman v.*

*Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Ninth Circuit has found a failure to abide by this mandate to result in reversible error. *Lopez*, 203 F.3d at 1131. Should the Court grant Defendant's Motion to Dismiss, it should be with leave for Plaintiffs to amend. *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1280 (9th Cir. 2023) (explaining under Rule 41, legal prejudice does not include uncertainty because a dispute remains unresolved, threat of future, and the mere inconvenience of defending another lawsuit); *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.

Dated: December 15, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *_/s/ Sarah N. Westcot_*

Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com
sbeck@bursor.com

**STERLINGTON, PLLC**
Arturo Peña Miranda (State Bar No. 325108)
Jennifer Czeisler (*pro hac vice* forthcoming)
Edward Ciolko (*pro hac vice* forthcoming)
228 Park Ave. South, #97956
New York, New York 10003
Telephone: (212) 433-2993
Email: arturo.pena@sterlingtonlaw.com
jen.czeisler@sterlingtonlaw.com
edward.ciolko@sterlingtonlaw.com

*Counsel for Plaintiffs*