LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| A.A. and C.M., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:25-cv-08852-JSC<br><br>**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Hearing: January 29, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 8—19th Floor<br>Judge: Hon. Jacqueline Scott Corley |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Plaintiffs' Claims Fail Because Plaintiffs Consented To Meta's Receipt Of Their Data ........ 2

B. Plaintiffs' Claims Fail Because Plaintiffs Do Not Allege That Meta Intended To Obtain Sensitive Data ........ 6

C. Plaintiffs' Section 632 Claim Fails For Additional Reasons ........ 10

1. Pixel Code Is Not A "Device" ........ 10

2. Plaintiffs Fail To Allege Meta "Used" The Pixel To Eavesdrop On Or Record Plaintiffs' Communications ........ 11

3. Plaintiffs Fail To Allege A Confidential Communication ........ 13

D. Plaintiffs Cannot Save Their Invasion of Privacy Claim ........ 14

E. The Court Should Dismiss With Prejudice ........ 15

III. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Albrecht v. Lund*,
845 F.2d 193, *amended by* 856 F.2d 111 (9th Cir. 1988) ..... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 7

*Bailey v. United States*,
516 U.S. 137 (1995) ..... 13

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) ..... 13, 14

*Copley Press, Inc. v. Superior Ct.*,
39 Cal. 4th 1272 (2006) ..... 13

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) ..... 15

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025) ..... 8

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ..... 2, 7, 9, 10

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ..... 9, 10, 11, 13

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..... 3

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..... 3, 8, 10, 12

*F.C.C. v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) ..... 10

*Facebook, Inc. v. BrandTotal Ltd.*,
2021 WL 662168 (N.D. Cal. Feb. 19, 2021) ..... 3

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ..... 14

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ..... 3

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ..... 11

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ..... 5

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ..... 14

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..... 10

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ..... 11

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ..... 3

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..... 3, 6, 15

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. Mar. 25, 2024) ..... 8, 12

*L.B. v. LinkedIn Corp.*,
2025 WL 2782588 (N.D. Cal. Sept. 30, 2025), *amended and superseded by*
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ..... 8

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ..... 5

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ..... 11

*Lloyd v. Facebook*,
2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) ..... 4

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024) ..... 6, 8

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ..... 12

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) ..... 7, 8

*Maxwell v. Dolezal*,
231 Cal. App. 4th 93 (2014) ..... 3

*Moreno v. San Francisco Bay Area Rapid Transit District*, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ... 4, 11

*People v. Hyatt*, 109 Cal. App. 5th 735 (2025) ... 11

*People v. Nakai*, 183 Cal. App. 4th 499 (2010) ... 14

*People v. Superior Ct. of Los Angeles Cnty.*, 70 Cal. 2d 123 (1969) ... 1, 7, 8, 9

*Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020) ... 5

*Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989 (9th Cir. 2019) ... 3

*Ribas v. Clark*, 38 Cal. 3d 355 (1985) ... 11, 13

*Rusow v. SkinSpirit Essential LLC*, No. 3:24-cv-09317, Dkt. 44 (N.D. Cal. Oct. 15, 2025) ... 14

*Silver v. Stripe Inc.*, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ... 2

*Smith v. Facebook*, 745 F. App'x 8 (9th Cir. 2018) ... 5, 6

*Smith v. LoanMe, Inc.*, 11 Cal. 5th 183 (2021) ... 13

*Tsering v. Meta Platforms, Inc*, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026) ... 14, 15

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015) ... 1, 7, 9

*Weston v. Lefiti*, 2024 WL 4579237 (9th Cir. Oct. 25, 2024) ... 3

*Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945 (N.D. Cal. 2024) ... 11

**STATUTES**

Cal. Penal Code § 631(a) ... 12

Cal. Penal Code § 632(a) ... 3, 12

Cal. Penal Code § 632(c) .......... 13

Cal. Penal Code § 637.7 .......... 11

**RULES**

Fed. R. Civ. P. 9(b) .......... 9

## I. INTRODUCTION

Plaintiffs' opposition confirms they have not stated either their CIPA Section 632 or their invasion of privacy claim against Meta, even after filing four complaints based on the same alleged conduct. Plaintiffs repeatedly seek to lower the pleading bar, ignoring Ninth Circuit and California precedent, but they cannot overcome the serious deficiencies in their claims. The complaint should be dismissed with prejudice.

*First*, both of Plaintiffs' claims fail on consent grounds because Meta's policies clearly disclose the conduct Plaintiffs challenge—namely, that Meta could receive information about "purchases and transactions you make" on other sites, as well as "cookies" that help Meta "match your activities with your account" for advertising. Dkt. 13-11 at 6. Plaintiffs vaguely urge the Court to disregard Meta's policies, but they provide no factual basis to suggest they did not agree to those policies (as all Facebook users do); nor do they dispute the authenticity of the policies, which are judicially noticeable and incorporated by reference. On the substance, Plaintiffs claim Meta's disclosures were not sufficiently specific to cover their purchases of medication, but Plaintiffs provide no basis to read Meta's disclosure that it would receive "purchase[]" information from other websites as excluding such purchases. Nor do Plaintiffs even address Wisp's Privacy Policy, which disclosed that Wisp would use analytics technologies to share information about activities on its site, further confirming that Plaintiffs were on notice of the data sharing at issue. This dooms both of Plaintiffs' claims.

