LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| A.A. and C.M., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:25-cv-08852-JSC<br><br>**DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT**<br><br>Hearing: July 31, 2026<br>Time: 9:00 a.m.<br>Location: Courtroom 8—19th Floor<br>Judge: Hon. Jacqueline Scott Corley |

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Plaintiffs' Original Federal Action ..... 2

B. Plaintiffs' Removed State Court Action ..... 3

C. Motion To Dismiss Hearing And Consent Stipulation ..... 4

D. Plaintiffs' Motion For Leave To Amend ..... 5

III. LEGAL STANDARD ..... 7

IV. ARGUMENT ..... 7

A. The Court Should Deny Leave To Add The Federal Wiretap Act Claim ..... 8

B. The Court Should Deny Leave To Add The CIPA Section 631 Claim ..... 9

C. The Court Should Deny Leave To Add Eleventh-Hour Allegations About Additional Information That Was Supposedly Transmitted ..... 11

D. Plaintiffs' Other New Allegations Are Extraneous And Futile ..... 14

V. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
781 F.2d 1393 (9th Cir. 1986) ....................8, 13

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
465 F.3d 946 (9th Cir. 2006) ....................12

*Baptiste v. Dep't of Def.*,
2025 WL 2049187 (D. Haw. Feb. 13, 2025) ....................10

*Chodos v. W. Publ'g Co.*,
292 F.3d 992 (9th Cir. 2002) ....................7, 11

*Doe ex rel. U.S. v. Vratsinas Constr. Co.*,
853 F. App'x 133 (9th Cir. 2021) ....................13

*Ereikat v. Michael & Assocs., PC*,
2015 WL 4463653 (N.D. Cal. July 21, 2015)....................14

*Foman v. Davis*,
371 U.S. 178 (1962)....................7

*Guevara v. Marriott Hotel Svcs. Inc.*,
2013 WL 6172983 (N.D. Cal. Nov. 25, 2013) ....................8

*Holt v. Cnty. of Orange*,
91 F.4th 1013 (9th Cir. 2024) ....................10

*Jackson v. Bank of Haw.*,
902 F.2d 1385 (9th Cir. 1990) ....................7, 8

*Lau v. Gen Digit. Inc.*,
2023 WL 10553772 (N.D. Cal. Sep. 13, 2023) ....................10

*Lawrence v. Shein US Servs., LLC*,
2025 WL 388566 (D. Mass. Jan. 27, 2025)....................9

*Lockheed Martin Corp. v. Network Sols., Inc.*,
194 F.3d 980 (9th Cir. 1999) ....................11

*M/V Am. Queen v. San Diego. Marine Constr. Corp.*,
708 F.2d 1483 (9th Cir. 1983) ....................13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ....................7

*Price v. Shell Oil Co.*,
682 F. App'x 569 (9th Cir. 2017) ....................14

*Royal Ins. Co. of Am. v. Sw. Marine*,
194 F.3d 1009 (9th Cir. 1999) ....................8

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....................13

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
921 F.2d 409 (2d Cir. 1990)....................9

## STATUTES

18 U.S.C.
§ 2511....................3
§ 2511(2)(d) ....................9

Cal. Penal Code
§ 631.................... *passim*
§ 632....................3, 5, 14
§ 632(c) ....................5, 12

## RULES

Fed. R. Civ. P. 15 ....................1

## I. INTRODUCTION

Plaintiffs have kept this case at the starting line for nearly two years. Yet on the brink of some progress in the matter, they ask this Court for leave to file a *fifth* complaint. Plaintiffs seek to resurrect two claims—under the federal Wiretap Act and CIPA Section 631—that they included in their initial case and then deliberately dropped when they voluntarily dismissed that case and filed this new action (initially in state court). Plaintiffs also seek to allege, for the first time, that Wisp configured the Pixel code to send Meta more information than what they alleged in their four prior complaints. Plaintiffs' proposed amended complaint is contrary to the spirit of the Court's comments at the recent motion to dismiss hearing, and it comes too late, to the prejudice of both the Court and Meta. That alone provides grounds to deny Plaintiffs' motion for leave to amend. Plaintiffs' proposed amendments are also futile, because they fail to cure any of the deficiencies in Plaintiffs' claims, as Meta will detail in a motion to dismiss if the Court grants leave to amend.

