**STERLINGTON, PLLC**
Arturo Peña Miranda (State Bar No. 325108)
Jennifer Czeisler (*pro hac vice* forthcoming)
Edward Ciolko (*pro hac vice* forthcoming)
228 Park Ave. South, #97956
New York, New York 10003
Telephone: (212) 433-2993
Email: arturo.pena@sterlingtonlaw.com
jen.czeisler@sterlingtonlaw.com
edward.ciolko@sterlingtonlaw.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (admitted *pro hac vice*)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com
sbeck@bursor.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

A.A. and C.M., individually and on behalf of all other persons similarly situated,

Plaintiffs,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:25-cv-08852-JSC

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND**

Date: July 31, 2026
Time: 9:00 a.m.
Ctrm: Courtroom 8, 19th Floor
Judge: Hon. Jacqueline Scott Corley

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION .......... 1
ARGUMENT .......... 1
A. Meta Cannot Show Prejudice, the Factor That Controls the Rule 15 Analysis .......... 1
B. Plaintiffs' Amendment Reflects Neither Undue Delay Nor Bad Faith .......... 6
CONCLUSION .......... 11

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 8

*Baddie v. Berkeley Farms, Inc.*,
64 F.3d 487 (9th Cir. 1995) ........ 6

*Cf. Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........ 8

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ........ 2, 3

*Doe ex rel. United States v. Vratsinas Construction Co.*,
853 F. App'x 133 (9th Cir. 2021) ........ 4, 5

*Doe I v. Nestle USA, Inc.*,
766 F.3d 1013 (9th Cir. 2014) ........ 7

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ........ 2, 6

*Ereikat v. Michael & Associates, PC*,
No. 14-cv-05339-JSC, 2015 WL 4463653 (N.D. Cal. July 21, 2015) ........ 4

*Howey v. United States*,
481 F.2d 1187 (9th Cir. 1973) ........ 6

*Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. Cal.*,
648 F.2d 1252 (9th Cir. 1981) ........ 6

*J.M. v. Illuminate Educ., Inc.*,
19 Cal. 5th 705 (2026) ........ 1, 8, 9, 11

*Las Vegas Sun, Inc. v. Adelson*,
No. 2:19-CV-01667-ART-MDC, 2026 WL 984239 (D. Nev. Apr. 10, 2026) ........ 7

*Lennear v. Diamond Pet Food Processors of Cal., LLC*,
147 F. Supp. 3d 1037 (E.D. Cal. 2015) ........ 4

*Robertson v. Bruckert,*
568 F. Supp. 3d 1044 (N.D. Cal. 2021) ........ 3

*Smith v. Intel Corp.*,
745 F. Supp. 3d 853 (N.D. Cal. 2024) ........ 2

*Sutter Health v. Superior Ct.*,
227 Cal. App. 4th 1546 (2014) ........ 8

*United States ex rel. Swoben v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ........ 2, 4, 5

**Statutes**

18 U.S.C. § 2511(2)(d) ........ 7

42 U.S.C. § 1320d-6(a)(3) ........ 7

Cal. Civ. Code § 56.05(j) ........ 7

Cal. Civ. Code § 56.05(q) ........ 8

Cal. Civ. Code § 56.36(c)(2)(A) ........ 8

Cal. Civ. Code § 56.36(c)(3)(A) ........ 7, 8

Cal. Civ. Code § 56.36(c)(5) ........ 8

CIPA § 631 ........ 3, 9

CIPA § 632 ........ 10

## INTRODUCTION

Rule 15 directs courts to grant leave to amend freely, and that presumption is at its strongest where, as here, the case remains at the pleadings stage. No discovery has been taken, no Rule 16 schedule has been entered, and no trial date has been set. Plaintiffs seek leave for the first time in this new action, on the date the parties themselves agreed upon, to respond to developments that postdate their complaint: the consent question the Court raised at the May 8 hearing, the parties' ensuing stipulation on consent, and an intervening change in California law. Meta cannot meet its burden of showing that any factor overcomes that presumption.

