LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

A.A. and C.M., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:25-cv-08852-JSC

**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Hearing: November 5, 2026
Time: 10:00 am
Location: Courtroom 8—19th Floor
Judge: Hon. Jacqueline Scott Corley

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on November 5, 2026 at 10:00 a.m., before the Honorable Jacqueline Scott Corley, United States District Court, Courtroom 8, 19th Floor, 450 Golden Gate Ave., San Francisco, California, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move for an order dismissing Plaintiffs A.A. and C.M.'s ("Plaintiffs'") First Amended Class Action Complaint ("FAC") (Dkt. 54) for failure to state a claim under Rule 12(b)(6). This motion is based on this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the request for judicial notice and accompanying declaration; the pleadings, records, and papers on file in this action; oral argument; and any other matters properly before the Court.

## STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should dismiss the First Amended Class Action Complaint for failure to state any claim upon which relief can be granted under Rule 12(b)(6).

Dated: August 28, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: <u>/s/ *Melanie M. Blunschi*</u>

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

A. Meta Pixel Code ........ 3

B. Meta's Terms And Policies ........ 3

1. Meta's Terms Of Service, Privacy Policy, and Cookies Policy ........ 3

2. Meta's Business Tools Terms ........ 4

C. This Lawsuit ........ 5

1. Plaintiffs' Prior Complaints ........ 5

2. Plaintiffs' FAC ........ 6

III. LEGAL STANDARD ........ 7

IV. ARGUMENT ........ 8

A. All Of Plaintiffs' Claims Fail Because Plaintiffs Consented To Meta's Receipt Of Data Reflecting Their Activity On Wisp's Website ........ 8

1. Plaintiffs Consented To Meta's Receipt Of Purchase Information ........ 9

2. Plaintiffs' New Allegations Do Not Show That They Did Not Consent ........ 10

B. Plaintiffs' Statutory Claims Each Fail For Additional Reasons ........ 14

1. Plaintiffs' CIPA Section 632 Claim Fails Because Plaintiffs Do Not Allege Their Communications Were "Confidential" ........ 14

2. Plaintiffs' Wiretap Act Claim Fails Because Plaintiffs Do Not Adequately Allege The Crime-Tort Exception Applies ........ 16

3. Plaintiffs' Statutory Claims Both Fail Because Plaintiffs Do Not Adequately Allege That Meta Intentionally Used A Device To Intercept Or Record Their Communications ........ 19

4. Plaintiffs' Expansive Constructions, Which Stretch Every Element Beyond Its Plain Terms, Raise Fair Notice Concerns ........ 23

C. Plaintiffs' Invasion Of Privacy Claim Fails For Additional Reasons ........ 24

V. CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ....................................................................................7

*Amazon.com Services LLC v. Perplexity AI, Inc.*,
2026 WL 2237587 (9th Cir. Aug. 4, 2026)........................................................19, 20, 23, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................7, 22

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024).......................................................................22

*Bailey v. United States*,
516 U.S. 137 (1995)........................................................................................................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................7

*Belluomini v. Citigroup Inc.*,
2013 WL 5645168 (N.D. Cal. Oct. 16, 2013)......................................................................25

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) ..........................................................................14

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ...........................................................................................13

*Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*,
556 F.3d 1021 (9th Cir. 2009) .............................................................................................24

*Cox Communications, Inc. v. Sony Music Entertainment*,
146 S. Ct. 959 (2026)...........................................................................................................23

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025) ....................................................................21, 22

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........................................................................ *passim*

*Doe v. Eating Recovery Ctr.*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ..............................................................................24

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025).......................................................................17

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....................23

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) ....................23

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ....................14, 15, 16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................25

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ....................8, 10

*Hauck v. Advanced Micro Devices, Inc.*,
2019 WL 1493356 (N.D. Cal. Apr. 4, 2019), *aff'd*, 816 F. App'x 39 (9th Cir. 2020) ....................12

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ....................24

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ....................25

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ....................25

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................23

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................20

*In re iPhone Application Litig*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................25

*Konop v. Haw. Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................21

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025), *appeal filed*, No. 25-2857 (9th Cir. May 2, 2025) ....................8

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024) ....................8, 9

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) ....................23

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ........ 20

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) ........ 15

*People v. Superior Ct. of L.A. Cnty.*,
70 Cal. 2d 123 (1969) ........ 21

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 16, 17

*Ramirez v. Trusper, Inc.*,
2026 WL 2351235 (N.D. Cal. Aug. 13, 2026) ........ 17

*Rodriguez v. Accident Fund Holdings, Inc.*,
2026 WL 2365062 (C.D. Cal. Aug. 13, 2026) ........ 13

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ........ 14, 15, 17

*Rojas v. HSBC Card Servs., Inc.*,
93 Cal. App. 5th 860 (2023) ........ 7, 10

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 8

*Skilling v. United States*,
561 U.S. 358 (2010) ........ 24

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ........ 14

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ *passim*

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........ 15, 21

*Straight v. Edfinancial Servs., LLC*,
2026 WL 2087412 (N.D. Cal. July 20, 2026) ........ 11

*Sussman v. ABC, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........ 16

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........ 18, 25

*United States v. Burke*,
504 U.S. 229 (1992) ........ 17

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ....................21

*Vita v. New Eng. Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024) ....................24

*Weston v. Lefiti*,
2024 WL 4579237 (9th Cir. Oct. 25, 2024) ....................8

## STATUTES

18 U.S.C.
§ 2510 ....................19, 20
§ 2510(5) ....................20
§ 2511 ....................2, 19, 20
§ 2511(1) ....................24
§ 2511(1)(a) ....................21
§ 2511(1)(b) ....................20
§ 2511(2)(d) ....................16, 17

Cal. Civ. Code
§ 56.36(a) ....................17
§ 56.36(c) ....................17, 18
§ 56.36(c)(3) ....................18
§ 56.36(c)(5) ....................18
§ 1798.146 ....................13
§ 3515 ....................8

Cal. Penal Code
§ 632 .................... *passim*
§ 632(a) ....................7, 20
§ 632(c) ....................14
§ 632.7 ....................15

Stats. 1985, ch. 909, § 2, p. 2900 ....................15

## RULES

Rule 12(b)(6) ....................7

## OTHER AUTHORITIES

*Tortious*, Black's Law Dictionary (12th Ed. 2024) ....................17

## I. INTRODUCTION

After two years, two actions, and five complaints, Plaintiffs still fail to state any claim against Meta. Plaintiffs sued Meta two years ago, along with website developer Wisp, alleging that Wisp improperly sent their online purchase information to Meta using source code ("Meta Pixel" or "Pixel" code) that Meta makes publicly available to web developers to integrate into their websites. Based on those same facts, Plaintiffs now allege that Meta violated California's criminal eavesdropping statute, CIPA Section 632; the federal Wiretap Act; and the California constitutional right to privacy. But Plaintiffs' theory is as deficient as it has always been. The Court should dismiss.

First, consent bars all of Plaintiffs' claims. Meta told its users that it would "receive information" from third parties "about a variety of your information and activities"—including "[p]urchases and transactions you make" on other websites—and that it could use that information for advertising. Ex. 10 at 6. Plaintiffs concede they agreed to the policies containing these disclosures. FAC ¶ 8. They thus consented to Meta's receipt of data from third parties about their purchases and activity on other websites—the exact conduct they challenge here. *See, e.g.*, *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (affirming dismissal of CIPA and privacy claims involving health-related browsing data because of consent to Meta's disclosures). None of Plaintiffs' new allegations overcome this deficiency. Plaintiffs now allege that, in the course of the same years-old website visits, Meta received not only the add-to-cart and completed-purchase information they have always alleged, but also information about pages and content they viewed on Wisp's website before making their purchases. But this information falls squarely within Meta's disclosures, whether it is considered "purchase" information or simply browsing information. Plaintiffs cannot escape consent, and the Court should dismiss with prejudice on this basis.