*Second*, Plaintiffs' claims fail because Plaintiffs do not allege facts indicating that Meta acted "purposefully and deliberately" to obtain the allegedly sensitive data at issue, *United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015), or that Meta knew "to a substantial certainty" that third-party use of its technology "w[ould] result in the recordation of a confidential conversation," *People v. Superior Ct. of Los Angeles Cnty.*, 70 Cal. 2d 123, 134 (1969) ("*Smith*"). Plaintiffs do not even bother to argue they satisfy these standards. Nor could they, given that, on their own allegations, Meta received the information at issue only because *Wisp* installed and configured the Pixel code on its website, and allegedly transmitted sensitive information in violation of Meta's Business Tools Terms. Plaintiffs instead urge this Court to follow

nonprecedential cases applying a lower "awareness" standard. This Court should reject that approach, just as Judge Chhabria did in *Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) ("*Google Pixel I*").

*Finally*, Plaintiffs' responses to the independent, claim-specific deficiencies fare no better. As to the Section 632 claim, Plaintiffs fail to show that Pixel code—which is simply *code*—is a "device" within the statute's plain meaning. Nor do Plaintiffs seriously engage with the statutory requirements that Meta (1) "use" a device, (2) to eavesdrop on or record Plaintiffs' communications—neither of which Plaintiffs come close to satisfying. Indeed, Plaintiffs' interpretation of Section 632 is so far-reaching that Meta could not possibly have had fair notice of it, which is yet another reason for rejecting Plaintiffs' claim. And Plaintiffs misunderstand the standard for assessing whether communications are "confidential" as specifically defined in Section 632. As to Plaintiffs' invasion of privacy claim, Plaintiffs fail to allege a highly offensive intrusion from Meta's alleged *receipt* of information that Meta prohibited Wisp from sending.

Because Plaintiffs failed to cure these deficiencies even after filing multiple complaints, the Court should dismiss with prejudice.

## II. ARGUMENT

### A. Plaintiffs' Claims Fail Because Plaintiffs Consented To Meta's Receipt Of Their Data

Plaintiffs' claims fail because Plaintiffs consented to Meta's receipt of information from third-party websites that integrate Pixel code. Mot. 8-13. Meta's policies, to which all users must agree, clearly disclose that Meta may receive information from third-party websites, including about "purchases and transactions" a user makes, and use that information for advertising. *Id*. at 10-11; Dkt. 13-11 at 6. Wisp's disclosures also independently confirm that Plaintiffs were on notice of the data sharing they challenge. Plaintiffs' arguments to the contrary lack merit.

***Plaintiffs must allege lack of consent.*** At the outset, Plaintiffs claim that *Meta* must show consent. Opp. 4-5. But they do not dispute that "lack of consent is an element" of their CIPA claim. *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2, 4-5 (N.D. Cal. July 28, 2021). Nor could they, as CIPA integrates lack of consent into its core description of the wrongful conduct, prohibiting use

of a device to eavesdrop on or record communications "intentionally and *without the consent* of all parties." Cal. Penal Code § 632(a) (emphasis added); *see* Mot. 9.[1] As the Ninth Circuit has explained, "the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record." *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019).

Plaintiffs' cases do not show otherwise. Two address only claims under the federal Wiretap Act, which is structured differently. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077-78 (N.D. Cal. 2023); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022). And the others simply follow those cases in the CIPA context without considering differences in the statutes. *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1253 (N.D. Cal. 2024); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022). It is clear from CIPA's statutory structure that lack of consent is an *element.* It is therefore Plaintiffs' burden to allege facts showing lack of consent. Their conclusory allegations (Opp. 5) do not suffice.

Even if consent were an affirmative defense, it is still grounds for dismissal where, as here, consent is "obvious on the face of a complaint" and judicially noticeable materials. *See Weston v. Lefiti*, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024); *Facebook, Inc. v. BrandTotal Ltd.*, 2021 WL 662168, at *8 (N.D. Cal. Feb. 19, 2021). And, contrary to Plaintiffs' argument, Opp. 4-5, courts regularly dismiss CIPA and privacy claims on consent grounds at the pleading stage. Mot. 9 (citing cases). This Court should do the same.

***The Court should consider Meta's policies.*** Plaintiffs raise a number of scattershot arguments urging this Court to disregard Meta's policies. None holds water.