This case has a tortured procedural history. Plaintiff A.A. originally filed suit in federal court in August 2024, against both Meta and Wisp—the website developer that allegedly improperly used Meta's publicly available pixel code in a way that transmitted Plaintiffs' purchase information on its website to Meta. Meta moved to dismiss, and Plaintiffs filed their first amended complaint within the time permitted by Rule 15, adding claims and parties. Plaintiffs then amended again by leave of court to correct the parties. But just one court day before Meta was to file its motion to dismiss the second amended complaint, Plaintiffs voluntarily dismissed the entire action, without warning or explanation. Two and a half months later, they refiled the same action in state court, dropping Wisp, as well as their federal Wiretap Act claim and their CIPA Section 631 claim. When Meta removed under the Class Action Fairness Act (CAFA), Plaintiffs did not seek a remand. And when this Court sought briefing from the parties on CAFA jurisdiction, Plaintiffs never gestured toward any plan to reallege a federal claim—instead forcing the Court and the parties to grapple with the nuances of the home-state-defendant and local-controversy exceptions to CAFA.

Having resolved the jurisdictional question, this Court was finally able to hold a motion to dismiss hearing on May 8, 2026. At that hearing, this Court proposed to "cut to the chase" by

converting Meta's motion to dismiss to a partial motion for summary judgment on consent and allowing the parties to factually resolve whether Plaintiffs agreed to Meta's Terms of Service and incorporated policies, so the Court could then resolve the substantive question of whether Plaintiffs consented to Meta's receipt of the purchase information allegedly sent as a result of Wisp's use of pixel code. Tr. of Mot. to Dismiss Hr'g ("Tr.") 10:9-11:24, Dkt. 40. At no point during the hearing did Plaintiffs ever suggest they would seek leave to amend the complaint, let alone that they intended to ask for leave to add entirely new claims and purportedly material facts that have been available since the outset but that they failed to include in any of the four prior versions of their complaint. Rather, the parties agreed to meet and confer on a stipulation related to consent. And after doing so, Plaintiffs stipulated that they had in fact agreed to Meta's Terms of Service and incorporated policies—specifically, the exact same documents that Meta submitted with its motion to dismiss and asked the Court to consider pursuant to the incorporation-by-reference doctrine. *See* Dkt. 41; Dkts. 13-7 through 13-18; Dkt. 14.

The question of consent should therefore have been ready for this Court's resolution. But Plaintiffs' motion for leave to amend now asks this Court to start over at square one—this time adding back two claims that Plaintiffs previously abandoned and allegations about new information purportedly sent to Meta in addition to the purchase information they continue to use to define the putative class. This Court should deny the motion for leave to amend because undue delay, bad faith, and prejudice all counsel in favor of that result.

## II. BACKGROUND

### A. Plaintiffs' Original Federal Action

Plaintiff A.A. filed a class action lawsuit against Meta and Wisp on August 22, 2024, in this Court. *See A.A. v. Wisp, Inc., and Meta Platforms, Inc.*, Case No. 3:24-cv-05733-JSC (N.D. Cal.) ("First Action"). Plaintiff A.A. alleged that Wisp improperly used Meta's Pixel code to send information to Meta indicating that she purchased medication on Wisp's website a year earlier in August 2023. *Id.*, Dkt. 1. She brought claims against Meta for violations of CIPA Sections 631 and 632 and a common-law claim for invasion of privacy. *Id.* The complaint also included a claim under the California Confidentiality of Medical Information Act (CMIA) against Wisp alone. Meta

moved to dismiss on November 5, 2024, contending (among other things) that Plaintiff A.A. could not state her claims because she had consented to Meta's receipt of her data by agreeing to Meta's Privacy Policy, which explained that Meta could receive information about "purchase[s]" users make on third-party websites. First Action, Dkt. 25 at 11.

Over the next several months, Plaintiff amended her complaint twice. The first amendment added a new Plaintiff (Plaintiff C.M.), who alleged that she booked medical appointments and made purchases through Wisp's website from March 2022 to June 2024. First Action, Dkt. 38, ¶¶ 6-7. Both Plaintiffs still alleged that only information about their purchases was actually sent to Meta at the time of their website visits. *See id.* ¶¶ 47-48. Plaintiffs also added a new federal claim under the Wiretap Act, 18 U.S.C. § 2511, against Meta. *Id.* ¶¶ 77, 132-161. And they added a new defendant that was allegedly Wisp's parent company, new allegations about Wisp's privacy policy and its legal violations under the CMIA, and a new negligence claim against the Wisp entities.