The amendment enlarges nothing. It adds no parties and pleads claims arising from the same conduct, against the same defendant that brought this case to federal court by removal. Meta's theory of prejudice reduces to the expense of litigation it chose to incur in electing to proceed with removal. Its charges of undue delay and bad faith fare no better. The federal Wiretap Act claim rests on a crime-tort predicate that became viable only with the California Supreme Court's decision in *J.M. v. Illuminate Education*, issued May 14, 2026, and the new consent allegations respond directly to the element the Court held Plaintiffs must plead. Sought promptly after these developments, at an agreed upon time, in the forum Meta selected, the amendment should be allowed.

## ARGUMENT

Meta cannot carry its burden under Rule 15. With the case still at the pleadings stage, Meta identifies no prejudice from the proposed amendment—and its fallback theories of undue delay and bad faith rest on a premise the record refutes: that Plaintiffs sat on claims and facts they could have pleaded all along. Not so. Plaintiffs' proposed amendment responds to three specific developments, each postdating the original complaint: the consent-related issues raised at oral argument on Meta's motion to dismiss, the stipulation the parties reached on the very question of consent, and an intervening change in California law. The amendments called for by these developments have only been sought once, on time, and in the federal forum Meta itself chose. Amendment is appropriate.

### A. Meta Cannot Show Prejudice, the Factor That Controls the Rule 15 Analysis

Meta bears the burden on prejudice, the factor that controls the Rule 15(a) analysis, and its opposition never carries it. In place of prejudice from the amendment itself, Meta offers a catalog of

expenses: it has "had to expend resources to respond to multiple deficient complaints" (Opp. at 13), the amendment "would require Meta to prepare yet another motion to dismiss," (*id.*), and granting leave would "force Meta to expend even more resources" after what it calls "two years of gamesmanship and delay," (Opp. at 14). Tellingly, Meta does not contest that this case still sits at the pleadings stage. Confronted with the absence of any discovery, it retreats to the assertion that this fact "is not dispositive." (Opp. at 13). But an amendment that adds no new party, follows neither a merits dismissal nor summary judgment, and rests on facts already within Meta's knowledge—information Meta received through its own tracking technologies—cannot prejudice Meta's defense of this suit. The costs it invokes are the predictable consequence of its own decision to remove this case and litigate the jurisdiction it now treats as a grievance. Meta's real objection is not that amendment prejudices its defense, but that it prefers the case resolved before that defense is tested. That falls short of prejudice.

Among the factors bearing on leave to amend, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). Prejudice is the "touchstone of the inquiry under rule 15(a)." *Id.* (citation omitted). The burden rests with Meta, not Plaintiffs. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) ("[t]he party opposing amendment bears the burden of showing prejudice"). And "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052. Meta's opposition identifies no cognizable prejudice—and none exists.

Meta concedes that discovery has not yet commenced. But it waves off that critical fact as "not dispositive." (Opp. at 13.) Courts do not often find prejudice from amendment while a case remains at the pleadings. *See e.g. DCD Programs*, 833 F.2d at 187–88 ("[g]iven that this case is still at the discovery stage with no trial date pending, nor has a pretrial conference been scheduled, there is no evidence that [defendant] would be prejudiced by the timing of the proposed amendment"); *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) (no prejudice where "[t]he litigation against these defendants is at a very early stage"); *Smith v. Intel Corp.*, 745 F. Supp. 3d 853, 869 (N.D. Cal. 2024) (granting leave to amend at the pleading stage

where amendment "would not be futile, cause undue delay, or unduly prejudice" the defendant). This case sits at such an early stage, without discovery, in part because the parties have cooperated in good faith to resolve potentially resource-intensive disputes about consent and jurisdiction. (*See* Second Action,[1] Dkt. No. 41-1 ¶ 8 (Plaintiffs stipulating to consent to the operative Meta policies); *id.*, Dkt. No. 32 at 1, 3 (parties jointly agreeing that even meaningful citizenship discovery was unlikely to yield usable information and that the Court could continue to exercise jurisdiction).) No Rule 16 scheduling order has been entered, no trial date has been set, and no pretrial conference has occurred. Nor do the proposed amendments enlarge the case: they add no new parties, and they plead claims arising from the same conduct alleged in the operative complaint, against the same defendant. (Second Action, Dkt. No. 43 at 2.) The plaintiff in *DCD Programs* stood on the same footing and sought more, a fourth amended complaint adding a new party, and the Ninth Circuit reversed the denial of leave. 833 F.2d at 187–88.