Second, Plaintiffs fail to allege other key elements of each of their claims. Plaintiffs cannot allege a "confidential communication," as CIPA Section 632 requires, because they cannot allege any reasonable expectation that their internet purchase activity would not be "recorded." And the federal Wiretap Act claim is foreclosed under the one-party consent rule, because Wisp's choice to use code from the Pixel indicates its consent to Meta's receipt of information. Plaintiffs cannot

avoid that consent because they fail to allege that Meta intercepted their purchase information for the purpose of committing any crime or tort, as the statute requires.

Plaintiffs also fail to adequately allege that Meta actually engaged in the conduct prohibited by these statutes, let alone with the requisite *mens rea*. The statutes penalize a person who "intentionally" "use[s]" a "device" to "intercept," "eavesdrop" upon, or "record" the relevant communication. *See* Cal. Penal Code § 632; 18 U.S.C. § 2511. But Plaintiffs' own allegations—including ones Plaintiffs newly added to their amended complaint—expressly indicate that it is web developers like Wisp, not Meta, that use the supposed device by "integrat[ing] Meta Pixel code into their websites." FAC ¶ 85; *id.* ¶ 81 (businesses "install and configure" code). Plaintiffs allege that Meta, by contrast, "designed" the Pixel code, "encouraged businesses" to use it, and "receive[d]" data from those businesses. *Id.* ¶¶ 81-82. None of those allegations show that Meta itself "used" a device to intercept or record Plaintiffs' communications with Wisp. Nor is software code a "device" within the meaning of either statute. And Plaintiffs' allegations also fail to show that Meta committed any prohibited act "intentionally"—with the objective of intercepting or recording the allegedly sensitive information at issue here. To the contrary, Meta contractually prohibited developers from sending "health" or "sensitive" data or any data without consent. *Id.* ¶ 85; Ex. 18 at 2. Those restrictions demonstrate that Meta "purposefully acted so as *not* to receive any personal health information." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024) ("*Google Pixel I*"). If CIPA and the federal Wiretap Act were construed to punish Meta's conduct here, those statutes would fail to provide fair notice and would be unconstitutionally vague.

Finally, Plaintiffs' invasion of privacy claim fails because Meta's receipt of information is not the kind of intentional, highly offensive intrusion this claim requires. Plaintiffs' claims against Meta should be dismissed in their entirety. And because Plaintiffs have repeatedly failed to cure the defects in their claims, dismissal should be with prejudice.

## II. BACKGROUND[1]

### A. Meta Pixel Code

The Meta Pixel is publicly available software code that many businesses choose to integrate into their websites. FAC ¶ 39. That code allows businesses to "measure the effectiveness of [their] advertising" and "understand[] the actions people take on [their] website[s]." "About Meta Pixel," Ex. 1 at 1. Website developers, not Meta, decide whether to use Pixel code and select what user actions to measure. FAC ¶¶ 38-41; *see also* "Best practices for Meta Pixel setup," Ex. 2 at 1-2. These actions are referred to as "events." FAC ¶ 41. Web developers are not required to use any particular events and can choose how the Pixel code is configured. *See id.* ¶¶ 38, 69; *see also* "About standard and custom website events," Ex. 3 at 2; Ex. 2. Meta explains that the code "only" measures events "on the pages you added [it] to," Ex. 2 at 2, and describes how developers can configure Pixel code "not to send" certain data. "Advanced – Meta Pixel," Ex. 4 at 8. Web developers may view information about events they choose to send on an "Events Manager" page, FAC ¶¶ 41, 70, and can use this data to improve their services and to reach customers who have engaged with their products by showing them targeted ads on Meta's services, *id.* ¶¶ 35-36, 68.

### B. Meta's Terms And Policies

Meta publishes policies for Facebook and Instagram users (like Plaintiffs) that explain how Meta receives and uses data, including through web developers' incorporation of Meta Pixel code. Meta also publishes terms and policies that govern developers' use of Meta Pixel code, including by mandating that they provide prominent notice of the Pixel on their websites and refrain from sending certain information to Meta.

#### 1. Meta's Terms Of Service, Privacy Policy, and Cookies Policy

When Facebook users—like Plaintiffs—sign up for Facebook, they agree to Meta's Terms of Service, Privacy Policy, and Cookies Policy. *See id.* ¶¶ 8, 13 (alleging that "Plaintiffs …

---

[1] Unless otherwise indicated, the facts recited herein are based on the allegations in the complaint and are accepted as true only for purposes of this motion.

consented to" Meta's terms and policies); Dkt. 42 (stipulating to same).[2] Meta's Terms explain that "businesses and organizations, and other persons pay us to show you ads for their products." Ex. 6 at 1. As part of using Meta's free services, users "agree that [Meta] can show you ads that [it] think[s] may be relevant to you and your interests." *Id.*

Meta's Privacy Policy explains that businesses can use tools like Meta Pixel code to "advertise or support their products" and "understand and measure how people are using their products and services." Ex. 10 at 14. The Policy discloses that Meta "receive[s] information" from those third parties "about a variety of your information and activities on and off [Meta's] Products," including "device information," "[p]urchases and transactions you make," "[h]ow you use [third parties'] products and services," and "[w]ebsites you visit and cookie data." *Id.* at 6; *see also id.* at 8 (Meta "receive[s] information using cookies and . . . the Meta Pixel"). The Policy also discloses that Meta receives identifying information, like "device ID" and "cookies," that "helps [Meta] match your activities with your account," and explains that Meta "connect[s] information from partners to your account." *Id*. at 6.

The Terms and Privacy Policy also link to Meta's Cookies Policy,[3] which explains that Meta "use[s] cookies" "to store and receive identifiers" if a user "ha[s] a Facebook account" or "visit[s] other websites and apps that use the Meta Products," including the Meta Pixel. Ex. 15 at 1. The Cookies Policy discloses that Meta "uses cookies and receives information," "including device information and information about your activity," when users visit websites that "incorporate Meta technologies." *Id*. It also reiterates that businesses may use "Meta Pixel" code to share information about "your interactions with them." *Id.* at 10. The Cookies Policy, like the Privacy Policy, discloses that Meta "use[s] cookies" to "deliver ads to people who have previously visited a business's website [or] purchased its products." *Id.* at 5.

### 2. Meta's Business Tools Terms

---

[2] All references to the Meta terms and policies refer to the versions in effect when Plaintiff A.A. alleged that she made her purchase from Wisp on August 25, 2023. The relevant language was materially the same throughout the time Plaintiff C.M. alleges she used Wisp, from 2022 through 2024. *See* FAC ¶¶ 9-10.

[3] *See* Meta Terms of Service, Ex. 7 at 1; Meta Privacy Policy, Ex. 10 at 1, 8, 14.

Meta separately sets forth restrictions on how Meta Pixel code may be used through its Business Tools Terms, which bind the web developers and businesses that choose to integrate Pixel code into their websites. *See* FAC ¶ 85; Business Tools Terms, Ex. 18 at 1 (explaining that the "Business Tools Terms govern the use of" the data web developers collect).