*First*, Plaintiffs baldly assert that even though they are Facebook users, they somehow did not agree to Meta's Terms of Service, Privacy Policy, or Cookies Policy. Opp. 6; *see* Compl. ¶ 11 (plaintiffs "each maintained" Facebook accounts). Plaintiffs point to no facts to support that implausible assertion. To the contrary, Plaintiffs' complaint itself cites Facebook's sign-up page, Compl. ¶ 27 n.5, which states that users "agree to our Terms, Privacy Policy, and Cookies Policy"

---

[1] *See also Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135-36 (N.D. Cal. 2015) (holding that lack of consent is an element under Section 637.6, which prohibits disclosure "without the prior written consent of the individual"); *Maxwell v. Dolezal*, 231 Cal. App. 4th 93, 97 (2014) (similar for statute prohibiting use of name or likeness "without such person's prior consent").

(all hyperlinked) "[b]y clicking sign up." Dkt. 13-6; *see* Mot. 10 (citing cases recognizing that all Meta users agree to Meta's Terms and policies). Plaintiffs themselves thus cite a source suggesting "how [they] would have been provided constructive notice of [Meta's] policies." Opp. 5.

Nor does Plaintiffs' citation of *Moreno v. San Francisco Bay Area Rapid Transit District* help them. Opp. 5-6. There, this Court found no assent to a privacy policy where there was "a single hyperlink to the Privacy Policy at the end of the User Agreement directly after a paragraph which state[d] that the User Agreement 'constitutes the entire agreement.'" 2017 WL 6387764, at *3 (N.D. Cal. Dec. 14, 2017) (Corley, J.). Here, by contrast, Plaintiffs themselves cite a sign-up screen that requires assent to each of the policies at issue. *See* Compl. ¶ 27 n.5; Dkt. 13-6. Meta's Terms of Service also clearly incorporate its Privacy Policy by stating that the "Privacy Policy," which is hyperlinked, "explains how we collect and use your personal data to determine some of the ads you see and provide all of the other services described below." Dkt. 13-7 at 1; *see also id.* at 3, 4 (repeatedly referencing Privacy Policy). The Privacy Policy likewise incorporates the Cookies Policy by reference. *See, e.g.*, Dkt. 13-11 at 8 ("Read more about information we receive from partners … in our Cookies Policy"); *see also id.* at 14. Thus, by agreeing to the Terms of Service, a user also agrees to the Privacy Policy and Cookies Policy. *See Lloyd v. Facebook*, 2022 WL 4913347, at *4 (N.D. Cal. Oct. 3, 2022) (finding linked Data Policy incorporated by reference). Given that backdrop, Plaintiffs cannot simply assert that "they didn't" agree to these policies. Opp. 6. It is their burden to allege *facts* plausibly showing that they somehow signed up for an account without agreeing to Meta's policies. They do not.

*Second*, Plaintiffs also assert that the Court cannot consider the policies because "nowhere in the complaint do Plaintiffs reference … Meta's Terms and Conditions, Meta's Cookie Policy, or Meta's Privacy Policy." *Id.* at 5. That is wrong. Plaintiffs explicitly cite Meta's Cookies Policy in their complaint. *See* Compl. ¶¶ 48 n.28, 53 n.34. And Plaintiffs also cite the sign-up page, which references all three documents. *Id.* ¶ 27 n.5. Given these citations, Plaintiffs' selective reliance on only certain Meta webpages, and the fact that Meta's disclosures form the basis of Plaintiffs' claims, these policies are incorporated by reference, and they are also judicially noticeable. *See* Dkt. 14 at 4-10. Plaintiffs have not opposed Meta's request for judicial notice and incorporation

by reference or identified any basis to dispute the authenticity of these documents, and at times, they affirmatively *rely* on the documents to purportedly support their claims. *See* Opp. 10, 19. Plaintiffs thus cannot avoid Meta's Terms and policies, which foreclose their claims.

*Third*, Plaintiffs suggest this Court can disregard Meta's policies because they lack a sufficient "nexus" to the "underlying transaction"—a requirement that Plaintiffs invent based on an inapposite concurrence analyzing language in the Federal Arbitration Act. Opp. 6 (citing *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 724 (9th Cir. 2020) (O'Scannlain, J., concurring)). Even if that test applied, though, Meta's policies, which explicitly address receipt of browsing and purchase activity sent by third-party websites, clearly apply to the transactions at issue. There is nothing "absurd" about that. In fact, the Ninth Circuit concluded as much in *Smith v. Facebook*, when it affirmed dismissal of CIPA and privacy-tort claims because the plaintiffs had consented to collection of data from third-party websites by agreeing to Meta's policies. 745 F. App'x 8, 8-9 (9th Cir. 2018). The same is true here.