A few months later, Plaintiffs sought and received leave to amend to identify different Wisp parent companies as additional defendants. First Action, Dkts. 50, 54. In April 2025, however, Plaintiffs voluntarily dismissed their claims against Wisp and its parent companies. *Id.*, Dkt. 59. Then, a month later, on May 23, 2025—one court day before Meta was to file its motion to dismiss—Plaintiffs voluntarily dismissed the entire action without prejudice (and without warning or explanation to Meta). *Id.*, Dkt. 64.

### B. Plaintiffs' Removed State Court Action

Two and a half months later, on August 12, 2025, Plaintiffs filed this action against Meta (but not Wisp) in the Superior Court of California, County of San Mateo. *See* No. 3:25-cv-08852-JSC (N.D. Cal.) (Second Action), Dkt. 1-1. Plaintiffs' new complaint alleged only CIPA Section 632 and invasion of privacy claims against Meta, while dropping the CIPA Section 631 claim, the federal Wiretap Act claim, and the claims specific to Wisp (CMIA, negligence). The complaint otherwise alleged the exact same facts about each Plaintiff as the previous three complaints: that A.A. and C.M. had used Wisp's website and that Meta had allegedly received information about their purchases on the site. *Id.* ¶¶ 8-11.

Meta removed the action to this Court under CAFA, *see* Dkt. 1, and Plaintiffs did not seek to remand. Meta also promptly moved to dismiss Plaintiffs' complaint, again arguing that Plaintiffs consented to Meta's receipt of data based on Meta's disclosures, including its disclosure that it could receive "purchase" information from third-party websites. *See* Dkt. 13.

On January 26, 2026, this Court vacated the scheduled motion to dismiss hearing and ordered the parties to show cause "as to how the local controversy exception or the home state exceptions to CAFA jurisdiction do not apply to this case." Dkt. 25 at 2. Meta explained that neither CAFA exception applied because there were no facts from which the Court could determine that the required threshold of class members are California citizens. *See* Dkt. 26. Plaintiffs agreed, but stated that they "must avail themselves of discovery" to "obtain [] information" about "class members' citizenship" that might support remand to state court down the road. Dkt. 27 at 2.

On February 13, 2026, the Court explained that it "agree[d] with Plaintiffs," and sought to provide "the opportunity to conduct meaningful discovery into class members' citizenship." Dkt. 28 at 2. The Court set a case management conference and ordered the parties to file a "plan and deadlines for discovery … for purposes of establishing whether the CAFA exceptions apply." *Id.* Plaintiffs and Meta accordingly met and conferred about potential jurisdictional discovery, and agreed that no discovery available would allow the Court to make findings regarding the citizenship of the class. *See* Dkt. 32. The Court held a conference with the parties on April 1, 2026 to discuss jurisdictional discovery. *See* Dkt. 34. After hearing from the parties, the Court concluded it could retain jurisdiction and set argument on Meta's motion to dismiss. *Id.* At no time in this process did Plaintiffs suggest that they planned to amend to reallege their claim under the federal Wiretap Act, which would have independently conferred federal jurisdiction.

**C. Motion To Dismiss Hearing And Consent Stipulation**

This Court held a hearing on Meta's motion to dismiss on May 8, 2026. At the hearing, the Court focused on consent as a key issue for Plaintiffs' claims: the Court noted that Meta's Privacy Policy disclosed that Meta could receive data from "website[s] you visit and cookie data" and "purchases and transactions," and remarked that that was "exactly … what happened here." Tr. 5:14-17. The Court also drilled down on exactly what Plaintiffs alleged was sent to Meta from

Wisp's website, and Plaintiffs confirmed it was information about "adding to their cart" and "check[ing] out"—*i.e.*, purchase information. Tr. 15:19-22. Plaintiffs did not suggest that they could amend to allege other information was transmitted to Meta or that any such information would change the consent inquiry. Nor did Plaintiffs suggest that they could amend to address other issues Meta and the Court identified, including the statutory definition of "confidential communication" under Section 632—which expressly "excludes" communications the parties "reasonably expect" may be recorded. Cal. Penal Code § 632(c).