Meta separately contends that reviving the previously dismissed Wiretap Act and CIPA § 631 claims is itself prejudicial. (Opp. at 8–10.) It is not. Courts grant leave to restore claims a plaintiff previously dismissed.[2] In *Robertson v. Bruckert*, the court found no substantial prejudice from an amendment re-adding a claim the plaintiff had dismissed by stipulation, in part because the party to be added "would need to look no further than its own records for the discovery that it claims it would need to conduct." 568 F. Supp. 3d 1044, 1048 (N.D. Cal. 2021). The same is true of both features here. The CIPA § 631 and Wiretap Act claims were voluntarily dismissed without prejudice, and no court ruled on their merits. (Second Action, Dkt. No. 43 at 2.) And the factual allegations the amendments add concern Meta's own receipt and processing of Pixel event data—the PageView, ViewContent, and appointment-booking transmissions from Wisp's platform alleged in the proposed pleading. (Second Action, Dkt. No. 43-1 ¶¶ 51–52.) Meta already holds that evidence. There are no depositions to reopen, no expert work to redo, and no discovery window closing against it.

---

[1] *A.A. v. Meta Platforms, Inc.*, No. 3:25-cv-08852-JSC (N.D. Cal.) ("Second Action").

[2] As a further show of good faith, Plaintiffs have decided not to seek leave to amend to add a CIPA § 631 claim at this time. *See infra* at 9.

*Ereikat v. Michael & Associates, PC*—the case Meta invokes for the proposition that amendment would force it to "start from scratch," (Opp. at 14)—shows what prejudice at the pleading stage actually requires. The Court there found undue prejudice only because the plaintiff sought to add "a brand new plaintiff asserting brand new claims" after the defendant "had already fully briefed, argued, and obtained summary judgment," and because a completed deposition "would have to be redone." No. 14-cv-05339-JSC, 2015 WL 4463653, at *7 (N.D. Cal. July 21, 2015) (Corley, J.). In all other respects the court found the request timely, brought in good faith, and not futile. *Id.* None of the facts that decided *Ereikat* exists here. No summary judgment has been briefed, argued, or obtained. No deposition has been taken. Meta's motion to dismiss remains undecided. The Court heard argument and, rather than resolve it, "ordered the parties to meet and confer" on the issue of Plaintiffs' consent. (Second Action, Dkt. No. 38; *see also id.*, Dkt. No. 42 at 1.) The amendments respond to that consent issue, on the stipulated June 1 schedule. (Second Action, Dkt. No. 42 at 2.)

Meta's remaining theory is expense. (*See* Opp. at 13.) The Ninth Circuit has rejected precisely that theory. "In the absence of bad faith, however, litigation expenses incurred before a motion to amend is filed do not establish prejudice." *Swoben*, 848 F.3d at 1184. The relator in *Swoben* was seeking to file a *fourth* amended complaint, yet the Ninth Circuit held the defendants "have not shown prejudice" because "[t]he litigation against these defendants is at a very early stage"—and it reversed. *Id.* District courts follow suit. *See Lennear v. Diamond Pet Food Processors of Cal., LLC*, 147 F. Supp. 3d 1037, 1050 (E.D. Cal. 2015) (rejecting defendants' argument that the "expenditure of time and resources on the Motion to Dismiss . . . alone constitutes prejudice," where defendants "failed to show how this delay would prejudice them").