Meta's Business Tools Terms provide that businesses using Meta Pixel code "represent and warrant that [they] have provided robust and sufficiently prominent notice" "on each web page where [Meta's] pixels are used." Ex. 18 at 2; *see* FAC ¶ 85. The Business Tools Terms also require businesses to represent that they "have all of the necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations and industry guidelines) for the disclosure and use" of any data they share. Ex. 18 at 1; *see* FAC ¶ 85. And these Terms specifically prohibit developers from sending sensitive data to Meta, requiring developers to "represent and warrant that" they "will not share Business Tool Data with us that [they] know or reasonably should know" includes "health" or "sensitive" information. *Id.*

### C. This Lawsuit

#### 1. Plaintiffs' Prior Complaints

Plaintiff A.A. originally filed suit against Meta and Wisp in federal court in August 2024, alleging that Wisp improperly sent data about Plaintiff's purchases on Wisp's website to Meta. *See* Dkt. 1, No. 3:24-cv-05733 (First Wisp Action). Meta moved to dismiss, explaining that Plaintiff A.A. consented to Meta's receipt of information about her activity on third-party websites, including purchase information specifically. *See id.*, Dkt. 25. Instead of responding, Plaintiffs amended to add Plaintiff C.M. and a federal Wiretap Act claim, but maintained the same factual allegations about alleged transmission of purchase data. *See id.*, Dkt. 38; *see also id.*, Dkt. 55 (amending to add additional Wisp parties). Days before Meta's second motion to dismiss was due, Plaintiffs dismissed the entire action and refiled in state court against Meta alone, again alleging CIPA Section 632 and invasion of privacy claims based on Meta's alleged receipt of information about their purchases. *See* Dkt. 1-1. Meta removed and again moved to dismiss. *See* Dkt. 13.

The Court held a hearing on Meta's motion to dismiss on May 8, 2026. At the hearing, the Court explained that "consent is a big issue," and observed that Meta's "privacy policy does seem

to say … purchases and transactions you make off of our products … is all information that they're going to be getting." Tr. of Mot. to Dismiss Hr'g ("Tr.") 3:22-4:18, Dkt. 40. The parties both made arguments about the scope of consent based on Meta's policies. But the Court did not "think [it] c[ould] resolve" the issue of consent without some kind of evidence that Plaintiffs agreed to the policies at issue. *Id.* Plaintiffs subsequently stipulated that they had in fact agreed to Meta's Terms of Service, Privacy Policy, and Cookies Policy. *See* Dkt. 41; Dkts. 13-7 through 13-18; Dkt. 14.

Instead of waiting for this Court to decide the consent question highlighted by the hearing, however, Plaintiffs moved for leave to amend again—this time to add back in the federal Wiretap Act claim they had dropped when they filed in state court, along with new allegations that, during Plaintiffs' same 2022 to 2024 website visits, Wisp purportedly sent additional information to Meta. *See* Dkt. 43-2. This Court acknowledged that the amended complaint "would essentially be Plaintiffs' fifth complaint," but nevertheless granted leave to amend. Dkt. 52 at 6.

### 2. Plaintiffs' FAC

The First Amended Complaint ("FAC") again alleges that Plaintiff A.A. ordered "birth control medication through [Wisp's] Website" on August 25, 2023, and that Plaintiff C.M. "attended [] telehealth appointment[s]" and "purchased . . . prescribed medication" from Wisp on March 7, 2022, and June 10, 2024. FAC ¶¶ 9-10, Dkt. 54. Plaintiffs allege that they maintained Facebook accounts when they "accessed and used [Wisp's] Website," and that "Wisp disclosed [their] medical information" to Meta when they made their purchases and browsed the Wisp website. *Id.* ¶¶ 13, 95. According to the complaint, "identifiers" were sent "alongside the event data" through cookies, which Meta allegedly used to link data about their purchases to their Facebook accounts. *Id.* ¶¶ 65-66. Plaintiffs again seek to bring claims on behalf of a class of persons whose information was sent "while purchasing products on [Wisp's] [w]ebsite." *Id.* ¶ 107.

***New "event" allegations.*** Plaintiffs now allege that additional information was sent to Meta during the same 2022, 2023, and 2024 website visits identified in their initial complaints. In each prior complaint, Plaintiffs alleged that Meta received "'AddtoCart' and 'SubscribedButtonClick' events, which detail information about which products the patient was purchasing." Dkt. 1-1 ¶ 42; *see* First Wisp Action, Dkt. 1 ¶¶ 42-44, Dkt. 38 ¶¶ 46-48, Dkt. 55 ¶¶ 55-57. Plaintiffs now allege

that when they visited Wisp's site, the Pixel code was also "configured to capture a range of [other] 'events,'" including "PageView" and "ViewContent." FAC ¶ 52. The FAC also alleges that Wisp offered "symptoms quizzes," *id.* ¶ 53, but does not allege that either Plaintiff took a symptoms quiz or that the answers to those quizzes were actually transmitted to Meta. *Id.* ¶¶ 53-54 (alleging only that "general treatment recommendations" and "conditions" visitors were researching were transmitted).

***New "consent" allegations.*** Plaintiffs add several legal assertions that the information Wisp sent to Meta is "legally protected" under the California Consumer Protection Act ("CCPA") and the Confidentiality of Medical Information Act ("CMIA"). FAC ¶¶ 23, 91-97. Plaintiffs also add allegations about Wisp's representations in its Privacy Policy. *Id.* ¶¶ 31-32.

***New "intent" allegations.*** Plaintiffs also add allegations regarding Meta's "intent," echoing prior allegations that Meta uses data that developers send it through Pixel code to advertise and to improve Meta's own systems. *Id.* ¶¶ 70-71, 81-86. Plaintiffs again acknowledge that businesses, like Wisp, "install and configure" Pixel code. *Id.* ¶¶ 81, 85. And Plaintiffs now admit that Meta publishes terms prohibiting developers from sending sensitive information and requiring them to obtain consent, *id.* ¶ 85, but Plaintiffs assert that Meta was "aware of the risk" that developers could transmit sensitive information to Meta and failed to sufficiently "enforc[e]" its restrictions and "stop" developers from sending such information, *id.* ¶¶ 83, 86.

Plaintiffs bring claims against Meta under CIPA Section 632 and the federal Wiretap Act, as well as for invasion of privacy under the California constitution. *Id.* ¶¶ 116-145.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## IV. ARGUMENT

### A. All Of Plaintiffs' Claims Fail Because Plaintiffs Consented To Meta's Receipt Of Data Reflecting Their Activity On Wisp's Website

Plaintiffs cannot state any of their claims because they consented to Meta's receipt of information about their activity on third-party websites, including through code from the Meta Pixel. CIPA Section 632 imposes liability for eavesdropping only "without the consent of all parties." Cal. Penal Code § 632(a). When asked by this Court at the motion to dismiss hearing, Plaintiffs conceded that lack of consent is an element of their Section 632 claim. Tr. 2:12-20; *see Rojas v. HSBC Card Servs., Inc.*, 93 Cal. App. 5th 860, 889 (2023) ("[L]ack of consent is a required element under … section 632."). Thus, as the Court recognized, "it is the plaintiff's burden to plead lack of consent" for that claim. Tr. 3:4-5. Similarly, Plaintiffs cannot allege a "reasonable expectation of privacy," as required to state their invasion of privacy claim, if they were on notice of the data collection about which they complain. *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (dismissing invasion of privacy claim because Google "expressly disclosed" tracking); *Lloyd v. Facebook*, *Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024); *see generally* Cal. Civ. Code § 3515 ("A person who consents to an act is not wronged by it."). And even where lack of consent is an affirmative defense, dismissal is appropriate where consent is "obvious on the face of a complaint" and from judicially noticeable documents. *Weston v. Lefiti*, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024); *see Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025), *appeal filed*, No. 25-2857 (9th Cir. May 2, 2025) (dismissing CIPA, Wiretap Act, and privacy claims where plaintiffs "consented to, and were informed of, the use of cookies and pixels"); *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4-5 (N.D. Cal. July 28, 2021) (dismissing CIPA claims where "terms plainly disclose[d]" data collection).

Plaintiffs' allegations do not come close to establishing lack of consent to Meta's alleged receipt of information. Plaintiffs now concede they "consented to Facebook's general Terms of Service, Privacy Policy, and Cookies Policy." FAC ¶ 8; *see also* Dkt. 42 (stipulating to same). And those policies clearly disclosed that Meta could receive information about their activity on third-party websites, including "purchases and transactions" specifically—the focus of Plaintiffs' FAC.

Plaintiffs' new allegations about transmission of "page views" and other information do not change the analysis, because that information also falls clearly within Meta's disclosures.