***Meta's policies explicitly disclosed the conduct at issue.*** As to the actual content of Meta's policies, Plaintiffs object that Meta did not "'explicitly notify' [them]" of the practice at issue. Opp. 7. But Meta's policies did just that—they explained that Meta would receive information about "[p]urchases and transactions you make" on other websites, as well as identifying information including "cookies," and use that information for targeted advertising. *See* Mot. 10-12. No "more granular" disclosure is required. *Lakes v. Ubisoft*, *Inc.*, 777 F. Supp. 3d 1047, 1056 (N.D. Cal. 2025); *see also Hammerling v. Google, LLC*, 2024 WL 937247, at *1-2 (9th Cir. Mar. 5, 2024) (declining to narrowly construe broad disclosures in Google privacy policy).

Those disclosures do not somehow become less explicit merely because Plaintiffs' purchases were related to medication, as they claim throughout their brief. *E.g.*, Opp. 7-8. As Plaintiffs ultimately acknowledge, the relevant question for consent is whether "a reasonable user who viewed Meta's disclosures would have understood that Meta was collecting the information at issue." *Id.* at 5 (citation omitted). As the Ninth Circuit has twice concluded, the answer to that question is yes: Meta's policies disclose that Meta will "collect[] its users' data from third party sites and [] later us[e] the data for advertising purposes." *Smith*, 745 F. App'x at 8-9 (addressing

health-related browsing data); *see Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024). And the analysis is especially straightforward here because Meta specifically disclosed that it would receive purchase information from other websites—the very type of information at issue. The Privacy Policy makes no distinction between purportedly "sensitive" and non-sensitive purchases, and Plaintiffs cannot alter its terms by reading in such a limitation. Mot. 11-12.

Wisp's disclosures, which Plaintiffs do not even address, also confirm that Plaintiffs were on notice that Wisp could share their personal information with third parties. *Id*. at 12-13. Wisp's Privacy Policy disclosed that Wisp would use "pixel tags" and "third-party analytics services" to collect information about activity on its site, and that it used "cookies" to collect identifiers. Dkt. 13-24 at 4-5. Plaintiffs thus had ample notice that Meta could receive information about their purchases on Wisp's site.

Plaintiffs' fleeting suggestion that the heightened consent requirements of the CMIA might apply, *see* Opp. 8-9, is baseless. Plaintiffs have not asserted, and could not assert, a CMIA claim against Meta, and Plaintiffs cite no authority for the notion that a different consent standard applies to CIPA and privacy claims that allegedly involve "health-related" data. *Id*. at 5, 18-19. If anything, this argument simply confirms that Plaintiffs have sued the wrong party: Plaintiffs allege that *Wisp* is subject to the CMIA, not Meta. Compl. ¶ 24. If Plaintiffs wanted to bring a CMIA claim, their recourse would be with Wisp. *See* Dkt. 1 ¶¶ 67-77, *A.A. v. Wisp, Inc.*, No. 3:24-cv-05733-JSC (alleging CMIA claim against Wisp). Either way, Plaintiffs' claims against Meta should be dismissed because Plaintiffs consented to Meta's receipt of the information at issue.

### B. Plaintiffs' Claims Fail Because Plaintiffs Do Not Allege That Meta Intended To Obtain Sensitive Data

Plaintiffs' claims also fail because Plaintiffs do not (and cannot) allege that Meta intended to obtain the allegedly sensitive data at issue. *See* Mot. 13. While Plaintiffs repeatedly argue that intent is a question of fact, Opp. 9, that does not absolve Plaintiffs of their pleading burden to *allege* facts that plausibly show Meta's intent. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009) ("conclusory" allegation of intent insufficient); Mot. 8.

Plaintiffs agree with Meta that the intent standard under CIPA mirrors the federal Wiretap

Act's standard. *See* Opp. 10. Plaintiffs must therefore allege that Meta acquired the data at issue "*purposefully and deliberately*." *Christensen*, 828 F.3d at 790 (emphasis added); Mot. 13-14. California courts have also held that even where, unlike here, a defendant itself chooses to use recording equipment, Section 632's intent element requires, at the very least, "knowledge *to a substantial certainty* that [the defendant's] use of the equipment will result in the recordation of a confidential conversation." *Smith*, 70 Cal. 2d at 134 (emphasis added).

Plaintiffs do not even try to argue that they meet these standards. Plaintiffs instead attempt to lower the bar, arguing that Meta acted "intentional[ly]" if Meta was merely "aware that the information it is recording *may* be confidential." Opp. 9 (emphasis added); *see id.* at 10-11 (arguing that "other litigations" made Meta aware that confidential information could be recorded). That standard is entirely untethered from the statutory text, and it "set[s] the legal bar too low" under *Christensen*. *Google Pixel I*, 741 F. Supp. 3d at 840. It is also facially inconsistent with *Smith*'s requirement that even where a defendant's own use is at issue, a defendant must know "to a substantial certainty" that its use of equipment *will* record a confidential communication. 70 Cal. 2d at 134. Indeed, the California Court of Appeal rejected a virtually identical argument, holding that a party did not act with intent where it was merely "'aware that equipping police cars with recording devices *could* record sensitive personal communications between employees.'" *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 727-28 (2022) (emphasis added).