The Court did not rule on the motion to dismiss. Instead, it proposed to convert Meta's motion to one for partial summary judgment on consent and ordered the parties to confer on discovery or a stipulation regarding whether Plaintiffs agreed to the versions of Meta's policies that Meta submitted. *See* Dkt. 38. The Court noted that the case has "been around for a while, because [] it went away and it came back." Tr. 33:1-3. The Court explained that resolving consent through summary judgment would "cut to the chase," avoiding potential rounds of amendment, and allowing the Court and parties to "just deal[] with it." *Id.* 33:22-34:8; *see also id.* 10:21-24.

After the hearing, Plaintiffs and Meta met and conferred on the issue of consent to Meta's Terms of Service, Privacy Policy, and Cookies Policy. Plaintiffs agreed to stipulate that they agreed to the Terms and policies Meta submitted in connection with its motion to dismiss. However, Plaintiffs informed Meta that they intended to move for leave to amend the complaint, supposedly to address the consent issues raised at the hearing. Meta explained that it could not stipulate to leave without understanding how Plaintiffs planned to amend their complaint, but stipulated to a deadline by which Plaintiffs would file their motion for leave. *See* Dkt. 41.

### D. Plaintiffs' Motion For Leave To Amend

On June 1, 2026, Plaintiffs shared a draft of their proposed amended complaint with Meta for the first time and filed their motion for leave to file an amended complaint a few hours later. *See* Plaintiffs' Mot. for Leave to File First Am. Compl. ("Mot."), Dkt. 43. Plaintiffs assert that their proposed amendments are at the "direct invitation of the Court" because the amendments

"address consent arguments related to both Meta and Wisp's privacy policies." Mot. 4.[1]

*First*, Plaintiffs seek leave to add two claims that they previously dismissed—under the federal Wiretap Act and CIPA Section 631. *See* Proposed First Am. Compl. ("PFAC"), Dkt. 43-1. These claims were alleged in the original federal action. *See* First Action, Dkt. 1 ¶¶ 78-92 (Section 631); Dkt. 38 ¶¶ 99-113 (Section 631), ¶¶ 140-162 (federal Wiretap Act); Dkt. 55 ¶¶ 108-122 (Section 631), ¶¶ 149-171 (federal Wiretap Act). Plaintiffs voluntarily dismissed them more than a year ago and did not reallege them when they refiled in state court or mention them again at any time before filing the instant motion. *Id.*, Dkt. 64; *see* Dkt. 1-1.

*Second*, Plaintiffs seek leave to add new factual allegations on several topics. Most notably, Plaintiffs seek for the first time to add factual allegations suggesting that Wisp shared more information with Meta in August 2023 and June 2024 when Plaintiffs visited the website than previously alleged. Plaintiffs alleged in the first four versions of the complaint that Wisp sent "AddToCart" and "SubscribedButtonClick" events showing purchase information. Now for the first time they allege that Wisp also sent "'PageView' and 'ViewContent' events" to Meta from the same website visits. PFAC ¶ 52. Plaintiffs say this information purportedly reflected pre-purchase "activity" on the Wisp website—like viewing the page of a particular product. *Id.* Plaintiffs also assert that information "related to" medical appointments was transmitted, *id.* ¶ 51, but they do not explain which of the four events would have reflected that information or what the information was. The PFAC continues to define the class by reference to purchases only. *Id.* ¶ 107.

Plaintiffs also add a number of allegations related to the issue of consent. Plaintiffs now concede—consistent with the stipulation—that they "consented to Facebook's general Terms of Service, Privacy Policy, and Cookies Policy." *Id.* ¶ 8. They add allegations about representations in Wisp's privacy policy, *id.* ¶¶ 30-32, which echo allegations Plaintiffs had included in the First Action similarly highlighting language from Wisp's privacy policy, *see* First Action, Dkt. 38

---

[1] Plaintiffs also claim their amendments were "shaped" by "the parties' meet-and-confer process," Mot. 4, even though that process was limited to whether Plaintiffs agreed to Meta's Terms and policies. Plaintiffs stipulated that they had so agreed, and there was no discussion of adding new claims. The only mention of new factual allegations regarding consent came when Plaintiffs first suggested they might move for leave to amend. Plaintiffs never disclosed any of the proposed allegations.

¶¶ 61-62, Dkt. 55 ¶¶ 70-71; Plaintiffs dropped this language when they refiled in state court. *See* Dkt. 1-1. Plaintiffs also add allegations about statutory regimes under which they do not bring claims, including the California Consumer Privacy Act (CCPA) and the CMIA. PFAC ¶¶ 91-97. Again, these allegations echo allegations in their initial federal complaint that Plaintiffs intentionally dropped in state court. *See* First Action, Dkt. 38 ¶¶ 23-24, Dkt. 55 ¶¶ 32-33, 100 (allegations about CMIA consent requirements).