Meta's own authority proves the point. Meta relies on *Doe ex rel. United States v. Vratsinas Construction Co.*, 853 F. App'x 133 (9th Cir. 2021) for its assertion that it "has already 'had to expend resources to respond to multiple deficient complaints.'" (Opp. at 13.) But *Vratsinas* shows what that phrase actually means. The relator there sought leave to file a fifth complaint after the district court had adjudicated prior versions deficient; he had "offered no satisfactory explanation for his failure to develop his contentions in the five prior iterations of the complaint"; he "missed 11

deadlines throughout the course of the litigation"; and he defied "the Court's prior order which granted leave to amend only for purposes of addressing deficiencies" by adding an unauthorized Sherman Act claim. *Vratsinas*, 853 F. App'x at 134–35.

That leaves Meta's framing of the proposed pleading as "essentially" a "fifth amended complaint." (Opp. at 14.) That is an appeal to the fourth *Foman* factor—repeated failure to cure—and nothing of the kind describes this case. In *Swoben*, the court held that even a relator seeking his fourth amended complaint was not in "repeated failure to cure" territory, because "[t]he defendants' motions to dismiss were the first pleadings to attack the sufficiency of *Swoben's* allegations, the current decisions by the district court and this court are the first to address the sufficiency of those allegations, and *Swoben* is seeking his first opportunity to cure those deficiencies." 848 F.3d at 1183. Here no decision has ever addressed the sufficiency of Plaintiffs' allegations. One of the amendments in the First Action[3] changed nothing of the allegations or claims against Meta and corrected only allegations about the names and roles of Wisp-related parties. (First Action, Dkt. No. 50-3.) The complaint in this Second Action has never been amended, and Meta's motion to dismiss remains undecided. Thus, the pleading Plaintiffs seek leave to file is captioned the "First Amended Class Action Complaint." (Second Action, Dkt. 43 at 1.)

Meta's own opposition concedes the point when it asks the Court to treat the proposed FAC as "essentially" a "fifth amended complaint." (Opp. at 14.) "Essentially" is doing all the work—in this action, there has been no amendment at all. "Multiple deficient complaints" describes a plaintiff who repeatedly failed to cure defects a court identified in the operative action. It does not describe a plaintiff who narrowed its case, stipulated to the consent issue the Court directed the parties to address, and sought leave on time in an effort to respond to the Court's own direction on the threshold consent issue.

Finally, to the extent Meta counts the jurisdictional litigation among its burdens—faulting Plaintiffs for having "wasted this Court's and Meta's time" on CAFA, (Opp. at 8)—that expense, too, is one Meta chose. Meta litigates in this Court because Meta elected to be here. Plaintiffs filed

[3] *A.A. v. Meta Platforms, Inc.*, No. 3:24-cv-05733 (N.D. Cal.) (the "First Action").

this narrowed action in San Mateo Superior Court on August 12, 2025. Meta removed it under CAFA. (Second Action, Dkt. No. 1 ¶¶ 1, 3.) "The defendant is not obligated to remove; rather, he has the choice either to submit to state court resolution of his claims, or to assert his right to a federal forum." *Baddie v. Berkeley Farms, Inc.*, 64 F.3d 487, 491 (9th Cir. 1995). Having asserted that right, Meta then litigated the ensuing jurisdictional questions jointly with Plaintiffs—including the joint statement, signed by Meta's counsel, representing that "even if [the parties] were to 'conduct meaningful discovery into the parties' citizenship,' . . . information is likely not available from which the Court could make findings regarding the citizenship of the class." (Second Action, Dkt. No. 32 at 1–2.) The procedural course Meta now characterizes as burdensome is a course Meta chose and helped chart. Those self-selected burdens are not prejudice from amendment, which is the only prejudice Rule 15 asks about.

Because Meta cannot carry its burden on the factor that "carries the greatest weight," *Eminence Capital*, 316 F.3d at 1052, the presumption in favor of leave controls, and the remaining factors only confirm the result.