**1. Plaintiffs Consented To Meta's Receipt Of Purchase Information**

Meta's Privacy Policy and Cookies Policy clearly disclose that Meta receives data from third parties that choose to use Meta Pixel code and that Meta may match that data to particular Facebook accounts to serve ads. Meta's Privacy Policy states that third parties can use tools like Pixel code to "collect your information when you visit their site," Ex. 10 at 6, and that Meta "receive[s]" such information, *id.* at 6, 8. The Privacy Policy also specifically addresses purchase information, explaining that third parties collect and share with Meta information about "[p]urchases and transactions you make" on other websites "using non-Meta checkout experiences." *Id.* at 6. The Policy further discloses that Meta receives identifying information, including "cookies," that "helps [Meta] match your activities with your account." *Id.* The Cookies Policy reiterates these disclosures, explaining that businesses may use "Meta Pixel" code to share information about "your interactions with them"; that Meta "receive[s] identifiers" through cookies when users visit websites that "incorporate Meta technologies" like Pixel code; and that Meta uses that information to "deliver ads to people who have previously visited a business's website [or] purchased its products." Ex. 15 at 1, 5, 10.

As the Court observed at the hearing, that is "exactly [] what happened here," according to Plaintiffs' allegations. Tr. 5:16-17. Plaintiffs allege that they "purchased" medication from Wisp, FAC ¶ 10; that Wisp shared their "purchase[]" actions with Meta using Pixel code, *id.* ¶¶ 42, 48-50; that certain identifiers were also sent through "cookies," *id.* ¶¶ 56-65; that Meta "link[ed]" information to "corresponding Facebook profiles," *id.* ¶ 65; and that Plaintiffs were later shown related ads, *id.* ¶ 84. Because that alleged conduct is explicitly disclosed by Meta's policies, it is squarely within the scope of Plaintiffs' consent.

The Ninth Circuit has already twice concluded that "Facebook's data policy gives clear notice that third party partners may share data with Facebook." *Lloyd*, 2024 WL 3325389, at *2; *see also Smith*, 745 F. App'x at 8-9. In *Smith*, the Ninth Circuit recognized that "[a] reasonable person viewing [Facebook's] disclosures would understand that Facebook maintains the practices

of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes." *Id.* The court thus held that the plaintiffs there had consented to "collect[ion] and us[e] [of] their browsing data from various healthcare-related websites" and affirmed dismissal of CIPA and privacy claims. *Id.* at 8. And in *Lloyd*, the Ninth Circuit likewise affirmed dismissal of a privacy claim "because Facebook's data policy gives clear notice" that online activity will be shared from third parties. 2024 WL 3325389, at *2.

As in *Smith* and *Lloyd*, Meta's policies demonstrate that Plaintiffs consented to Meta's receipt of data from third-party websites and use of that data for advertising purposes. And Meta's Privacy Policy specifically disclosed that it would obtain "[p]urchases and transactions [users] make" and "match [those] activities with [a user's] account"—exactly what Plaintiffs allege Meta did here. Ex. 10 at 6. Those disclosures should be given full effect. As the Ninth Circuit has explained, courts must look to the plain terms of a contract and cannot "reject [those terms] simply because [they] may deviate from [the court's] expectations." *Hammerling*, 2024 WL 937247, at *2 (rejecting narrow reading of privacy policy where it broadly "disclose[d] Google's collection of user activity data in third-party apps"). The California Court of Appeal has likewise rejected attempts to artificially narrow the scope of consent for CIPA claims. In *Rojas*, the plaintiff argued that HSBC's disclosure, which stated that calls with HSBC "may be recorded," did not "address … personal" calls. 93 Cal. App. 5th at 888. The Court of Appeal rejected that argument: "By stating the call 'may be recorded,' the disclosure warns *all* calls may be recorded, regardless of content." *Id.* at 888-89. The same is true here: By stating that it would receive "purchase information," Meta's Privacy Policy disclosed potential receipt of *all* types of purchase information. That forecloses Plaintiffs' claims based on Meta's alleged receipt of their purchase data.

**2. Plaintiffs' New Allegations Do Not Show That They Did Not Consent**

Plaintiffs appear to recognize that Meta's disclosures pose a problem for their case, which—for nearly two years—focused exclusively on purchase information. *See, e.g.*, First Wisp Action, Dkt. 1 ¶¶ 1, 41-44; *id.*, Dkt. 38 ¶¶ 1, 45-48; *see also* Dkt. 1-1 ¶¶ 1, 40-44. The FAC accordingly adds new allegations that purportedly "address the consent issue the Court identified" at the hearing on Meta's motion to dismiss. Dkt. 43 at 5; *see also* Dkt. 48 at 1. But none of these

new allegations overcome Plaintiffs' consent.

***New allegations about information transmitted.*** Plaintiffs now assert that, years ago, in connection with the same website visits Plaintiffs have always alleged, Wisp sent *additional* information that Plaintiffs never before bothered to mention. Specifically, they allege that "PageView" and "ViewContent" events were sent, which are allegedly "independent of[] any purchase." FAC ¶ 52. Those events reflect user "activity" while "brows[ing] the Website." *Id*. As Plaintiffs' own cited source indicates, the "ViewContent" event "tells you if someone visits a web page's URL, but not what they do or see on that web page," and "PageView" "tells you when someone lands on a web page." Specifications for Meta Pixel standard events, Ex. 5 at 2.

These new allegations do not show lack of consent, because this information still falls squarely within Meta's disclosures. Data showing that a visitor viewed a webpage for a particular product before adding that product to her cart, FAC ¶ 52, is part and parcel of the subsequent purchase information. *See id.* ¶ 107 (seeking to represent class of persons whose information was recorded "while purchasing products" on Wisp's site). But even if that information fell outside the "purchase" disclosure, it would fall directly within Meta's other disclosures that it receives "information" from "partners" and "third parties" about "information and activities … off [Meta's] products," including "[w]ebsites you visit." Ex. 10 at 6. The Ninth Circuit recognized in *Smith* that materially identical disclosures established consent for Meta to receive "browsing data from various healthcare-related websites." *Smith*, 745 F. App'x at 8-9.[4] The events Plaintiffs now challenge likewise reflect web visitor "activity" while "brows[ing] the website," FAC ¶ 52—the exact information at issue in *Smith*. Here, as in *Smith*, the fact "that Plaintiffs searched and viewed publicly available health information" clearly "falls within the scope of Plaintiffs' consent to Facebook's Terms and Policies." *Smith*, 745 F. App'x at 9.

To the extent Plaintiffs contend the FAC covers additional, allegedly sensitive information, like "appointments" or "symptoms quizzes," they fail to allege that such information was actually

---

[4] The disclosures in *Smith* read: "We collect information when you visit or use third-party websites and apps that use our Services. ... This includes information about the websites and apps you visit, your use of our Services on those websites and apps, as well as information the developer or publisher of the app or website provides to you or us." 745 F. App'x at 8.

transmitted to Meta. Neither Plaintiff alleges she completed a "symptoms quiz." *See* FAC ¶ 53 (alleging generally that the website "contained symptoms quizzes, where patients *could* enter" their information); *Straight v. Edfinancial Servs., LLC*, 2026 WL 2087412, at *3 (N.D. Cal. July 20, 2026) (Corley, J.) (allegations about information a defendant "generally discloses" are insufficient where plaintiff "does not allege she provided such information to Defendant"). Nor do Plaintiffs allege the answers to any symptom quiz (their own or anyone else's) were actually sent to Meta.[5] Rather, they allege only that "general treatment recommendations" and conditions visitors were researching were transmitted. FAC ¶ 54.