Plaintiffs try to support their lower standard by pointing to cases decided before *Google Pixel I*, which rest on the notion that intent may be inferred at the motion-to-dismiss stage where a defendant is aware of, and fails to remedy, a *defect* in its own product, over which it has sole control. Opp. 10-11. Those cases are wrong, as *Google Pixel I* explains. And in any event they are inapposite here, where Plaintiffs allege that a third party (Wisp) *misused* Pixel code in a way that allegedly transmitted sensitive data (in violation of Meta's terms). Allegations of a third party's misuse of Pixel code do not show *Meta*'s intent to obtain information, especially given Meta's policies *prohibiting* third parties from sending sensitive information. Mot. 14 n.7; *Lloyd*, 2024 WL 3325389, at *1 ("conclusory assertion" of intent based on third-party misconduct insufficient).

California cases reinforce this point. *Smith* held that intent could be shown where a

defendant acts "with the knowledge to a substantial certainty that *his* use of the equipment" will record a confidential communication. 70 Cal. 2d at 134 (emphasis added). When a *third party* uses the "equipment," however, there is no clear basis to infer the *defendant's* intent to obtain a confidential communication. In fact, *Lozano* affirmed a finding that recordings did not violate Section 632 where plaintiffs "presented no evidence to establish who activated the system," and thus could not establish that the defendant "intentionally" recorded a confidential communication. 73 Cal. App. 5th at 728. Decisions extending the "defect" cases to third-party misuse cases fail to adequately grapple with *Christensen*, California case law, or the statutory text. *See, e.g.*, *Doe v. Meta Platforms*, 690 F. Supp. 3d at 1076; *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1002-03 (N.D. Cal. Mar. 25, 2024).

The one post-*Google Pixel I* case Plaintiffs cite, *L.B. v. LinkedIn Corp.*, also failed to consider the nature of the communications at issue. 2025 WL 2782588, at *11 (N.D. Cal. Sept. 30, 2025), *amended and superseded by* 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025). The court found intent sufficiently alleged based on Plaintiffs' theory "that LinkedIn's sole purpose for providing the Insight Tag to advertisers is to collect user data" for advertising, suggesting that collection of *any* data might be problematic, without analyzing whether LinkedIn intended to record *confidential* communications. But allegations about intent to collect information in general do not suffice. *See Doe I v. Google LLC*, 2025 WL 1616720, at *2 (N.D. Cal. June 6, 2025) ("*Google Pixel II*"). In fact, Plaintiffs expressly concede there is nothing "inherently improper" about "[o]nline advertising." Opp. 2; *see Google Pixel I*, 741 F. Supp. 3d at 841 ("There is nothing inherently unlawful about" offering "source code" like pixel code "to health care providers[.]"). Making a lawful advertising tool available to third parties cannot establish Meta's intent to receive *confidential* communications via that tool, particularly where Meta explicitly prohibits third parties from sending such communications. *Google Pixel I*, 741 F. Supp. 3d at 841.

Plaintiffs try to twist the Business Tools Terms to suggest that Meta's explicit prohibition on sharing "health" information means that Meta "acknowledges" that the Pixel "could" be used to share such information. Opp. 10. But that argument simply underscores why Plaintiffs' intent allegations are insufficient: The mere possibility that a third party *could* use a tool improperly does

not equate to "conscious[] and deliberate[]" action "with the *goal*" of intercepting communications, *Christensen*, 828 F.3d at 791 (emphasis added), or even knowledge "to a substantial certainty" that anyone *would* use that tool to record a confidential communication, *Smith*, 70 Cal. 2d at 134. And Meta's prohibition demonstrates that Meta "purposefully acted so as *not* to receive any personal health information." *Google Pixel I*, 741 F. Supp. 3d at 840.[2]

Plaintiffs purport to distinguish *Google Pixel I* by claiming that the plaintiffs there did not allege Google intended to use the collected information for profit. Opp. 13. That is wrong. The *Google Pixel I* plaintiffs included an entire section on "[h]ow Google [m]onetizes the [] [i]nformation" by using it "for personalized advertising in its advertising systems." *See* Am. Compl. ¶¶ 123-54, Dkt. 86, *Doe I v. Google LLC*, No. 3:23-cv-02431-VC. Even so, as Judge Chhabria explained, allegations that Google used "the private health information" "in its own advertising systems to make money" still failed to "plausibly allege" Google intentionally *intercepted* private health communications. *Google Pixel I*, 741 F. Supp. 3d at 837-38, 844. Plaintiffs' arguments that Meta "failed to take remedial action" and "failed to destroy" data, Opp. 11, are insufficient for the same reason. Neither the alleged failure to "prevent[] the inadvertent transmission of private information," nor mere retention, demonstrates an "intent to *obtain* the information" in the first place. *Google Pixel I*, 741 F. Supp. 3d at 840 (emphasis added). That is particularly true here, where Meta told developers how to configure Pixel code to *avoid* sending information, including "button click" data. Dkt. 13-5 at 9; *see* Dkt. 13-3 at 2; Mot. 3.