Finally, Plaintiffs add other factual allegations that are either essentially duplicative of existing allegations or inapplicable to Plaintiffs themselves. For example, Plaintiffs add largely duplicative allegations that Meta uses the data it receives for advertising. PFAC ¶¶ 70-71, 73-75 81-86; *see* Dkt. 1-1 ¶¶ 6, 65, 87. Plaintiffs also include allegations about data sent about non-Facebook users, PFAC ¶¶ 12, 67, even though they are Facebook users, *id.* ¶ 13, and about technology that Meta "offers" to "app developers" for mobile apps, *id.* ¶¶ 68-69, even though they do not allege they used any Wisp mobile app.

## III. LEGAL STANDARD

Leave to amend "is not to be granted automatically." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990); *see Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (affirming denial of leave to amend where plaintiff was aware of facts before prior amendment). Courts consider five factors when deciding whether to grant leave to amend: (1) undue delay; (2) bad faith or dilatory motive; (3) prejudice to the nonmoving party; (4) repeated failure to cure deficiencies through prior amendments; and (5) futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). "[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint," even where a district court has not itself "provide[d] [the plaintiff] with guidance" as to specific deficiencies. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (affirming denial of leave to amend where deficiencies were identified in "the parties' dismissal briefing").

## IV. ARGUMENT

There is no question that this case—initially filed in 2024—has been "around for a while." Tr. 33:1-3. At the hearing, this Court proposed to "cut to the chase" and resolve the critical consent

issue, which would be dispositive of both of Plaintiffs' claims. But Plaintiffs now seek to file a *fifth* complaint, adding two claims they previously abandoned and facts that have been available to them since at least 2024 but that they never bothered to allege at any prior point. Undue delay, bad faith, and prejudice all weigh heavily in favor of denying leave to amend. If the Court grants leave to amend, Meta intends to move to dismiss because Plaintiffs' allegations remain legally insufficient to state their claims for multiple independent reasons (including consent).

### A. The Court Should Deny Leave To Add The Federal Wiretap Act Claim

Plaintiffs seek to reallege a federal Wiretap Act claim that they strategically dropped earlier in this litigation. Undue delay, bad faith, and prejudice all counsel against allowing that.

In determining whether a delay is undue, courts consider "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388. "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986); *see Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1017 (9th Cir. 1999) (same). Proposed amendments that come "late in the litigation process with claims which were, or should have been, apparent early" likewise demonstrate bad faith. *Guevara v. Marriott Hotel Svcs. Inc.*, 2013 WL 6172983, at *5 (N.D. Cal. Nov. 25, 2013).

Here, Plaintiffs alleged a federal Wiretap Act claim in their original action a year and a half ago. First Action, Dkts. 38, 55. Plaintiffs were plainly aware of the existence of that claim. But they chose to omit it after voluntarily dismissing that action and refiling in state court, in what appeared at the time to be an attempt to avoid federal court. Plaintiffs' "tactical choice" to omit that claim does not excuse their delay. *Guevara*, 2013 WL 6172983, at *4 (denying leave to amend).

Plaintiffs' attempt to resurrect a Wiretap Act claim now also shows their bad faith and would prejudice Meta and the Court. In particular, Plaintiffs wasted this Court's and Meta's time litigating questions about federal jurisdiction that would have been moot if they had alleged a federal claim—as they now seek to do. Because Plaintiffs alleged no federal claim in the Second

Action (this case), CAFA provides the only basis for federal jurisdiction—and as the Court noted, CAFA includes home-state and local-controversy exceptions that potentially could have applied depending on information about putative class members' citizenship. *Supra* at 4. Plaintiffs never indicated in any way that they wished to add a federal claim back into the case, which would have obviated the need to delve into those exceptions. They instead let the Court issue multiple orders and hold a conference without so much as hinting at a federal claim, forcing the parties and the Court to dedicate substantial time to assessing what discoverable information might be available from Meta and/or Wisp and whether this case could remain in federal court. That "tactical" decision reflects bad faith. *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (affirming denial of leave to amend where plaintiff "deliberately chose not to amend its complaint earlier" for strategic reasons). Plaintiffs should not be rewarded for their gamesmanship by being allowed to bring back their federal claim now. *Cf. Lawrence v. Shein US Servs., LLC*, 2025 WL 388566, at *3 (D. Mass. Jan. 27, 2025) (explaining, in denying leave to dismiss a claim without prejudice, that "Plaintiff should not be allowed to manipulate the Court's jurisdiction by dropping his federal claims in order to orchestrate a remand while also preserving those claims for reassertion at a later date").