**B. Plaintiffs' Amendment Reflects Neither Undue Delay Nor Bad Faith**

Meta's failure to show prejudice—the factor of greatest weight—is dispositive. But it insists, falling back on undue delay and bad faith. Both factors boil down to a single premise: that Plaintiffs have long known of the additional claims and supporting facts, and that their inclusion now is mere strategery. (Opp. at 8, 10–11.) Not so. Plaintiffs' amendment reflects neither delay nor bad faith, least of all where the case remains at the pleadings stage, amendment was sought in lieu of a time-consuming mini-trial on consent and pursuant to the parties' agreement, and Meta elected this forum by removal—an election Plaintiffs never opposed. (*See* Opp. at 4.) At bottom, many of Plaintiffs' new allegations simply respond to the posture of CIPA § 632 under which, the Court found, lack of consent is an element of the claim—and to recent developments in the law.

Any delay caused by granting leave to amend a complaint "cannot alone justify the denial of leave to amend." *Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254–55 (9th Cir. 1981); *see also Howey v. United States*, 481 F.2d 1187, 1190–91 (9th Cir. 1973) (holding it an abuse of discretion to deny leave even where the motion "was made five years

after the . . . [original] complaint had been filed," absent any showing of prejudice or bad faith). "A change in the law . . . is the kind of change that justifies amending a complaint." *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-CV-01667-ART-MDC, 2026 WL 984239, at *2 (D. Nev. Apr. 10, 2026); *see also Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1028 (9th Cir. 2014) (noting "[i]t is common practice to allow plaintiffs to amend their pleadings to accommodate changes in the law").

In opposing Plaintiffs' federal Wiretap Act claim, Meta asserts that Plaintiffs "were plainly aware of the existence of that claim" in view of their raising it in the prior action, but that they chose to omit it after voluntarily dismissing that action in a "tactical choice" to "avoid federal court." (Opp. at 8.) Yet Plaintiffs' Wiretap Act claim in the prior action cited, as the basis for the crime-tort exception, a violation of "a provision of the Health Insurance Portability and Accountability Act, specifically 42 U.S.C. § 1320d-6(a)(3)." (First Action, Dkt. No. 38 ¶ 157.) Plaintiffs' current Wiretap Act claim, by contrast, grounds the exception in Meta's "knowing receipt and use of unlawfully disclosed medical and protected health information"—conduct Plaintiffs allege is unlawful under the CMIA, Cal. Civ. Code § 56.36(c)(3)(A). (Second Action, Dkt. No. 43-1 ¶ 155.)

The truth is that when Plaintiffs dismissed the Wiretap Act claim the first time around, they had serious doubts as to whether HIPAA could carry the crime-tort exception—and therefore doubts that this Court had subject matter jurisdiction over this action. That exception requires that a communication be "intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). If HIPAA is to serve as the basis for the exception, Meta must have intercepted Plaintiffs' communications for the purpose of committing a violation of the HIPAA Privacy Rule. But HIPAA's Privacy Rule binds only covered entities and business associates, and Meta is neither. Plaintiffs also harbor doubts about Wisp's own covered entity status. *See* Wisp, Terms of Service intro. & § 2, https://hellowisp.com/terms?srsltid=AfmBOory3m0qI3dfFZSU55mS_5ahN1Wt-zIGfzA2E7YVI-ba6w6ILNpq (May 6, 2026) ("Wisp is not a healthcare provider" and Wisp disclaims "the receipt or provision of healthcare services to users").

The CMIA is structurally different. It deems "reproductive or sexual health application information"—namely information about "sexual activity collected by a reproductive or sexual health digital service"—to be "medical information" protected by the Act. Cal. Civ. Code § 56.05(j),

(q). And it reaches "any person or entity"—not just providers—that knowingly and willfully obtains, discloses, or uses medical information without authorization, and separately reaches one who "obtains or uses" such information "for the purpose of financial gain." Cal. Civ. Code § 56.36(c)(2)(A), (c)(3)(A), (c)(5). It therefore binds Meta directly: Meta's own knowing receipt and use is itself the wrong. And because the financial-gain provision turns on what Meta did with the data—monetizing it through targeted advertising—rather than the bare fact of acquisition, it describes an act downstream of, and distinct from, the interception itself. *Cf. Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (exception requires interception "for the purpose of committing" a wrong, not that the interception itself constitute the wrong).