Similarly, Plaintiffs assert information "related to" appointments was sent. *Id.* ¶¶ 12, 51. But only Plaintiff C.M. alleges she even made appointments, and Plaintiffs do not state what information about those appointments was actually transmitted to Meta. *See Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at *18 (N.D. Cal. Apr. 4, 2019), *aff'd*, 816 F. App'x 39 (9th Cir. 2020) (courts may disregard "entirely conclusory" allegations). Nor do Plaintiffs include *any* facts to render their bare assertions about appointment information plausible. Unlike their purchase information allegations, which have always been supported by screenshots of code allegedly showing transmission of "AddToCart" and "SubscribedButtonClick" events, FAC ¶¶ 47-48, Plaintiffs' passing references to appointments lack even a modicum of support. Indeed, Plaintiffs do not even allege what type of event would have transmitted such data.

In any event, information "related to" appointments and "general treatment recommendations" is still within the scope of Plaintiffs' consent: like the browsing information described above, it is "information and activities" on third-party sites, Ex. 10 at 6, and "interactions with" those sites, Ex. 15 at 10. The terms and policies to which Plaintiffs agreed disclose that Meta will receive such information. *Supra* at 9-10. Plaintiffs thus cannot avoid consent by adding these new allegations about their years-old website visits.

***Allegations about Wisp's Privacy Policies.*** Plaintiffs separately contend that Wisp made

---

[5] Plaintiffs misleadingly conflate the "symptoms quiz" with "discussing [information] with [a] healthcare provider," but their other allegations make clear that "following … completion of the symptoms quiz," Wisp's site would return "general treatment recommendations"—not individual medical advice from a healthcare provider. FAC ¶ 54.

promises not to share information. FAC ¶¶ 31-32. But as the Ninth Circuit explained in *Smith*, representations by a third party cannot displace Meta's own contractual agreement with its users. The *Smith* plaintiffs argued that "Facebook could not have gained consent because the healthcare websites' privacy policies promised not to share data with third parties." 745 F. App'x at 9. The Ninth Circuit rejected that argument and "affirm[ed] the district court's finding that Plaintiffs consented," because "Facebook is not bound by promises it did not make." *Id.* So too here.

***Allegations about the CCPA and CMIA.*** Plaintiffs' allegations about the CCPA and the CMIA do not help them either. Plaintiffs allege that they did not expect information about activity on Wisp's website to be sent to Meta because that information is allegedly "protected under both the [CCPA] and the [CMIA]," which impose special notice, authorization, or consent requirements on certain entities. FAC ¶ 90. Plaintiffs' theory seems to be that certain procedures mandated by these statutes were not followed, and that this somehow rendered Meta's disclosures and the consent it secured directly from its users insufficient for purposes of CIPA and the Wiretap Act. *See id.* ¶¶ 91-95 (laying out purported CCPA and CMIA requirements); *see also* Tr. 5:18-23 (Plaintiffs' counsel contending there was no consent because "that type of information requires a written authorization" under the CMIA). That is wrong for at least two reasons.

First, there is no basis to graft separate statutory requirements from different regimes onto CIPA, the Wiretap Act, or a constitutional privacy claim. As the Ninth Circuit has explained, the consent standard in this context asks "'whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization.'" *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024). And where a defendant has made express contractual disclosures, that inquiry turns on what "[a] reasonable person viewing those disclosures would understand." *Smith*, 745 F. App'x at 8-9. Reading in extra requirements for consent would contravene established precedent and the text of CIPA and the Wiretap Act, which nowhere reference the CMIA or CCPA requirements. *See also Rodriguez v. Accident Fund Holdings, Inc.*, 2026 WL 2365062, at *4 (C.D. Cal. Aug. 13, 2026) (rejecting plaintiff's attempt to "bootstrap[]" CCPA notice requirements into

common-law privacy claims).[6]

Second, and in any event, Plaintiffs cannot rely on *Wisp's* alleged failure to comply with certain statutory requirements to argue that *Meta* failed to obtain consent. FAC ¶¶ 93-95 (alleging Wisp disclosed information in violation of CMIA obligations); *see also Smith*, 745 F. App'x at 9 (declining to look to third-party representations to displace consent to Facebook's policies). Such a rule would impermissibly render Meta liable, including under criminal wiretapping and eavesdropping statutes, for a third party's alleged wrongful acts under a separate statutory regime. *Infra* at 23-24.

* * *

Because Plaintiffs cannot overcome their consent to Meta's policies, even after filing five complaints, their claims should be dismissed. And because "[n]o further allegations could allow Plaintiffs to bring claims arising out of conduct which they consented to," amendment "would be futile." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 956 (N.D. Cal. 2017) (citation omitted), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). Dismissal should therefore be with prejudice.

### B. Plaintiffs' Statutory Claims Each Fail For Additional Reasons

Plaintiffs' statutory claims each suffer from additional defects that warrant dismissal.

#### 1. Plaintiffs' CIPA Section 632 Claim Fails Because Plaintiffs Do Not Allege Their Communications Were "Confidential"

Plaintiffs' Section 632 claim fails at the threshold because they cannot allege that their communications with Wisp were "confidential" as Section 632 defines that term. Section 632 applies only to "confidential communications," which are statutorily defined to "exclude[] a communication made . . . in any . . . circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c). To qualify as confidential, "at least one party to the conversation must carry 'an objectively reasonable expectation that the conversation is not being overheard or recorded'"—including by the other party to the conversation. *Rodriguez v. Google LLC*, 2021 WL 2026726, at

[6] Indeed, Plaintiffs' attempt to mix and match statutory regimes underscores the problems with doing so, because the CCPA expressly states that it does not apply to "[m]edical information governed by the [CMIA]." Cal. Civ. Code § 1798.146.

*7 (N.D. Cal. May 21, 2021) (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002)); *see* Tr. 27:2-28:25 (discussing statutory definition and exception).

Here, Plaintiffs do not, and cannot, allege an "objectively reasonable expectation" that their purchase actions were not being recorded. Even aside from Meta's express disclosures that information on third-party websites could be recorded, *supra* at 9-11, online purchase information is, by its very nature, recorded to fulfill customers' orders. *See Boulton v. Community.com, Inc.*, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) (affirming dismissal of Section 632 claim based on text messages because texts "are by nature recorded and so cannot be 'confidential communications'"). Plaintiffs allege that they "did not expect third parties, specifically Facebook," to receive their information, FAC ¶ 120, but "that expectation . . . does not reasonably give rise to the expectation that *nobody* (including the [website]) would record the communications," as Section 632 requires. *Rodriguez*, 2021 WL 2026726, at *7 (dismissing Section 632 claim). Where, as here, "the circumstances reflect that the communications could have easily been shared or viewed," those communications are not "confidential" within the meaning of Section 632. *People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (internet chat communications not "confidential").

Plaintiffs' attempt to expand their complaint to encompass additional browsing information does not change this result. Internet service providers and websites must record browsing information in order to load web pages, advertisements, and the like. And while Plaintiffs do not plausibly allege symptoms quizzes or appointment information was actually transmitted, *see supra* at 11-12, that information—like purchase information—is necessarily recorded so that the website may provide its services. So within Section 632's unique definition of "confidential," the events Plaintiffs contend were transmitted are not "confidential communications" because a user would reasonably expect them to be recorded.

As the Court acknowledged at the hearing, "when [Section 632] was drafted"—in 1967—"we didn't have this technology." Tr. 30:11-16; *see Flanagan*, 27 Cal. 4th at 768. Accordingly, "there's nothing unusual about the fact that maybe it wouldn't then apply." *Id.* Indeed, the California Legislature has acknowledged that Section 632 may not apply across different technologies, and has accordingly amended CIPA several times to address perceived gaps in its

coverage. In 1985, for example, the Legislature enacted Section 632.5 in response to "'the advent of widespread use of cellular radio telephone technology,'" which "'mean[t] that persons will be conversing over a network which cannot guarantee privacy in the same way that it is guaranteed over landline systems.'" *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 191 (2021) (quoting Stats. 1985, ch. 909, § 2, p. 2900). The Legislature later enacted additional sections to prevent interception of communications involving "cordless telephone[s]" and "cellular radio telephone[s]." Cal. Penal Code § 632.7. These separate provisions suggest that not even all *phone calls* might be considered "confidential" under the definition in Section 632. *See also Flanagan*, 27 Cal. 4th at 776 (noting, with respect to the same provisions, that "the Legislature determined that there was no practical means of protecting cordless and cellular phone conversations from accidental eavesdropping"). Given that backdrop, it is hardly surprising that Section 632 does not cover online purchase data or internet browsing activity. Plaintiffs' Section 632 claim should accordingly be dismissed.