In short, Plaintiffs' arguments are fundamentally inconsistent with *Christensen*, *Smith*, and *Lozano*. And, to the extent Section 632 is ambiguous, courts should "resolve [those] ambiguities in favor of the narrower interpretation" under the rule of lenity. *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *1, *3 (N.D. Cal. Oct. 17, 2025) (applying rule to CIPA). Failing to do so would impermissibly expand the scope of California's criminal eavesdropping statute to cover even the inadvertent receipt of expressly unwanted information, which raises constitutional

[2] Plaintiffs contend the Court cannot resolve disputed facts based on the Business Tools Terms. *See* Opp. 11-12. But there is no dispute about the existence or contents of the Terms. And Plaintiffs include no allegations suggesting those Terms were somehow a sham—a contention that would be subject to Rule 9(b). *Google Pixel I*, 741 F. Supp. 3d at 841-42.

concerns about fair notice or arbitrary enforcement. *Id.* at *6 n.9 (noting constitutional vagueness concerns in construing CIPA provision); *see F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). As another court recently noted, if CIPA is interpreted expansively, "companies have no way of telling whether their online business activities will subject them to liability." *Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *1.

Because Plaintiffs cannot show that Meta intended to obtain any confidential communication or to intrude on their privacy, Plaintiffs' claims should be dismissed.

### C. Plaintiffs' Section 632 Claim Fails For Additional Reasons

#### 1. Pixel Code Is Not A "Device"

Plaintiffs' Section 632 claim fails because it applies only to "device[s]," and Pixel code is not a "device" within the meaning of the statute. Mot. 16-17.

Rather than engage with the text and structure of the statute, Plaintiffs cite four cases purportedly holding that software is a "device." Opp. 13-14. But these cases rest on a misreading of an earlier case, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015), which analyzed an entirely different question. In *Doe v. Meta Platforms*, for example, the court considered *In re Carrier IQ* to be the case "[m]ost on point" in determining the meaning of "device" in Section 632. 690 F. Supp. 3d at 1080. But in *In re Carrier IQ*, the defendant argued that its software was not a "device" under the federal Wiretap Act only based on a specific exception for a "telephone or telegraph instrument, equipment or facility, or any component thereof." 78 F. Supp. 3d at 1084. The court rejected the argument that the software was a "component" (which has nothing to do with Meta's argument here) because the exception applied only in particular circumstances. *Id.* Based on *that* analysis, the court concluded that "Plaintiffs have sufficiently alleged that the Carrier IQ Software is a 'device' for purposes of the Wiretap Act." *Id. Doe v. Meta* and the other cases Plaintiffs cite mistakenly seize on that single, inapposite sentence to hold that software is a "device," contrary to the plain meaning of the term. *See Doe v. Meta*, 690 F. Supp. 3d at 1080; *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024); *see also Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) (relying on *Doe v. Meta* and *Yockey*); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856 (W.D. Wash. 2024) (relying on

*Doe v. Meta*). They thus cast no light on the meaning of the term "device" in Section 632.

Plaintiffs' other arguments against construing "device" according to its plain meaning fare no better. *First*, Plaintiffs attempt to dismiss *Moreno* and *In re Google Location History Litigation*, both of which concluded that software was not a device, because those cases involved a different provision of CIPA—namely, Section 637.7, which requires that the device be "attached to a vehicle or other movable thing." Opp. 14. But both cases also looked to the "plain meaning" of the term "device," including by consulting dictionaries, to conclude a "device" refers to physical equipment. *Moreno*, 2017 WL 6387764, at *4-5; *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193-94 (N.D. Cal. 2019). That plain meaning applies equally here—and should apply consistently across the statutory scheme. Mot. 16-17. Further, Section 632's own language, which refers to tangible objects, similarly confirms that "device" is limited to such objects in that section too and does not encompass a piece of code like the Pixel. *See id.*

*Second*, Plaintiffs invoke the privacy-protective purpose of CIPA, Opp. 13-14, but that general purpose does not override the statutory text. The California Supreme Court has acknowledged that individual provisions of CIPA are directed to different "aspect[s] of the privacy problem," and has analyzed each provision according to its own "operative language." *Ribas v. Clark*, 38 Cal. 3d 355, 359-60 (1985). Section 632's particular "device" requirement thus cannot be ignored in the name of achieving the statute's general aims. Moreover, as a *criminal* statute, CIPA must be read narrowly, not broadly, if there is any ambiguity. *See People v. Hyatt*, 109 Cal. App. 5th 735, 793-94 (2025) (a penal statute should be construed "as favorably to the defendant as its language and the circumstances of its application may reasonably permit"); *Eating Recovery Ctr.*, 2025 WL 2971090, at *6 (relying on rule of lenity to narrowly construe CIPA provision).