Finally, Plaintiffs' proposed federal Wiretap Act claim is futile. As Meta will explain in a motion to dismiss if the Court grants leave to amend, the federal Wiretap Act claim fails because, as with their other claims, Plaintiffs consented to Meta's receipt of their data, and Meta's *receipt* of any data does not violate a statute that prohibits intentionally intercepting communications, let alone by using a device. This claim also suffers from other claim-specific defects, including Wisp's consent, which satisfies the statute's one-party consent requirement. *See* 18 U.S.C. § 2511(2)(d).

### B. The Court Should Deny Leave To Add The CIPA Section 631 Claim

Plaintiffs try the same gambit with their CIPA Section 631 claim as with their federal Wiretap Act claim, asking for leave to reallege that claim now after deliberately dropping it when they refiled this case in state court. Plaintiffs could have included this claim in their state court action. Because they failed to do so, Plaintiffs unduly delayed. Their sudden backtracking also demonstrates bad faith, and allowing them to reassert this claim now would prejudice Meta.

Plaintiffs have been aware of the existence of their purported Section 631 claims from the outset of this case. Plaintiff A.A. included this claim in her very first complaint filed in August 2024—based on an alleged website visit in August 2023. *See* First Action, Dkt. 1 ¶ 5. And, after Meta moved to dismiss, C.M. included this claim when she was first added to the federal action in November 2024—based on an alleged website visit in June 2024. *Id.*, Dkt. 38 ¶ 6. Yet Plaintiffs voluntarily dismissed these claims in May 2025 and went over a year without mentioning them.

In fact, Plaintiffs have sat on these claims for so long that Section 631's one-year statute of limitations has run. *See Lau v. Gen Digit. Inc.*, 2023 WL 10553772, at *2 (N.D. Cal. Sep. 13, 2023).[2] Plaintiff A.A. alleges she first discovered her claims nearly a year after visiting the Wisp website, on August 19, 2024. PFAC ¶ 9. And Plaintiff C.M. alleges she discovered her claims in October 2024, *id.* ¶ 11, apparently based on advertisements from Wisp four months after her website visit in June 2024, *id.* ¶ 84. Whatever the merit of those discovery allegations, they mean that the statutes of limitations expired—at the latest—on August 19, 2025 and in October 2025, respectively. Yet now, in June 2026, Plaintiffs are trying to revive their Section 631 claims, long after CIPA's statute of limitations has expired. This confirms Plaintiffs' undue delay and bad faith. Even if Plaintiffs were to invoke relation back to try to overcome their timeliness problem, it is far from clear that that doctrine applies to the facts here—where Plaintiffs previously voluntarily dismissed this claim and affirmatively chose not to reassert it, and where Plaintiffs now attempt to allege new transmissions. But either way the need for a claims-saving mechanism only underscores their delay.

Allowing Plaintiffs to resurrect this claim now would also be prejudicial, as Meta has already prepared multiple motions to dismiss multiple different complaints—including one that purposefully *dropped* this claim. *See Baptiste v. Dep't of Def.*, 2025 WL 2049187, at *4 (D. Haw. Feb. 13, 2025) (denying leave to amend where the "case is over two years old, and extensive resources have been exhausted through the filing of four different versions of the Complaint" and other motions).

---

[2] Because Plaintiffs voluntarily dismissed their first case, the statutes of limitations were not tolled during the pendency of the federal action and have been running continuously on their claims. *See Holt v. Cnty. of Orange*, 91 F.4th 1013, 1020 (9th Cir. 2024).

Finally, like Plaintiffs' Wiretap Act claim, the Section 631 claim is futile. As Meta will explain in a motion to dismiss if leave to amend is granted, Plaintiffs' consent bars the Section 631 claim. The statute of limitations bars this claim as well. And Plaintiffs also fail to allege that Meta "read" or "learn[ed]" the contents of the alleged communications "while the same [were] in transit," let alone that it did so "willfully." Cal. Penal Code § 631.