Until the California Supreme Court spoke on the matter, various California courts of appeal had held that "[n]o breach of confidentiality takes place" under the CMIA "until an unauthorized person views the medical information" such that "possession of the physical form without actually viewing the information does not offend the basic public policy advanced by the Confidentiality Act." *See, e.g.*, *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1557 (2014). Applying that actual-viewing authority, some district courts dismissed CMIA claims premised on the operation of the Meta pixel. *See, e.g.*, *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (dismissing claims under Cal. Civ. Code §§ 56.101(a) and 56.36(b), without prejudice, where the plaintiffs' "vague" pixel-interception allegations did not show that anyone "improperly viewed or accessed any medical information"). But on May 14, 2026, the California Supreme Court rejected that line of cases, holding that "the primary inquiry with regard to breach of confidentiality is whether the information is exposed to a significant risk of unauthorized access or use," not the "actually viewed" standard. *J.M. v. Illuminate Educ., Inc.*, 19 Cal. 5th 705, 723 (2026).

Meta charges that Plaintiffs dropped the federal claim in a "tactical choice" that "appeared at the time to be an attempt to avoid federal court," and that they then "never gestured toward any plan to reallege a federal claim," letting the Court and parties litigate the CAFA exceptions "without so much as hinting at a federal claim." (Opp. at 1, 8–9.) Both accusations assume there was a viable federal claim to preserve, or to hint at, all along. There was not. A litigant who concludes that a claim is not worth bringing, and declines to press it, acts in good faith—and that is precisely what Plaintiffs

did with their Wiretap Act claim, which in their judgment lacked a viable crime-tort predicate so long as HIPAA was the only candidate. That judgment held throughout the parties' jurisdictional briefing, which ran from the Court's January 26, 2026 order to show cause, (Second Action, Dkt. No. 25), to its final confirmation of jurisdiction on April 1, 2026, (*id.*, Dkt. No. 34). It was *J.M.*, issued on May 14, 2026, that changed the calculus and, in Plaintiffs' view, first supplied a viable crime-tort basis. Plaintiffs could not have preserved, or hinted at, a federal claim during briefing that closed on April 1 when the legal basis for that claim did not arrive until May 14. In any case, it is Meta that chose this forum by removing the case, and Meta can hardly cry foul now that Plaintiffs seek to assert a federal claim in the federal court Meta selected.

The record supplies further objective indicia of Plaintiffs' good faith in pursuing its current Wiretap Act claim. Plaintiffs never sought a remand; as Meta's own counsel has attested, Plaintiffs' counsel informed Meta on October 29, 2025 that Plaintiffs were not going to move to remand. (Second Action, Dkt. No. 26-1 ¶ 4.) To the contrary, in response to the Court's order to show cause, they candidly conceded that the CAFA exceptions are non-jurisdictional, that Plaintiffs bore the burden of proof, and agreed that it was "appropriate for the Court to continue to exercise CAFA jurisdiction." (Second Action, Dkt. No. 27 at 1.) And when the parties later met and conferred, Plaintiffs agreed with Meta that no discovery could yield the information needed to establish the class's citizenship, and so joined in telling the Court it could continue to exercise jurisdiction. (Second Action, Dkt. No. 32 at 1, 3.)

In a further showing of good faith, and having reviewed Meta's opposition, Plaintiffs will not, in the end, seek leave to add their CIPA § 631 claim at this time. That forbearance reflects no doubt about the claim's merit. Rather, unlike the Wiretap Act claim—whose crime-tort predicate *J.M.* first made viable—the § 631 claim turns on no intervening change in the law, and Plaintiffs prefer to keep the amendment trained on the developments that prompted it.