**2. Plaintiffs' Wiretap Act Claim Fails Because Plaintiffs Do Not Adequately Allege The Crime-Tort Exception Applies**

Plaintiffs' new Wiretap Act claim should also be dismissed. The Wiretap Act requires only "one of the parties to the communication" to consent to an interception to render it lawful. 18 U.S.C. § 2511(2)(d). As Plaintiffs admit, Wisp "integrate[d]" the Meta Pixel code onto its website and "cho[]se" what events to send. FAC ¶¶ 37-39. Because Wisp "cho[]se to install . . . source code on [its] web properties," that "must mean [Wisp] consented to the operation of [the] source code." *Google Pixel I*, 741 F. Supp. 3d at 842. Plaintiffs do not contend otherwise. Instead, they assert that Meta "cannot avail itself of the party or consent exception in 18 U.S.C. § 2511(2)(d)" because Meta acted with "the purpose of committing a criminal or tortious act." FAC ¶ 143. But Plaintiffs' crime-tort theory is flawed several times over.

The Wiretap Act's crime-tort exception is focused on the "purpose for the interception," *Sussman v. ABC, Inc.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999), so a plaintiff seeking to rely on it must do more than simply suggest that a defendant committed an unlawful interception. The plaintiff must plausibly allege that the interceptor intended to use the intercepted communication "for the purpose of facilitating some *further* impropriety, such as blackmail." *Id.* (emphasis added);

*see also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (purportedly wrongful purpose must be "separate and independent from the act of the recording"). Here, Plaintiffs fail to do so. Plaintiffs' theory is that Meta's "knowing receipt and use of unlawfully disclosed medical and protected health information" satisfies this requirement because it supposedly violated the CMIA. FAC ¶ 143. But these allegations turn on the notion that Meta's initial receipt—*i.e.*, the alleged "interception"—was itself unlawful; they do not show a "separate and independent" wrongful purpose. *Newman*, 51 F.4th at 1136. To the contrary, Plaintiffs allege that Meta's motivation for making Pixel code available to web developers is to support its analytics and advertising business, a purpose Plaintiffs do not contend is unlawful. *See, e.g.*, FAC ¶¶ 6, 16, 81-82; *see also Google Pixel I*, 741 F. Supp. 3d at 841 ("There is nothing inherently unlawful about Google offering its source code to health care providers …."). Plaintiffs' allegations thus fail to show a purpose to "perpetuate torts on millions of Internet users," *Rodriguez*, 2021 WL 2026726, at *6 n.8, especially given that Meta *prohibits* developers from sending sensitive information or any information without securing permission to do so. Ex. 18 at 1; *see also Ramirez v. Trusper, Inc.*, 2026 WL 2351235, at *8 (N.D. Cal. Aug. 13, 2026) (dismissing Wiretap Act claim based on one-party consent where the "complaint fails to allege any purpose other than financial motives").

In any event, Plaintiffs fail to allege that Meta committed any "criminal or tortious act," 18 U.S.C. § 2511(2)(d), because the statutory violation of which Plaintiffs accuse Meta is neither a crime nor a tort. Plaintiffs contend Meta violated certain subsections of CMIA Section 56.36, the statute's remedies provision. *See* FAC ¶ 96. But that section only provides for criminal penalties where the underlying "violation" "results in economic loss or personal injury to a patient." Cal. Civ. Code § 56.36(a). Plaintiffs do not allege Meta's conduct resulted in economic loss or personal injury to them. *See generally* FAC. So even if Plaintiffs' allegations made out a violation of the CMIA (they do not, *see infra*), Plaintiffs fail to allege that Meta's conduct constitutes a crime. Section 56.36 also does not "constitut[e] a tort," nor is it "in the nature of a tort." *Tortious*, Black's Law Dictionary (12th Ed. 2024). It is a statutory violation—and one for which the Legislature purposely did *not* provide a private right of action. *See* Cal. Civ. Code § 56.36(c); *United States v.*

*Burke*, 504 U.S. 229, 235 (1992) ("one of the hallmarks of traditional tort liability is the availability of" an "'action for damages'"); *cf. Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *11 (N.D. Cal. July 22, 2025) (rejecting argument that CMIA "sounds in torts," such that tort-based aiding-and-abetting liability should apply). Because Plaintiffs cannot allege either criminal or tortious conduct, they cannot make out a crime-tort theory.

Finally, even if Section 56.36(c) *could* qualify as a predicate crime or tort, Plaintiffs do not allege Meta violated that section in the first place. Indeed, it is not even clear that Section 56.36(c) is intended to create a stand-alone prohibition that Meta could have violated. As Plaintiffs conceded in their leave-to-amend briefing, Section 56.36(c) "turn[s] on what the CMIA prohibits more generally," because it merely "'provide[s] remedies for violations of the act.'" Dkt. 50 at 3 (citation omitted). Section 56.36(c)(3) applies only to a "person" who "knowingly or willfully obtains or uses medical information *in violation of this part*." *Id.* (emphasis added). And as Plaintiffs argued, Section 56.36(c)(5) similarly "impos[es] liability on '[a] person or entity who is not permitted to receive medical information pursuant to this part'—i.e., the CMIA—'and who knowingly and willfully obtains, discloses, or uses medical information without written authorization.'" Dkt. 50 at 3 (quoting Cal. Civ. Code § 56.36(c)(5)). So for Meta to violate these provisions, it would first have to have violated another CMIA provision. But Plaintiffs do not allege Meta did so.

Nor can Plaintiffs meet the other elements of Sections 56.36(c)(3) and (c)(5). Plaintiffs fail to allege that Meta "knowingly and willfully" obtained or used "medical information." Cal. Civ. Code § 56.36(c)(5); *see id.* § 56.36(c)(3) ("knowingly or willfully"). In fact, Plaintiffs allege the opposite—they acknowledge that Meta told providers *not* to send "health" or other "sensitive" information. FAC ¶ 85; *see* Ex. 18 at 1; *see also* FAC ¶ 88 (acknowledging the Business Tools Terms "impose restrictions on developers to refrain from remitting health information to Facebook"). And the Business Tools Terms further require businesses to warrant that they "have all of the necessary rights and permissions and a lawful basis (in compliance with applicable laws, regulations and industry guidelines) for the disclosure" of any data they share. Ex. 18 at 1. Those restrictions are incompatible with the "knowing" and "willful[]" receipt of "medical information"

without authorization. Cal. Civ. Code § 56.36(c)(3), (c)(5); *cf. Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *5 (N.D. Cal. Jan. 12, 2026) (holding that Plaintiffs failed to allege "Meta's knowledge that the use and access of user data was without permission").

Because Plaintiffs fail to allege that the crime-tort exception applies, Wisp's consent to Meta's receipt of information from its website defeats Plaintiffs' Wiretap Act claim.

### 3. Plaintiffs' Statutory Claims Both Fail Because Plaintiffs Do Not Adequately Allege That Meta Intentionally Used A Device To Intercept Or Record Their Communications

In addition to the core deficiencies in each claim described above, Plaintiffs fail to allege several other elements required for both their CIPA Section 632 and federal Wiretap Act claims. These failures provide yet another independent basis for dismissal.