*Finally*, Plaintiffs point to cases that suggest software must be a "device" because it cannot operate without some kind of hardware. Opp. 14. But concluding that software must *run on* a device to function simply confirms that software code is not itself a "device" under CIPA.

#### 2. Plaintiffs Fail To Allege Meta "Used" The Pixel To Eavesdrop On Or Record Plaintiffs' Communications

Even if Pixel code could be considered a "device," Plaintiffs' allegations that Wisp sent

Meta certain "event" data about Plaintiffs' purchases fail to allege that *Meta* (1) "use[d] an electronic amplifying or recording device," Cal. Penal Code § 632(a), (2) to eavesdrop on or record Plaintiffs' communications with Wisp. Mot. 17-18.

As to the statute's "use" requirement, Plaintiffs do not explain how *Meta* used Pixel code—the alleged amplifying or recording device (Compl. ¶ 84)—when Wisp was the one that integrated that code onto its own website. *Id.* ¶ 33. Merely "creat[ing]" code, *id.* ¶ 14, for third parties to use is not the same as using that code oneself. Plaintiffs suggest that allegations that Meta "uses event data" and "cookies" suffice to allege that Meta "uses" the Pixel. Opp. 15; *see, e.g.*, Compl. ¶¶ 37-39. But again, using *data* sent by a third party through a device is not the same as using the alleged "device" itself; unlike other provisions of CIPA, Section 632 applies only to the latter conduct. *Cf.* Cal. Penal Code § 631(a) (prohibiting "use" of certain "information").

Plaintiffs' case law does not support them either. Two of the decisions they cite do not address this argument at all.[3] And *Lopez v. Apple*, which did consider this argument, is not persuasive. There, the court found the "use" requirement satisfied where Apple allegedly programmed its *own* software and devices—namely, Siri on Apple iPhones—in a particular way. Opp. 15 (citing 519 F. Supp. 3d 672, 690 (N.D. Cal. 2021)). Here, by contrast, Plaintiffs allege that a third party—Wisp—configured Pixel code on its own website to improperly record certain information. Those allegations do not show that *Meta* "use[d]" Pixel code to record a confidential communication. *See Bailey v. United States*, 516 U.S. 137, 143 (1995) (statute punishing "use" of a firearm requires "active employment of the firearm by the defendant"). And, while *Lopez* deemed the "use" requirement "not . . . stringent," it cannot simply be ignored—courts must "strive to give effect and significance to every word and phrase" in a statute. *Copley Press, Inc. v. Superior Ct.*, 39 Cal. 4th 1272, 1284 (2006). That is especially critical here, because Section 632 is a penal statute that must be strictly construed. Its sweep would be far too expansive and uncertain if a *third party*'s use of a device could impose liability. Both lenity and constitutional avoidance counsel

---

[3] *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d at 1079-81 (addressing arguments about extraterritoriality, whether Pixel code is a "device," intent, and whether communication was sent or received in California); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1003-04 (addressing consent and "contents" arguments).

against that interpretation. *See* Mot. 17; *Eating Recovery Ctr.*, 2025 WL 2971090, at *6 n.9.

As to the requirement of eavesdropping on or recording Plaintiffs' communications, Plaintiffs contend they allege "simultaneous dissemination" of their communications by alleging that "two sets of code were … automatically run" when Wisp's website loaded, including Pixel code.[4] Opp. 15-16. But the code that Plaintiffs allege was "run" allegedly transmitted "events" generated *in response to* Plaintiffs' actions on the website. Mot. 18. That is, at most, "secondhand repetition of [] contents," which Section 632 does not penalize. *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 191, 200 (2021). And Plaintiffs' other vague references to Meta's alleged capacity to "intercept, record, and eavesdrop … contemporaneously and concurrently," Opp. 15-16, simply restate the requirement of simultaneous dissemination, without any factual content.

### 3. Plaintiffs Fail To Allege A Confidential Communication

As Meta explained, Section 632 specifically defines a "confidential communication" to "exclude[] a communication made" in circumstances "in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c). Because Plaintiffs necessarily must have known their purchase information would be recorded to fulfill their orders, those communications were not "confidential" under Section 632.