### C. The Court Should Deny Leave To Add Eleventh-Hour Allegations About Additional Information That Was Supposedly Transmitted

Plaintiffs also seek to add allegations that additional information was supposedly sent by Wisp to Meta years ago, in 2023 and 2024 when Plaintiffs allegedly visited the website. PFAC ¶¶ 10, 12. Plaintiffs' attempt to add these allegations now, after filing *four* complaints that never mentioned them, and only after the Court zeroed in on consent as a potential barrier to their claims (an issue Meta raised in its very first motion to dismiss), evinces undue delay and bad faith, and would prejudice Meta.

Until now, Plaintiffs have consistently alleged that two "events" were sent to Meta in connection with their website visits—"AddToCart" and "SubscribedButtonClick." *See* Dkt. 1-1 ¶¶ 41-42; *see also* First Action, Dkt. 1 ¶¶ 42-44, Dkt. 38 ¶¶ 46-48, Dkt. 55 ¶¶ 55-57. Plaintiffs supported those allegations through screenshots of the code showing those specific events. *Id.* But Plaintiffs now claim that "PageView" and "ViewContent" events were also sent, which allegedly showed browsing activity on the website. PFAC ¶ 52. And they also assert—with no elaboration—that unspecified "information related to patient's [sic] medical conditions and appointments" was transmitted. PFAC ¶¶ 51-52. Yet, unlike the original AddToCart and SubscribedButtonClick events, Plaintiffs include no screenshots or other facts to support their new allegations.

These transmissions supposedly occurred *years* ago, when Plaintiffs visited the Wisp website in 2023 and 2024. PFAC ¶¶ 10, 12. So there is no reason Plaintiffs could not have alleged these facts in their original or amended complaints in the First Action, or in their initial complaint in *this* action. *See Chodos*, 292 F.3d at 1003 (affirming denial of leave where purportedly "'new' facts had been available … even before the first amendment"). Indeed, even by Plaintiffs' own telling, they discovered the facts related to their claims in August and October 2024. PFAC ¶¶ 9-

11 12, 84. Because "[n]othing in the proposed amended complaint relie[s] on facts that were unavailable," the 20-month delay in alleging these facts is entirely undue. *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (affirming denial of leave to amend); *see also AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("[A]n eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable.").

Plaintiffs' delay in pleading these allegations is particularly striking because Meta has made the same argument about consent since the outset of this case. In its first motion to dismiss, filed November 5, 2024, Meta argued that Plaintiff A.A.'s claims failed because she consented to Meta's receipt of data—including because Meta's Privacy Policy "specifically addresses purchase information." First Action, Dkt. 25 at 11. Plaintiffs thus had notice of that argument before they filed three of their four complaints against Meta. Yet Plaintiffs never alleged that Wisp sent any information other than add-to-cart and completed-purchase information to Meta, and they continued to define their class based on individuals who "purchas[ed] products" on Wisp's site. Dkt. 1-1 ¶ 70; *see* First Action, Dkt. 38 ¶¶ 77-78. Even in the PFAC, they continue to define the class by reference to purchases—not medical appointments. PFAC ¶ 107.

Further, when directly asked by the Court at the motion to dismiss hearing "exactly what are the confidential communications that are at issue here," Plaintiffs' counsel explained the relevant communications were "add-to-cart events" and "that they have indeed checked out with the medication." Tr. 14:20-15:22. Plaintiffs' counsel thus agreed with the Court's summary that the alleged "confidential communication" is that "Meta then knows that they purchased [a] particular" medication. Tr. 15:23-16:10.[3] Plaintiffs never hinted that they believed they could support their claims with allegations that *other* information was sent—even after the Court indicated that it wanted to "cut to the chase" and resolve the consent issue by converting Meta's motion to one for summary judgment. Tr. 10:22-24, 34:1-3.

---

[3] As Meta explained at the hearing, these communications do not qualify as "confidential" under Section 632's particular definition of that term, which "excludes" communications made in "any … circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c); *see* Tr. 25:6-30:16.