Meta also argues that Plaintiffs' new allegations—that "PageView" and "ViewContent" events and "information related to patient's [sic] medical conditions and appointments" were transmitted—reflect undue delay and bad faith because the underlying transmissions occurred "years ago" in 2023 and 2024, could have been pleaded in any of Plaintiffs' four prior complaints, and

surface only "now, faced with the possibility of summary judgment based on consent," such that Plaintiffs are "trying to shift the playing field" to "avoid summary judgment." (Opp. at 11–13.) Meta adds that Plaintiffs' remaining consent- and intent-related allegations are equally belated because they merely restate "similar facts" Plaintiffs "actually alleged . . . in their prior complaints." (Opp. at 14 (emphasis omitted).) Every one of these accusations rests on a single premise: that the operative fact is when Plaintiffs first possessed the underlying data, so that any later pleading of it is necessarily bad faith or undue delay. The record refutes Meta's premise.

Rather than force a mini-trial on consent, Plaintiffs stipulated that they had consented to the versions of Meta's Terms of Service, Privacy Policy, and Cookies Policy that Meta submitted with its motion. (Second Action, Dkt. No. 41-1 ¶ 8.) Plaintiffs told Meta before filing that they would move for leave to amend to address the consent arguments raised at the May 8 hearing, so Meta cannot claim surprise about what it saw in Plaintiffs' motion. (Second Action, Dkt. No. 41 at 2.)

The Court found that lack of consent is an affirmative element of a CIPA § 632 claim, so Plaintiffs must plead it—and that is what these allegations do. But the Court reached that conclusion only after struggling with the deeply factual character of the consent question, and it was for that reason that the Court signaled a preference to convert the motion, or part of it, and resolve consent on *summary judgment*. (Second Action, Dkt. No. 38.) That posture is fatal to Meta's charge. Meta says Plaintiffs added these facts "to avoid summary judgment" (Opp. at 13)—but there is no summary judgment to avoid. On Meta's own account, the road ahead runs *through* summary judgment, with its attendant evidence and testimony, and every allegation Plaintiffs plead now is one they could equally develop at that later stage. There is no advantage to seize and nothing to evade by pleading, at the pleadings stage, facts that must be developed in Meta's desired trial on consent. What Meta actually seeks is to foreclose those allegations before the evidentiary contest it demands can occur—to shrink the record rather than meet it. Rule 15 does not so stringently restrict a litigant.[4]

[4] Meta faults Plaintiffs' counsel for identifying, in answer to the Court's question at oral argument about the "confidential communications . . . at issue," the add-to-cart and checkout events rather than cataloguing every transmission the Pixel captured. (Opp. at 13 (quoting Tr. 14:20–16:10).) But counsel was responding to a question about the communications as pleaded in the operative complaint—and an unscripted answer at oral argument can hardly limit what Plaintiffs may plead on amendment if they satisfy the Rule 15 standard.

In sum, Plaintiffs' amendments reflect good faith, not delay: the case remains at the pleadings stage, the new allegations are relevant to the consent element the Court identified applies to CIPA § 632 claims, and the Wiretap Act claim was made viable only by *J.M.*, a recent change in the law. Rule 15 favors granting leave.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for leave to amend their complaint.

Dated: July 8, 2026 Respectfully submitted,

**STERLINGTON, PLLC**

By: */s/ Arturo Peña Miranda*

Arturo Peña Miranda (State Bar No. 325108)
Jennifer Czeisler (*pro hac vice* forthcoming)
Edward Ciolko (*pro hac vice* forthcoming)
228 Park Ave. South, #97956
New York, New York 10003
Telephone: (212) 433-2993
Email: arturo.pena@sterlingtonlaw.com
jen.czeisler@sterlingtonlaw.com
edward.ciolko@sterlingtonlaw.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (admitted *pro hac vice*)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com
sbeck@bursor.com

*Counsel for Plaintiffs*