#### a. Plaintiffs Fail To Allege Meta Used A Device To Record

The statutes Plaintiffs invoke punish any "person" who "use[s]" a "device" to "eavesdrop upon" or "record," Cal. Penal Code § 632, or who "intercept[s]" a communication, *i.e.*, "acqui[res]" it "through the use of any electronic, mechanical, or other device," 18 U.S.C. §§ 2511, 2510. But Plaintiffs do not and cannot allege that Meta engaged in that conduct.

***Use.*** Plaintiffs do not allege that *Meta* used the alleged device—Pixel code—to record their communications. Instead, Plaintiffs allege that Meta engaged in different conduct—that it "designed, built, and distributed" Pixel code and made Pixel code publicly available for third parties to "install and configure," if they chose to integrate it into their websites. FAC ¶ 81; *see id.* ¶ 85. Indeed, Plaintiffs' new allegations in the FAC double down on this theory, contending that Meta "engineered" Pixel code, "actively encouraged *businesses*" to incorporate it, and "receive[d]" data when businesses did so. *Id.* ¶¶ 81-82, 86 (emphasis added). But neither Meta's downstream receipt or use of the *data*, nor its development of the code, equates to *use of the code* itself to record Plaintiff's communications on Wisp's website. To the contrary, the term "use," in the criminal context, requires "active employment." *Bailey v. United States*, 516 U.S. 137, 143 (1995). But here Plaintiffs allege, at most, that Meta failed to "stop" independent third parties from using the code. FAC ¶ 86. That does not suffice for liability under Section 632 or the Wiretap Act.

The Ninth Circuit's recent decision in *Amazon.com Services LLC v. Perplexity AI, Inc.* is

instructive. There, in assessing claims under federal and state computer-hacking statutes, the court explained that "the focus of the inquiry" must be "on the *person*" doing the relevant conduct, rather than on the capabilities or actions of a technological tool. 2026 WL 2237587, at *7 (9th Cir. Aug. 4, 2026); *see also id.* at *5-6. Applying that analysis, the court held that it was individual users of Perplexity's AI tool that "access[ed]" Amazon's site under the statute, *not* Perplexity—even though Perplexity developed the tool, "may receive" information via the tool, and "may communicate instructions" to it. *Id.* at *6. In other words, even though Perplexity plainly had some involvement, the relevant "person" directing the tool's actions was still the user, and thus, for purposes of statutory liability, it was "the user (not Perplexity) [that] accesse[d] Amazon using the … AI tool." *Id.* at *7. The same analysis controls here. By Plaintiff's own allegations, *Wisp* was the "person who" was "us[ing]" the Pixel code to send information to Meta because it was *Wisp*, not Meta, that chose to "install and configure" the code in the first place. FAC ¶ 81; *see* Cal. Penal Code § 632; 18 U.S.C. §§ 2511, 2510. That forecloses Plaintiffs' claims.

***Of a "device."*** Plaintiffs' Section 632 claim and Wiretap Act claims also fail because Pixel code is not a "device." CIPA Section 632 applies only to "use[] [of] an electronic amplifying or recording *device*." Cal. Penal Code § 632(a) (emphasis added). The Wiretap Act likewise applies only to "intercept[ions]" of communications via an "electronic, mechanical, or other device." 18 U.S.C. § 2511, 2510(5). Plaintiffs allege that the "device" here is the Meta Pixel, *see* FAC ¶ 5, but the Pixel is simply source code. *See id.* ¶¶ 37, 39, 85. And, as this Court previously explained in interpreting a separate provision of CIPA, software code is not a "device" under the plain meaning of that term. *See Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017) (Corley, J.) (interpreting Section 637.7); *see also In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (agreeing that software is not a "device"). Rather, as this Court explained, dictionaries define "device" to mean a specialized piece of *physical* equipment. *See Moreno*, 2017 WL 6387764, at *5 (citing definitions). Statutory context confirms this meaning: the Wiretap Act and CIPA Section 632 both use the term "device" alongside other *tangible* objects. *See* Cal. Penal Code § 632 (using term "device" in providing that improperly recorded conversations must take place "by means of a telegraph, telephone, or other device,

except a radio"); 18 U.S.C. § 2510(5) (defining "device" as "device or apparatus"); *id.* § 2511(1)(b) (referring to "affix[ing]" a device to a wire and "sen[ding]" it "through the mail"). "Device" should not be extended to "bits of code" like the Pixel. FAC ¶ 37.

***To "intercept[]," "eavesdrop," or "record."*** Plaintiffs' Wiretap Act and CIPA Section 632 claims also require real-time acquisition of a plaintiff's actual communications. A party only "'intercept[s]' in violation of the Wiretap Act" if it "acquire[s]" the plaintiff's communication "during transmission." *Konop v. Haw. Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Section 632 likewise reaches only "simultaneous dissemination" of a plaintiff's communications, not "secondhand repetition of [] contents." *Smith*, 11 Cal. 5th at 191, 200. Here, Plaintiffs allege that when a user took certain actions on Wisp's website, particular "events" titled "AddToCart," "SubscribedButtonClick," "PageView," and "ViewContent," FAC ¶¶ 48, 52, were generated and sent to Meta, *id.* ¶¶ 46, 55; *see also, e.g.*, *id.* ¶ 84. That means that at most Meta received "events" summarizing user actions—not Plaintiffs' communications themselves. That is not the real-time interception, eavesdropping, or recording of Plaintiffs' actual communications that the statutes prohibit.

b. Plaintiffs Fail To Allege That Meta "Intentionally" Used A Device To Record

Plaintiffs also independently fail to allege that Meta engaged in the relevant conduct "intentionally," as their claims require. *See* Cal. Penal Code § 632 (penalizing "intentionally … us[ing]" a device to eavesdrop on or record a confidential communication); 18 U.S.C. § 2511(1)(a) (penalizing "intentionally intercept[ing]" a communication).

To establish intent for Section 632, California law requires a plaintiff to allege the defendant "use[d]" "recording equipment" "with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that [its] use of the equipment w[ould] result in the recordation of a confidential conversation." *People v. Superior Ct. of L.A. Cnty.*, 70 Cal. 2d 123, 134 (1969) ("*Smith*"). That standard is consistent with the Ninth Circuit's holding, under the federal Wiretap Act, that "intentionally" means a defendant must have intercepted the data "purposefully and deliberately and not as a result of accident or mistake."

*United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015); *see also Google Pixel I*, 741 F. Supp. 3d at 840 (applying *Christensen* standard to CIPA and Wiretap Act claims). Plaintiffs must therefore allege facts showing that Meta "acted consciously and deliberately with the *goal* of" obtaining their health information. *Christensen*, 828 F.3d at 791 (emphasis added); *see Doe I v. Google LLC*, 2025 WL 1616720, at *2 (N.D. Cal. June 6, 2025) ("*Google Pixel II*") ("The question is whether Google intended to collect the kinds of communications at issue in this lawsuit.").

Plaintiffs do not even try to allege facts that would satisfy this standard. Plaintiffs instead allege that Meta intended to receive data generally when independent third parties chose to use Pixel code. *See* FAC ¶¶ 81-82. But neither statute prohibits receiving data, *supra* at 19-21, so intent to receive data does not suffice.

Even if intent to receive were enough, however, Plaintiffs fail to show that Meta intended to receive the purportedly sensitive data at issue here. Plaintiffs admit that it was *Wisp*, not Meta, that "integrate[d] this software into [its] website." *Id.* ¶ 39; *see also id.* ¶ 65 ("Wisp sent" "identifiers" to Meta). Plaintiffs allege no facts suggesting that *Meta* intended to obtain the data at issue, and their bare assertions that Meta acted "intentionally," *id.* ¶ 5; *see also id.* ¶¶ 129, 140-42, are insufficient. *See Iqbal*, 556 U.S. at 686-87. Nor are the allegations that Meta makes money from advertising sufficient, FAC ¶¶ 81-82, because at most, those allegations suggest Meta intended to collect *some* data—not the specific data at issue here. *See Google Pixel II*, 2025 WL 1616720, at *2.