Plaintiffs do not contest that they knew information related to their purchases would, at minimum, be recorded by Wisp. Instead, they ignore the statutory definition, arguing that they had a general expectation of privacy in their medication purchases and that Meta's cited cases do not "relate[] to medical information." Opp. 16-17; *see id.* at 17 (emphasizing "legal protections" for medical information). But Section 632 does not focus on the *content* of communications. It focuses on the *circumstances* of the communication and whether the plaintiff had a reasonable expectation of *recording*, by anyone. *E.g.*, *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) (text messages, which "are by nature recorded"); *People v. Nakai*, 183 Cal. App. 4th 499 (2010) (internet chat messages). Indeed, the California Supreme Court has explicitly

---

[4] Plaintiffs note that the text of Section 632 does not require that data be recorded "in transit." Opp. 15 n.3. But eavesdropping and recording can only be accomplished in real time, and Plaintiffs themselves agree that Section 632 is concerned with "*simultaneous* dissemination to an unannounced second auditor." Opp. 16 (quoting *Ribas*, 38 Cal. 3d at 360-61) (emphasis added); *see* Mot. 17-18.

rejected a test that relies solely on content to determine when a communication is confidential, explaining that such a rule could *lessen* privacy protections by prohibiting recording only of conversations on certain topics. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002).

By the same token, the statute does *not* apply where circumstances indicate to a reasonable person that their conversation will be recorded, no matter how "sensitive" the information. For example, someone texting their pharmacy to refill a prescription should expect that text message to be recorded, since text messages are by their very nature recorded. *Boulton*, 2025 WL 314813, at *2. The same is true here. When Plaintiffs made their online purchases, they reasonably expected the information to be recorded for the order to be fulfilled. That means such communications are not "confidential" under Section 632.

### D. Plaintiffs Cannot Save Their Invasion of Privacy Claim

Plaintiffs' invasion of privacy claim fails because they fail to allege any intentional intrusion or any reasonable expectation of privacy given their consent. *Supra* at 2-6; Mot. 9, 13. It also fails because they do not allege any egregious, highly offensive intrusion.

Plaintiffs suggest that whether an intrusion is highly offensive cannot be resolved at the pleading stage. Opp. 19. But courts "do in fact[] decide the 'highly offensive' issue … at the pleading stage when appropriate." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024); *see Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026) (dismissing invasion of privacy claim for failure to allege Meta engaged in highly offensive conduct). This is such a case. Plaintiffs allege only that Meta *received* data from Wisp, based on *Wisp*'s choice to use Pixel code. That is not an egregious intrusion.

Plaintiffs again editorialize their pleadings, contending that they allege highly offensive behavior because they allege collection of information "contrary to Defendant's express assertions in its Privacy Policy." Opp. 19. But the complaint contains no allegations that Meta's receipt of information contravened any language in its Privacy Policy. In fact, the Privacy Policy expressly discloses that Meta *may* receive purchase information from other websites. *Supra* at 5-6.

Nor do Plaintiffs' cases support them. In *Rusow v. SkinSpirit Essential LLC*, plaintiffs sued a website that provided skincare health services, and the court concluded that the website's *own*

disclosure of health information via its use of certain technologies constituted highly offensive conduct. No. 3:24-cv-09317, Dkt. 44 at 23-25 (N.D. Cal. Oct. 15, 2025). By contrast, here, Plaintiffs have sued Meta based on its alleged receipt of information that *Wisp* chose to send—a starkly different circumstance. *In re Meta Pixel Healthcare Litigation* does not change the analysis either. There, the court incorrectly relied on laws forbidding *disclosure* of health information to conclude that Meta's *receipt* of information was highly offensive—but that simply does not follow. 647 F. Supp. 3d at 800-01. Plaintiffs' invocation of the CMIA and HIPAA's restrictions on disclosure are unavailing for the same reason. The *Meta Pixel Healthcare Litigation* court also suggested that Meta's policies *forbidding* transmission of health-related information supported its conclusion that the receipt of such information could be highly offensive. *Id.* at 801. But the case on which the court relied involved *internal* documents recognizing an alleged privacy issue. By contrast, here, Meta contractually "forbid[s] the transmission of health-related information" or any information without consent in its Business Tools Terms with web developers. Opp. 19. And there is certainly no basis to conclude that Meta *knew* it was receiving Plaintiffs' data without consent. *Tsering*, 2026 WL 89320, at *7. This confirms Meta's conduct was not egregious.

### E. The Court Should Dismiss With Prejudice

Plaintiffs assert that the Court should not dismiss the complaint with prejudice. Opp. 19-20. But dismissal with prejudice is appropriate "where plaintiffs have failed to plead properly after 'repeated opportunities.'" *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011). Here, Plaintiffs have had four attempts to plead their claims. Compl. (Dkt. 1); Dkts. 1, 38, 55, No. 3:24-cv-05733-JSC. And leave to amend would be futile in any event. *Albrecht v. Lund*, 845 F.2d 193, 195, *amended by* 856 F.2d 111 (9th Cir. 1988). No allegations would allow Plaintiffs to state a claim based on conduct to which they consented; transform Pixel code into a "device" within the meaning of Section 632; or show that Meta "used" that alleged device, when *web developers* are the ones who use the Pixel. Accordingly, dismissal should be with prejudice.

## III. CONCLUSION

Meta respectfully requests dismissal of the complaint with prejudice.

Dated: January 15, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Melanie M. Blunschi*

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*