But now, faced with the possibility of summary judgment based on consent to transmission of purchase information, Plaintiffs are trying to shift the playing field and allege *new* transmissions they claim were "sensitive." That effort should be rejected. Plaintiffs do not provide any explanation as to why they are alleging these facts only years after the data was supposedly sent, and after having already filed four separate complaints. Plaintiffs presumably never bothered to include allegations about information like "PageView" events, which allegedly showed users "brows[ing] the [w]ebsite," PFAC ¶ 52, because browsing for "publicly available health information" is not "sensitive," falls squarely within Meta's disclosures, and cannot support a claim. *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming dismissal). As for the allegations related to medical appointments, Plaintiffs include no facts about *what* information "related to … appointments" was transmitted. PFAC ¶ 51. But regardless, Plaintiffs' attempt to assert that such information was sent comes far too late, especially given that Plaintiff C.M. has alleged since her first complaint that she booked medical appointments, *see* First Action, Dkt. 38 ¶ 6, yet never previously alleged such information was sent to Meta. Attempting to add these years-old allegations now to avoid summary judgment shows both undue delay and bad faith. *See Acri*, 781 F.2d at 1398 (affirming denial of leave where "plaintiffs' motion to amend was brought to avoid the possibility of an adverse summary judgment ruling"); *see also M/V Am. Queen v. San Diego. Marine Constr. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (affirming denial of leave where "possible disposition of the case would be unduly delayed by granting the motion").

Allowing leave to add these allegations would also prejudice Meta. Plaintiffs contend Meta will not be prejudiced because discovery has not yet commenced. Mot. 3. But that is not dispositive. *See Doe ex rel. U.S. v. Vratsinas Constr. Co.*, 853 F. App'x 133, 134 (9th Cir. 2021) (affirming denial of leave to amend where "the parties ha[d] not yet engaged in discovery"). Meta has already "had to expend resources to respond to multiple deficient complaints." *Id.* This amendment would require Meta to prepare yet another motion to dismiss before getting a ruling on a single one. And after two years with no meaningful progress, the parties and the Court had finally homed in on a key question—whether Meta's disclosure that it could receive purchase information secured consent to the data sharing Plaintiffs complain about here. *See* Tr. 3:22-16:18.

Plaintiffs' sudden attempt to switch gears would force Meta to expend even more resources to respond to facts that Plaintiffs could have alleged all along. *Id.*; *cf. Ereikat v. Michael & Assocs., PC*, 2015 WL 4463653, at *7 (N.D. Cal. July 21, 2015) (Corley, J.) (denying leave to amend to add new plaintiff and new claims that would "require Defendant to start from scratch defending [the] claims when they had already fully briefed, argued, and obtained summary judgment"). In any event, as Meta will explain if the Court grants leave to amend, Plaintiffs' new allegations fail to cure any of the defects in their claims.

### D. Plaintiffs' Other New Allegations Are Extraneous And Futile

Plaintiffs likewise unduly delayed in adding their other allegations related to consent and intent. Like the allegations discussed above, Plaintiffs have known the basis for these allegations since the beginning of this litigation. Indeed, Plaintiffs *actually alleged* similar facts in their prior complaints in this case. *Compare* First Action, Dkt. 38 ¶¶ 61-62, Dkt. 55 ¶¶ 70-71 (allegations about Wisp's privacy policy), *with* PFAC ¶ 32 (allegations about different language in Wisp's privacy policy); *compare also* First Action, Dkt. 38 ¶¶ 23-24, Dkt. 55 ¶¶ 32-33 (allegations about CMIA consent requirements), *with* PFAC ¶¶ 93-95 (same). Plaintiffs should not now be allowed to add allegations that have been available to them from the start, at the cost of yet another round of briefing in this already drawn-out case. *Supra* at 10-11, 13. In any event, none of these new allegations cure the defects Meta has previously identified in Plaintiffs' claims. Plaintiffs still fail to allege that Meta intentionally "use[d]" a "device to eavesdrop upon or record [a] confidential communication" without consent, Cal. Penal Code § 632, or that it committed a highly offensive privacy intrusion.

This Court should not let Plaintiffs send this case back to the starting line after two years of gamesmanship and delay. It should instead "deny[] Plaintiffs' motion for leave to file" what is essentially "a fifth amended complaint," given the resources already expended and because "the new cause[s] of action that the proposed amended complaint assert[s] [are] based on facts long known to Plaintiffs." *Price v. Shell Oil Co.*, 682 F. App'x 569, 569 (9th Cir. 2017) (affirming denial of leave to amend).

## V. CONCLUSION

For all of the above reasons, this Court should deny leave to amend.

Dated: June 24, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Melanie M. Blunschi*

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*