As to that data, Plaintiffs admit that Meta's Business Tools Terms *prohibit* the sharing of sensitive or health information, requiring businesses that use Meta's Pixel code to "represent and warrant that [they] will not share Business Tool Data with [Meta] that [they] know or reasonably should know … includes health" or "sensitive" information. FAC ¶ 85; Ex. 18 at 1. By taking steps to prevent developers from sending sensitive information, Meta "purposefully acted so as *not* to receive any personal health information." *Google Pixel I*, 741 F. Supp. 3d at 840-41 (dismissing Wiretap Act claim based on the defendant's "admonitions" against transmission of health-related data); *see also B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) (Meta's policies prohibiting transmission of sensitive data suggested that Meta "had no intention

of receiving the data at issue").

Plaintiffs try to twist Meta's Business Tools Terms by claiming Meta knew it was receiving health data, *see* FAC ¶ 83, and failed to "stop" third parties from sending it, *id.* ¶ 86.[7] But knowledge that one might receive data is not the same as *intent* to receive that data. The California Court of Appeal drew this exact distinction in *Lozano v. City of Los Angeles*, holding that a city police department did not act with intent to record "personal communications" where it was merely "*aware* that equipping police cars with recording devices could record" sensitive information. 73 Cal. App. 5th 711, 727-28 (2022) (emphasis added). And the Supreme Court recently held in *Cox Communications, Inc. v. Sony Music Entertainment* that "mere knowledge that a service will be used to infringe is insufficient to establish the required *intent* to infringe" in the copyright context. 146 S. Ct. 959, 968 (2026) (emphasis added). That was so even though the defendant there had allegedly "fail[ed] to terminate" infringing accounts because it profited from those subscribers, *id.* at 968—just as Plaintiffs here allege Meta should have "terminat[ed] service to health-related platforms." FAC ¶ 86. As the Supreme Court explained, "knowledge" and "insufficient action to prevent" wrongdoing do not establish intent. *Cox*, 146 S. Ct. at 969. That same analysis applies here, and Plaintiffs' failure to allege intent provides yet another basis for dismissal.[8]

#### 4. Plaintiffs' Expansive Constructions, Which Stretch Every Element Beyond Its Plain Terms, Raise Fair Notice Concerns

As detailed above, Plaintiffs seek to stretch the criminal statutes they invoke far beyond their plain terms to capture Meta's alleged *receipt* of information from a third-party website. But CIPA and the Wiretap Act do not provide "fair notice" that such conduct could lead to liability.

---

[7] Plaintiffs do not even plausibly allege "knowledge." Plaintiffs assert that Meta had "actual, internal knowledge that its tools were transmitting sensitive health information," but they support that assertion only with a statement that one employee "was 'aware of the *risk*'" that such information might be sent (in general, not by Wisp). FAC ¶ 83 (citation omitted, emphasis added).

[8] Some district courts have held that an interception may be "considered intentional where a defendant is aware of the defect causing the interception but takes no remedial action." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (citation omitted). But that standard is clearly inconsistent with *Christensen*, *Lozano*, and *Cox,* all of which require deliberate conduct rather than mere knowledge. At minimum, the "awareness" reasoning is limited to cases involving a defect in a defendant's own product. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020) (accidental triggering of Google assistant). That reasoning does not apply here, where Plaintiffs allege *third-party* misuse of a common, non-defective tool.

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). And because "courts' interpretation" of CIPA and the Wiretap Act "are 'equally applicable' in the civil and criminal contexts," the "rule of lenity" requires that the Court "construe 'any ambiguity' as to statutory meaning against liability." *Amazon.com*, 2026 WL 2237587, at *6 (citation omitted).

Meta could not reasonably have anticipated that simply "wr[iting] [] code" that developers can use, FAC ¶ 81, and allegedly failing to prevent receipt of certain data, *id.* ¶ 83, could render it liable under criminal statutes for intentionally "us[ing]" a "device" to "record" a confidential communication without consent, Cal. Penal Code § 632, or intentionally "intercept[ing]" a communication without consent, 18 U.S.C. § 2511(1). Imposing liability here would extend those criminal statutes far beyond their text. *Supra* at 23. It would also punish Meta for the conduct of independent third parties. Without Wisp's alleged use of Pixel code to send Meta allegedly sensitive data, Plaintiffs would not have any claim against Meta under their theories. Such an interpretation would pose serious vagueness problems. *See Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1029 (9th Cir. 2009) (sustaining as-applied vagueness challenge where liability turned on factors beyond a party's control); *Doe v. Eating Recovery Ctr.*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025) ("companies have no way of telling whether their online business activities will subject them to liability" under CIPA).

This Court should adopt a narrower interpretation to avoid such constitutional concerns. *See Skilling v. United States*, 561 U.S. 358, 405-06 (2010). And lenity principles likewise require that any ambiguity in these penal statutes be read in favor of Meta. *See Amazon.com*, 2026 WL 2237587, at *6 ("declin[ing] to adopt" novel interpretation "given the care with which we must interpret the CFAA to ensure defendants are on notice"); *Vita v. New Eng. Baptist Hosp.*, 243 N.E.3d 1185, 1204-05 (Mass. 2024) (applying rule of lenity to Massachusetts wiretapping statute and holding that claim based on use of Pixel code should be dismissed). This Court should therefore reject Plaintiffs' attempt to improperly stretch the wiretapping and eavesdropping statutes to reach the conduct alleged here.

### C. Plaintiffs' Invasion Of Privacy Claim Fails For Additional Reasons

Like Plaintiffs' statutory claims, Plaintiffs' invasion of privacy claim fails because

Plaintiffs fail to allege that Meta intentionally intruded on their privacy. *See Google Pixel I*, 741 F. Supp. 3d at 844 (intent "is a necessary element of an invasion of privacy claim"); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285-86 (2009) (requiring an "intentional[] intru[sion]" for invasion of privacy). Plaintiffs' allegations do not establish any such conduct. *Supra* at 2.

Plaintiffs' claim also fails because allegations that *Wisp* sent purchase data to Meta fail to show that *Meta* committed any highly offensive intrusion, as California law requires. The "highly offensive" standard "set[s] a high bar." *Belluomini v. Citigroup Inc.*, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013); *see also In re iPhone Application Litig*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (invasion of privacy must constitute an "*egregious breach* of [] social norms" (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26, 37 (1994)). Where "a defendant does not employ secrecy or deception or some other 'bad act' in connection with data collection … such behavior does not rise to the level of highly offensive." *Hubbard v. Google LLC*, 2024 WL 3302066, at *8 (N.D. Cal. July 1, 2024); *see also, e.g., Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (collection of app usage information not highly offensive where it was not "blatantly deceitful," even if plaintiffs had reasonable expectation of privacy).

Here, "there is no additional aspect of Meta's data collection in this case suggesting that Meta was intentionally engaged in a secret or deceptive, and thus highly offensive, intrusion." *Tsering*, 2026 WL 89320, at *7 (dismissing invasion of privacy claim). Plaintiffs do not allege that Meta had any hand in Wisp's choice to install Pixel code or how to configure it, much less that Meta acted deceptively to obtain Plaintiffs' information. Meta's alleged *receipt* of information is hardly an egregious breach of social norms, even if that information is sensitive, as Plaintiffs allege. *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063. And that is particularly true where Meta specifically disclosed that it could receive data from third parties that used Pixel code; required web developers to provide prominent notice regarding that use; and *prohibited* the sending of sensitive or health information. *See supra* at 22.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' FAC should be dismissed. And because the FAC is "essentially [] Plaintiffs' fifth complaint," Dkt. 52 at 6, dismissal should be with prejudice.

Dated: August 28, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By <u>*/s/ Melanie M. Blunschi*</u>
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*